Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, California 91436
Telephone: 818.839.2333

Don Bivens (pro hac vice forthcoming)
don@donbivens.com
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: 602.708.1450

*Attorneys for Plaintiff and the Putative Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| KATHERINE WILSON, individually and on behalf of all others similarly situated, | Case No.: 5:24-cv-03176 |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| GOOGLE LLC, | **DEMAND FOR JURY TRIAL** |
| Defendant, | |

1      1.     This case confirms and exemplifies that one of "the world's most valuable resources is no longer oil, but data."[1] Plaintiff Katherine Wilson ("Plaintiff") brings this proposed class action on behalf of all persons who visited the California Department of Motor Vehicles ("DMV") website to apply for, renew, or check the status of a disability parking placard.

2.     Unbeknownst to Plaintiff and Class Members, when they visited the DMV website for this purpose, Defendant Google, LLC ("Google" or "Defendant") used Google Analytics and DoubleClick tags (collectively, "Google Analytics and DoubleClick") to unlawfully obtain their personal disability information, and the contents of their communications with the DMV about their disability. Google then used that information for its own unlawful purposes. Google's conduct does not fall within any permitted purpose under the law and occurred without Plaintiff's or Class Members' consent.

3.     At no time did Google or the DMV disclose to Plaintiff or Class Members that Google was tracking the activities of individuals accessing the DMV website, obtaining their personal information from motor vehicle records, or learning the contents of their communications with the DMV.

4.     As alleged in detail below, Google Analytics and DoubleClick have allowed Google to amass massive amounts of personal information and data about Plaintiff and Class Members. Google then uses the personal information and data to generate revenue from the advertising and marketing services that Google sells to businesses and individuals.

5.     Google's actions and activities violate the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et seq*. ("DPPA"), because Google obtained personal information from motor vehicle records and used it for a purpose not permitted under the law. Google's actions and activities also violate the California Invasion of Privacy Act, California Penal Code §§ 630, *et.*

---

[1] The Economist, *The World's Most Valuable Resource Is No Longer Oil, But Data*, THE ECONOMIST (May 6, 2017), https://www.economist.com/leaders/2017/05/06/the-worlds-most-valuable-resource-is-no-longer-oil-but-data.

*seq.* ("CIPA"), because Google learned the contents of Plaintiff's and Class Members' communications with the DMV and used them without Plaintiff's and Class Member's consent.

6.     Plaintiff's class action complaint seeks to recover all available remedies, including statutory penalties and punitive damages, and to redress the wrongs imposed by Google on Plaintiff and Class Members.

## PARTIES

7.     Plaintiff Katherine Wilson ("Plaintiff") is a citizen and resident of the State of California. Plaintiff possesses a disability parking placard issued to her by the DMV. Plaintiff renewed her disability parking placard online in approximately June of 2023 and recalls renewing the disability parking placard through the MyDMV portal on the DMV website. Plaintiff used her laptop computer for the renewal and, in doing so, provided the DMV with her personal information, including disability information.

8.     In approximately May of 2024, Plaintiff discovered that Google secretly used Google Analytics and DoubleClick when she renewed her disability parking placard to unlawfully collect her personal information from her motor vehicle record, and intercept and learn the contents of her communications with the DMV, which it later used to generate revenue for its advertising and marketing business without his consent.

9.     The information Google obtained was maintained by the DMV as part of Plaintiff's application for and renewal of the disability parking placard. The DMV maintained that information after Plaintiff provided it for the purposes of her disability application and renewal.

10.    Defendant Google LLC ("Google") is a global technology company that specializes in Internet-related services and products. Google is incorporated in Delaware, licensed to do business in California, and maintains its principal place of business and corporate headquarters at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## JURISDICTION, VENUE AND DIVISIONAL ASSIGNMENT

11.    This Court has personal jurisdiction over Google because it is incorporated and has its principal place of business in California.

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises from violations of the DPPA. This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because it is a class action with more than $5,000,000 in controversy where at least one Class Member is a citizen of a state of which Defendant is not a citizen.

13.    This Court may also exercise supplemental jurisdiction over Plaintiff's CIPA claim pursuant to 28 U.S.C. § 1367(a) because it is so related to the DPPA claim (within the Court's original jurisdiction) that it forms part of the same case or controversy under Article III of the United States Constitution. This case does not present novel or complex issues of state law that predominate over claims for which this Court has original jurisdiction, and there are no compelling reasons for declining supplemental jurisdiction over those of Plaintiff's claims that do not arise under the DPPA.

14.    Venue is appropriate in this Court because Google resides in this District.

15.    This action is properly assigned to the San Jose Division, pursuant to N.D. Cal. Civil Local Rule 3-2(c), (e) and the Court's Assignment Plan (General Order No. 44), because this action arises in Santa Clara County.

## COMMON FACTUAL ALLEGATIONS

### A.  Background of the DPPA

16.    Congress enacted the DPPA in 1994 in response to state DMVs' practice of selling or freely disclosing drivers' personal information acquired through the states' coercive power. In addition to inherent safety risks resulting from the use of such information by criminals, the DPPA also addressed the invasion of privacy associated with unconsented disclosure of such personal information to direct marketers for commercial purposes. As

4

Congressman James P. Moran, the sponsor of the bill in the United States House of Representatives, noted:

> Computers have enabled individuals, with the click of a button, to pull up a person's DMV record. While the immediate accessibility to such personal data makes it even more valuable, it also makes it more important that safeguards are in place to protect personal information.
>
> . . .
>
> [T]he release of this information to direct marketers . . . present[s], to some people, an invasion of privacy. If you review the way in which people are classified by direct marketers based on DMV information you can see why some individuals might object to their personal information being sold.[2]

17.     The DPPA protects "personal information" and provides a civil cause of action against anyone who "knowingly obtains, discloses, or uses personal information" from a motor vehicle record for purposes not permitted under the law. 18 U.S.C. § 2724(a). Upon finding a violation of the statute, a court may award: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages upon proof of willful or reckless disregard of the law; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate. 18 U.S.C. § 2724(b).

18.     The DPPA defines "personal information" as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical or disability information." 18 U.S.C. § 2725(3).

19.     The DPPA defines "motor vehicle record" to include "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id.* at § 2725(1). A disabled parking placard pertains to a motor vehicle operator's permit.

---

[2] *Protecting Driver Privacy: Hearing on H.R. 3365 Before the Subcomm. on Civil & Constitutional Rights*, 1994 WL 212698 (Feb. 3, 1994) (statement of Rep. Moran).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.  Background of CIPA**

20.     When CIPA was passed, the California legislature "declare[d] that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code § 630.

21.     Specifically, with limited exceptions, CIPA makes it unlawful for "any person" to "willfully and without the consent of all parties to the communication, or in any unauthorized manner,… read, or attempt to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in [section 631]." *Id.* at § 631(a). Section 631(a) of the Penal Code prescribes three distinct and mutually independent patterns of conduct: intentional wiretapping, willfully attempting to learn the contents or meaning of a communication in transit over a wire, and attempting to use or communicate information obtained as a result of engaging in either of the previous two activities.

**C.  Google, Google Analytics and DoubleClick**

22.     **Google.** Google is commonly known for its search engine, Google Search, which has grown to become "the most frequently used search engine worldwide."[3] However, in

---

[3] *See* Tiago Bianchi, *Market share of leading desktop search engines worldwide from January 2015 to July 2023*, STATISTA.COM (Sept. 20, 2023), https://www.statista.com/statistics/216573/worldwide-market-share-of-search-engines/.

addition to its search engine, Google provides over 100 other services including Android Auto, Google Drive, Gmail, Google Classroom, Google Ads, Google Pay, Maps, YouTube and more.[4]

23.     According to Google, "[a]dvertising is what makes it possible to offer [Google's] products to everyone."[5] Although Google "sell[s] things like Pixel phones, apps on the Play Store, YouTube subscriptions, and tools for businesses, [it] make[s] the vast majority of [its] money from advertising."[6]

24.     Google's advertising reach is enormous, as Google owns multiple products with billions of users worldwide.[7] Recently, in 2023, Google was estimated to generate "roughly 38 percent of the global [digital] ad revenue."[8] Much of Google's advertising success can be traced back to its $3.1 billion acquisition of the online advertising company DoubleClick, Inc. in 2008. The acquisition combined Google's advertising strength with DoubleClick Inc.'s business relationships and ad-service technology used by thousands of publishers online. The acquisition also assisted Google in providing larger display ads on websites and video ads.[9]

25.     According to Google, "[t]argeting ads is an essential part of a successful advertising campaign. You may have designed the perfect ad, but you'll need to show it to the right people at the right time to better reach your goal."[10] Through its Google Ads service and services on the Google Marketing Platform, Google allows potential advertisers to build strategic

---

[4] Google, *List of Services & Service-Specific Additional Terms*, GOOGLE.COM, https://policies.google.com/terms/service-specific?hl=en&gl=us (last visited Apr. 26, 2024).
[5] About Google, *How our business works*, https://about.google/intl/en_US/how-our-business-works/.
[6] *Id.*
[7] @Google, TWITTER (May 10, 2023, 10:10 AM), https://twitter.com/Google/status/1656346081385381889.
[8] Statista Research Development, *Advertising revenue generated by Google from 2017 to 2027*, STATISTA.COM (Aug. 25, 2023), https://www.statista.com/statistics/539447/google-global-net-advertising-revenues/.
[9] Steve Lohr, *This Deal Helped Turn Google Into an Ad Powerhouse. Is That a Problem?*, N.Y. TIMES (updated Oct. 20, 2020), https://www.nytimes.com/2020/09/21/technology/google-doubleclick-antitrust-ads.html.
[10] Google, *Targeting your ads*, GOOGLE.COM, https://support.google.com/google-ads/answer/1704368?hl=en (last visited Apr. 26, 2024).

campaigns targeting specific users or audiences.[11] For instance, advertisers can access the Google Display Network and create display campaigns that "expand [their] reach beyond just Google Search" to "reach people worldwide across 35 million websites and apps, and on Google-owned properties (YouTube and Gmail)."[12]

26.     As a result of its activities and operation of Google Analytics and DoubleClick, Google can make extremely personal inferences about individuals' demographics, intent, behavior, engagement, interests, buying decisions, and more.[13]

27.     The personal information and communications obtained by Google through Google Analytics and DoubleClick are funneled into its marketing and advertising businesses and are used to fuel various services offered via Google's Marketing Platform to allow advertisers to reach new customers.[14]

28.     Google also boasts that its dynamic prospecting (a function of Google ads that combines user information and product information to create targeted advertising prospects) uses Google AI to help advertisers "reach and attract new customers with ads for [their] highest-performing products."[15] Google does this by using "historical feed performance and user behavior" to "predict[] which new users are most likely to perform well for items in [an advertiser's] feed. Once the system finds statistically significant relationships between feed items

---

[11] *See* Google, *Targeting*, GOOGLE.COM, https://support.google.com/google-ads/topic/10543621?hl=en&ref_topic=10286611,3181080,3126923,&sjid=10176374672745389741-NC (last visited Apr. 26, 2024).

[12] Google, *About Display ads and the Google Display Network*, GOOGLE.COM, https://support.google.com/google-ads/answer/2404190?hl=en (last visited Apr. 26, 2024).

[13] Google, *About audience segments*, GOOGLE.COM, https://support.google.com/google-ads/answer/2497941?hl=en&ref_topic=10545551&sjid=10176374672745389741-NC (last visited Apr. 26, 2024).

[14] *See* Google, *Case Study McDonald's Hong Kong uses Google Analytics 4 to increase in-app orders by 550%*, GOOGLE.COM, https://marketingplatform.google.com/about/resources/mcdonald-hong-kong-uses-google-analytics-4-to-increase-in-app-orders-by-550-percent/ (last visited Apr. 26, 2024).

[15] Google, *supra* note 13.

CLASS ACTION COMPLAINT

and user intent, it combines that possible intent with demographics-based information such as age and gender to match the user's intent with a relevant product in [an advertiser's] feed."[16]

29.    The personal information obtained and learned by Google is extremely valuable to Google and its marketing and advertising clients because the inferences derived from users' personal information allow marketers and advertisers to target potential customers.

30.    For example, McDonald's Hong Kong "increased their conversions 550% for 'likely 7-day purchasers' and decreased cost-per-acquisition 63% among that group. On top of that, McDonald's saw 560% increased revenue within that audience."[17] This success was attributed, at least in part, to "the integration between Google Analytics 4 and Google Ads" which allowed "predictive audience segments [to] be seamlessly exported to their ad campaign."[18]

31.    In 2022, "Google generated 224.5billion U.S. dollars in advertising revenue."[19] That figure is expected to reach "nearly 340 billion U.S. dollars by 2027."[20]

32.    **Google Analytics and DoubleClick.** The Google Marketing Platform was first introduced in 2018.[21] The Google Marketing Platform "is a unified advertising and analytics platform that enables stronger collaboration for your marketing teams by building on existing integrations between DoubleClick and the Google Analytics 360 Suite."[22] However, DoubleClick and Google Analytics existed well before they were integrated into the Google Marketing Platform.

---

[16] *Id.*

[17] Google, *supra* note 14.

[18] *Id.*

[19] Statista Research Development, *supra* note 8.

[20] *Id.*

[21] Brad Bender, *Introducing Google Marketing Platform*, Google Blog (June 27, 2018), https://blog.google/products/marketingplatform/360/introducing-google-marketing-platform/?_gl=1*1773i97*_ga*MTc5MTI5NjQ3My4xNzAzMTgwMjE5*_ga_177S7Q8J6Q*MTcwNTYwOTAxOS41LjAuMTcwNTYwOTAyMC4wLjAuMA.

[22] Google, *Introducing Google Marketing Platform*, Google.com, https://support.google.com/displayvideo/answer/9015629?hl=en (last visited Apr. 26, 2024).

33.    Google first introduced Google Analytics (aka Urchin from Google, Google Analytics Synchronous Code, Google Analytics Asynchronous Code, Google Analytics Tag, Global Site Tag, or Google Analytics 4 (collectively "Google Analytics")) as early as 2005.[23]

34.    The DoubleClick tag was created by DoubleClick, Inc., an American advertisement company that was acquired by Google in 2008.[24] DoubleClick, Inc. used snippets of JavaScript code to track users' behavior across various websites that it did business with. Since 2008, Google has rebranded DoubleClick, Inc. multiple times, and Google continues to collect users' data in a similar fashion using tags tied to "doubleclick.net."[25]

35.    Google Analytics and DoubleClick are JavaScript-based codes that allow for easy installation by pasting the code into webpages.[26]

36.    Google's current iterations of Google Analytics and DoubleClick allow website owners to embed a single global site tag (gtag.js) to each page containing an event that the webpage owner wants to track.[27]

37.    Although Google Analytics and DoubleClick are installed by website owners, Google intentionally encourages website owners to use a critical new feature that allows Google Analytics and DoubleClick to avoid privacy settings in website visitors' browsers that block

---

[23] Luis Franco and Mayra Valdés, *History of Google Analytics*, JUSTIA.COM (Feb. 23, 2021), https://onward.justia.com/history-of-google-analytics/.
[24] Eric Schmidt, *We've officially acquired DoubleClick*, GOOGLE BLOG (Mar. 11, 2008) https://googleblog.blogspot.com/2008/03/weve-officially-acquired-doubleclick.html.
[25] *See, e.g.*, Google, *[UA] Referrals are from googleads.g.doubleclick.net or tpc.googlesyndication.com*, GOOGLE.COM, https://support.google.com/analytics/answer/1011829?hl=en (last visited Apr. 26, 2024).
[26] *See, e.g.*, Google, *[GA4] Set up Analytics for a website and/or app*, GOOGLE.COM, https://support.google.com/analytics/answer/9304153?hl=en#zippy=%2Cios-app-or-android-app%2Cadd-the-tag-to-a-website-builder-or-cms-hosted-website-eg-hubspot-shopify-etc%2Cadd-the-google-tag-directly-to-your-web-pages (last visited Apr. 26, 2024).
[27] *See* Google, *Using a Google tag for both Floodlight and Google Ads conversion tracking*, GOOGLE.COM, https://support.google.com/searchads/answer/7563117?hl=en (last visited Apr. 26, 2024); Sriram Parameswar, *The importance of site-wide tagging for accurate conversion measurement in DoubleClick Search*, GOOGLE BLOG (Oct. 30, 2017), https://blog.google/products/ads/the-importance-of-site-wide-tagging-for/.

third-party cookies.[28] Embedding the JavaScript as a first party cookie, as Google recommends, ensures that the third-party cookie blocking functions of modern web browsers do not block Google Analytics or DoubleClick, thereby maximizing the information that Google is able to obtain from Google Analytics and DoubleClick.

38.     Google Analytics and DoubleClick also enable advertisers to integrate tracking codes into their websites. These codes capture and transmit user activity records to Google Analytics and DoubleClick through HTTP requests. The collected data is then processed by Google and added to datasets, forming the basis for the targeted advertising that Google sells to its marketing and advertising customers.

39.     If a user is browsing a website where Google Analytics or DoubleClick are embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website.

40.     Google Analytics merges gathered data with information from HTTP requests received by DoubleClick, using various parameters and cookies within Google Analytics that are also present in DoubleClick HTTP requests, with identical values. Notable examples include the "jid" (Join ID) parameter, linking the Google Analytics cookie to DoubleClick, and the "cid" parameter, acting as a persistent client ID for each user within a specific domain. The "jid" and "cid" parameters include data that differentiate users from one another and can be used by Google Analytics and DoubleClick to link the collected data to create a unique user profile (see images below).

---

[28] Google, *New ways to support your measurement with first-party data*, GOOGLE.COM, https://support.google.com/google-ads/answer/10591309?hl=en (last visited Apr. 26, 2024).

41.     With the information received from Google Analytics and DoubleClick, the DoubleClick server constructs user profiles using data compiled through cookies and tracking technologies. These profiles include personal information like email addresses when they are collected and are employed to tailor advertising to users' preferences, updating user profiles based on current online behavior. Although there is no direct connection to an existing Google account, the DoubleClick server independently builds and utilizes user profiles to optimize ad targeting and combines disability information into the user profiles it creates. In short, Google uses the information it collects to either identify, or create an identity profile for, each user whose information it obtains through Google Analytics and DoubleClick.

**D.  Google's Use of Data Obtained Through Google Analytics and DoubleClick**

42.     Google feeds the vast quantities of personal data obtained from and learned by Google Analytics and DoubleClick into the marketing and advertising systems that it sells to its customers.  Google capitalizes on the data and information it collects to identify, characterize, and categorize users, selling to its marketing and advertising customers the ability to target specific demographics.

43.    The services offered through Google Ads and the Google Marketing Platform allow Google to monetize the data obtained and learned from Google Analytic and DoubleClick through the sale of ads.[29] According to Google, the Google Marketing Platform provides marketers with "a unified advertising and analytics platform for smarter marketing and better results."[30] These analytics inform Google Ads, allowing marketers to track users' behavior and target specific audience segments "determined by people's activity using Google products and third-party websites, or estimated based on content certain groups of people are likely to be interested in."[31] Doing so allows marketers to construct various campaigns—including search campaigns, display campaigns, smart campaigns, app campaigns, discovery campaigns, shopping ads, video campaigns, hotel campaigns, demand gen campaigns, call campaigns, performance max campaigns, and things to do campaigns—to better market to audience segments.[32]

44.    Google markets and sells to its customers the ability to target potential customers via Google Ads through display advertisements, which allow advertisers to target "ideal audiences" based on characteristics like personal interest, age, and gender.[33] According to Google, "[i]f you know the majority of your customers are senior citizens and want to use your

---

[29] *See* Google, *How our business works*, GOOGLE.COM, https://about.google/how-our-business-works/ (last visited Apr. 26, 2024).

[30] Google, *Google Marketing Platform*, GOOGLE.COM, https://marketingplatform.google.com/about/ (last visited Apr. 26, 2024).

[31] Google, *About audience segments*, GOOGLE.COM, https://support.google.com/google-ads/answer/2497941?sjid=10176374672745389741-NC.#zippy=%2Cdetailed-demographics%2Cyour-data-segments-formerly-known-as-remarketing%2Ccustom-intent-segments-auto-created-display%2Ccustom-segments%2Cin-market-segments%2Cli (last visited Apr. 26, 2024).

[32] Google, *Targeting*, GOOGLE.COM, https://support.google.com/google-ads/topic/10543621?hl=en&ref_topic=10286611,3181080,3126923,&sjid=10176374672745389741-NC (last visited Apr. 26, 2024) (select tab labeled "campaigns").

[33] Google, *Reach a larger or new audience with Google Display Network targeting*, GOOGLE.COM (Mar. 20, 2023), https://ads.google.com/intl/en_us/home/resources/articles/reach-larger-new-audiences/#:~:text=Google%20Display%20Network%20(GDN)%20targeting%20allows%20you%20to%20set%20where,personal%20interests%2C%20age%20or%20gender.

budget to reach only people in that age group, you can set your campaign to exclude all age groups from seeing your ads except 65 or more."[34]

45.    Google markets and sells to its customers the ability to target Affinity Audiences, Custom Affinity Audiences, and In-Market Audiences based on users' interest in products, services, or pastimes related to the advertisers' business.[35]

46.    According to Google, affinity segments allow advertisers to target users based on what the users are passionate about. Custom segments allow advertisers to target users by entering relevant keywords, URLs, and apps. Detailed demographic information allows advertisers to target based on users' long-term life facts. Life events target users amid important life events. In-market segments allow advertisers to target users based on users' recent purchase intent. Advertisers can also target users based on information and activities like the users' interaction on a website, CRM data to match potential customers, and use data regarding similar segments to target new users with interests similar to advertisers' website visitors or existing customers.[36]

47.    At bottom, Google uses and advertises Google Analytics and DoubleClick as ways to obtain and collect information that give it the ability to target advertising campaigns using the demographic and personal information that it collects from Google Analytics and DoubleClick.

**E.  Google Obtains Protected Information From Motor Vehicle Records**

48.    The DMV operates www.dmv.ca.gov, which enables users to upload and manage their data and documents, book appointments, renew registration, and order disability parking

---

[34] *Id.* (internal punctuation omitted).
[35] *Id*.
[36] *Google, About audience segments*, GOOGLE.COM, https://support.google.com/google-ads/answer/2497941?sjid=10176374672745389741-NC.#zippy=%2Cdetailed-demographics%2Cyour-data-segments-formerly-known-as-remarketing%2Ccustom-intent-segments-auto-created-display%2Ccustom-segments%2Cin-market-segments%2Cli (last visited Apr. 26, 2024).

placards.[37] The DMV encourages users to use its website rather than visiting one of the DMV's physical locations.[38] In 2020, the DMV reported over 23 million online transactions, the most in DMV history.[39] In 2023, the DMV reported that 40% of the 1.6 million disability parking placard renewals occurred online.[40]

49.     Google Analytics and DoubleClick are currently embedded throughout the DMV website and are secretly transmitting personal information from the motor vehicle records maintained by the DMV to Google and allowing Google to learn the contents of users' private communications with the DMV.

---

[37] California Department of Motor Vehicles, *Online Services*, DMV.CA.GOV
https://www.dmv.ca.gov/portal/dmv-online/ (last visited Apr. 26, 2024); California Department
of Motor Vehicles, *Virtual
Office*, DMV.CA.GOV, https://www.dmv.ca.gov/portal/dmv-virtual-office (last visited Apr. 26,
2024).
[38] California Department of Motor Vehicles, *DMV Unveils New Feature to Help Californians
with New Requirement to Renew Disabled Person Parking Placard* (Dec. 14, 2022),
DMV.CA.GOV, https://www.dmv.ca.gov/portal/news-and-media/dmv-unveils-online-feature-to-
help-californians-with-new-requirement-to-renew-disabled-person-parking-placard/.
[39] California Department of Motor Vehicles, *Millions of Californians Taking Advantage of DMV
Services Without Visiting Office* (May 3, 2021), DMV.CA.GOV,
https://www.dmv.ca.gov/portal/news-and-media/
millions-of-californians-taking-advantage-of-dmv-services-without-visiting-office/.
[40] California Department of Motor Vehicles, *Californians Can Still Renew Disabled Person
Parking Placards After June 30 Deadline* (July 20, 2023), DMV.CA.GOV,
https://www.dmv.ca.gov/portal/news-and-media/californians-can-still-renew-disabled-person-
parking-placards-after-june-30-deadline/.

CLASS ACTION COMPLAINT

50.     Google assigns a unique numerical identifier to each webpage that uses Google Analytics and DoubleClick, and Google maintains records associating each website with the data it transmits and the website where it is embedded.[41] The numerical identifier associated with the instances of Google Analytics and DoubleClick currently operating on the DMV website is UA-3419582-34, as indicated below.





[41] Google, *[GA4] Find your Google tag ID*, GOOGLE.COM, https://support.google.com/analytics/answer/9539598?hl=en (last visited Apr. 26, 2024).

CLASS ACTION COMPLAINT

51. Accordingly, Google knows that it is intercepting communications between users and the DMV, obtaining information from DMV motor vehicle records, and learning the contents of the communications between users and the DMV.

### F. Google Transfers and Obtains Users' Names

52. By default, the Google Analytics and DoubleClick embedded on the DMV website transmit to Google the first name of each person who accesses their MyDMV account.

53. The DMV requires users to create a MyDMV account to access services through the DMV website. To create a MyDMV account, users are required register with the DMV. In so doing, they are required to provide their name, which is the name that will appear on their driver's license or identification card. All of the information that users provide when registering for their MyDMV account is saved to the DMV database.[42]

54. As shown in the image below, after a user creates a MyDMV account, the DMV uses the user's first name ("John") in its database for the account as the button to access their MYDMV portal.



55. Google Analytics and DoubleClick are active within each users' MyDMV account. As shown below, Google Analytics and DoubleClick obtain a record when users access their MyDMV account, which includes the user's first name, the "cid" and "jid" code that Google uses to uniquely identify its members, as well as other identifiers and descriptive data.

---

[42] California Department of Motor Vehicles, *Conditions of Use*, DMV.CA.GOV, https://www.dmv.ca.gov/portal/conditions-of-use/ (last visited May 9, 2024) ("If you choose to submit information to us, the information will be transmitted through secure lines to our database").

### G. Google Transfers and Obtains URL Information

56.     Google Analytics and DoubleClick are embedded throughout the DMV's website, thus allowing Google to gather information about the various URLs that users visit within the California DMV website. Many of these URLs provide clear insight into users' data including their disability information that go well beyond mere records of the URL.

57.     The content of users' searches on the DMV website (when using an applicable browser) are clearly indicated within the URL obtained by Google, along with users' "cid" and "jid" code, which Google uses to uniquely identify its members. For example, Google obtains information about users' search for "teens" on the DMV's website:

58.    Similarly, Google obtains information about and the contents of users' search for "disabled drivers" on the DMV's website:





59.    Users' activity within specific sections of the website, and the contents thereof, are also obtained by Google. For instance, Google obtains information when users take a driving self-assessment:



60.    Google also obtains information about, and the contents of, users' inquiries regarding disabilities:

**H.  Google Transfers and Obtains Personal Information Including Disability Information from Motor Vehicle Records**

61.    Google also uses Google Analytics and DoubleClick to obtain information about individuals' applications for disability parking placards. Upon entering the DMV's homepage, users can select "Vehicle Registration" to view the drop-down option of "Disabled Person Parking Placards and Plates."

1





62.     The URL delineating this activity is obtained by Google Analytics and
DoubleClick:

21

▼ Request Headers

:authority:          www.google-analytics.com
:method:             POST
:path:               /j/collect?
                     v=1&_v=j101&a=219412621&t=pageview&_s=1&dl=https%3A%2F%2Fwww.dmv.ca.gov%
                     2Fportal%2Fvehicle-registration%2Fdisabled-placards-and-plates%2F&ul=en-us&de=UTF-
                     8&dt=Disabled%20Placards%20and%20Plates%20-%20California%20DMV&sd=24-
                     bit&sr=1920x1080&vp=1045x1000&je=0&_u=SCCAEABRAAAACAEK~&jid=3561888118&g
                     jid=1369143602&cid=341140257.1706051815&tid=UA-3419582-
                     34&_gid=652364026.1706738362&_r=1&gtm=45He41v0n81KHCVGH4v812326853za200&c
                     d2=1706825121532.uz5jh7m&cd3=2024-02-01T14%3A05%3A21.532-
                     08%3A00&cd4=registration&cd5=resource%20portal&cd6=en_US&cd7=%20-
                     %20&cd8=%20-
                     %20&gcd=11l1l1l1l1&dma=0&cd1=341140257.1706051815&z=1046035132

✕  Headers   Payload   Preview   Response   Initiator   Timing   Cookies

▼ General

Request URL:         https://stats.g.doubleclick.net/j/collect?t=dc&aip=1&_r=3&v=1&_v=j101&tid=UA-3419582-3
                     4&cid=341140257.1706051815&jid=3561888118gjid=1369143602&_gid=652364026.170673
                     8362&_u=SCCAEAARAAAACAEK~&z=1593001012

63.     Users then select to submit a disabled person placard ("DPP") application and proceed by clicking the "Start Application" button. The information submitted through this process is the DMV's motor vehicle record for the disability parking placard. It is maintained by the DMV for those purposes after it is submitted to the DMV.



CLASS ACTION COMPLAINT



64.     Google obtains URL information including information regarding each of the steps in the DPP application process, thereby revealing an individual's disability information and the contents of each individual's communications with the DMV about their disability and their application for a disability parking placard.

65.    To complete the process and submit the application, users must input their email addresses and other personal information into a succession of online forms maintained in the DMV's database.



66.     Similar information is collected from individuals who are renewing DPPs, including, at a minimum, first, and last name, and date of birth.

67.     After submitting the form, the user receives an e-mail from the DMV regarding the DPP application. To view their application, users can click the "Status Checker" button. After clicking the button, users are prompted to enter the "case number" and "email address" associated with their application.

**For any document in "incomplete" or "missing" status above, please make the nec**
you reply, it is important that you **keep the same email subject line** to ensure your infor

If you are attaching a file to this email, please note the following:

- Files should be either .PDF or image file type
- File size should be 10MB or less
- Files cannot be password protected

You can check on your case status at any time by clicking  Status Checker.

Sincerely,

California Department of Motor Vehicles

ref:_00Dt0Gyxg._5008y9w9wR:ref



68.    Users are then redirected to the DMV website, and Google obtains a URL with users' email addresses directly from DMV's website. This information is also part of the DMV's motor vehicle record for the disability parking placard.

69.    As is clear from the foregoing images, using Google Analytics and DoubleClick, Google obtains, and permits the DMV to transmit, users' email addresses, disability information, disability placard information, and other identifying information from the DMV's motor vehicle records, and about users' activity on the DMV website, including the contents of users' communications with the DMV. The information obtained by Google is then combined with the CID and JID information that Google obtains about users as they move around the DMV website, along with email address information, to connect that information to Google's user profile. This enables advertisers to target users with relevant content or advertisements using the personal information and data that Google harvested from the driving records maintained by the DMV and from the contents of website users' communications with the DMV.

70.    Moreover, such personal information was obtained "knowingly" under the DPPA because Google specifically designed Google Analytics and DoubleClick to collect information wherever it is installed and suggested that website owners install it in ways that maximize the data collected thereby. Furthermore, Google knows that Google Analytics and DoubleClick are transmitting information from motor vehicle records maintained by the DMV, and transmitting information about, and the contents, of communications exchanged between users and the DMV. For the same reason, the information was obtained "intentionally" under CIPA.

**I.    Google Does Not Obtain Data from the DMV For An Authorized Purpose and Does Not Obtain User Consent**

71.    By using Google Analytics and DoubleClick, Google obtains users' personal information including, but not limited to, disability information from individuals' motor vehicle records maintained by the DMV, and also learns of the contents of their communications with the DMV.

CLASS ACTION COMPLAINT

72.    Plaintiff and Class Members did not authorize Google to obtain personal information contained in their motor vehicle records or learn the contents of their communications with the DMV for any purposes, let alone for marketing and advertising.

73.    Google's Privacy Policy states, in pertinent part, that "[t]his Privacy Policy is meant to help you understand what information we collect, why we collect it, and how you update, manage, export, and delete your information"[43] However, nowhere does Google disclose that it collects personal information or disability information from the DMV website through its use of Google Analytics and DoubleClick, or that it uses Google Analytics and DoubleClick to surveil and learn the contents of communications between users and the DMV.

74.    Google's acquisition and use of the personal information is impermissible. The DPPA does not permit Google to acquire or use personal information for its own marketing or advertising business or purposes.

75.    Neither Google nor the DMV received written consent from Plaintiff and Class Members to obtain their personal information or to learn the contents of their communications with the DMV. The DMV's website specifically advises users that "[i]t is the policy of the DMV to limit the collection of personal information and to safeguard the privacy of personal information collected or maintained by DMV."[44]

76.    That Plaintiff and Class Members would not have consented to Google obtaining their personal information or learning the contents of their communications with the DMV is not surprising. Plaintiff and Class Members have a reasonable expectation of privacy in the data Google collected.

---

[43] Google, *List of Services & Service-Specific Additional Terms*, GOOGLE.COM, https://policies.google.com/terms/service-specific?hl=en&gl=us (last visited Apr. 26, 2024). Google, *Privacy & Terms*, Privacy & Terms, GOOGLE.COM, https://policies.google.com/privacy?hl=en-US (last visited Apr. 26, 2024).
[44] California Department of Motor Vehicles, *Privacy and Security*, DMV.CA.GOV https://www.dmv.ca.gov/portal/privacy-and-security/ (last visited Apr. 26, 2024).

77.     Several studies examining the collection and disclosure of personal data have concluded such collection is a violation of privacy expectations that have been established as general social norms.

78.     Privacy polls and studies are nearly uniform in showing that most Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before data is collected and shared.

79.     For example, a recent study by Consumer Reports confirmed Americans' shrinking confidence that their "online information is private and secure."[45] Consumers across political party lines—92% of Americans—confirmed their belief that internet companies and websites should be required to obtain consent before selling or sharing their data with other companies.[46] The same percentage believe internet companies and websites should be required to provide consumers with a complete list of the data collected about them.

80.     According to a study by *Pew Research Center*, a majority of Americans—roughly six in ten U.S. adults—say that they do not think it is possible to go through daily life without having data collected about them by companies.[47] However, the holding of this belief has not eroded people's expectation that their data remain private. Approximately 79% of Americans report being concerned about the way their data is being used by companies.[48]

81.     Google surreptitiously obtained and used Plaintiff's and Class Members' personal information without a permissible purpose. Additionally, Google surreptitiously learned the contents of Plaintiff's and Class Members' communications with the DMV and used that

[45] Consumer Reports, *Consumers Less Confident About Healthcare, Data Privacy, and Car Safety, New Survey Finds*, CONSUMER REPORTS (May 11, 2017), https://www.consumerreports.org/consumer-reports/consumers-less-confident-about-healthcare-data-privacy-and-car-safety-a3980496907/.
[46] *Id*.
[47] Pew Research Center, *Americans and Privacy: Concerned, Confused, and Feeling Lack of Control Over Their Personal Information* ("Americans and Privacy"), PEW RESEARCH CENTER, (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/.
[48] *Id*.

information, all without Plaintiff's or Class Members' consent and in violation of their reasonable expectations of privacy.

**TOLLING, CONCEALMENT, AND ESTOPPEL**

82.    Plaintiff incorporates and realleges the foregoing factual allegations by reference.

83.    Plaintiff did not know, and could not have known, when he accessed the DMV's website for the purpose of renewing her disability parking placard that Google Analytics and DoubleClick were installed on the DMV's website and were obtaining her personal information and learning the contents of her communications with the DMV, or that Google was using the data and information it obtained and/or learned for impermissible purposes.

84.    Plaintiff did not have the means to discover Google's unlawful conduct until approximately May 2024.

85.    Plaintiff could not have discovered, through the exercise of reasonable diligence, the full scope of Google's unlawful conduct. Google designed the Google Analytics and DoubleClick to seamlessly operate on websites, to be undetectable during the ordinary use of a website, and to collect personal information and to learn the contents of communications with the DMV. Simultaneously, Google failed to disclose to Plaintiff or Class Members that Google Analytics and DoubleClick were installed on the DMV website, or that they were obtaining personal information and learning the contents of users' communications with the DMV.

86.    All applicable statutes of limitations have been tolled by operation of the delayed discovery rule.

87.    Google affirmatively hid its true actions and knowingly permitted the DMV to make statements that were misleading and concealed the true nature of Google's conduct and operation. The circumstances of Google's conduct on, and with respect to, the DMV website would lead a reasonable user to believe that Google was not collecting and obtaining personal information or learning the contents of communications with the DMV.

88.    Plaintiff was ignorant of the information essential to pursue her claims, without any fault or lack of diligence on her own part.

89.     Google was under a duty to disclose its conduct, and the character, quality, and nature of its activities with Google Analytics and DoubleClick, and the DMV website to Plaintiff and Class Members. Google had superior knowledge regarding Google Analytics and DoubleClick and their functions on the DMV website, made partial representations in its Privacy Policy regarding the use of pixels, and actively concealed the true nature of Google Analytics and DoubleClick and their function on the DMV website.

90.     Therefore, all applicable statute of limitations have also been tolled by Google's knowing and active fraudulent concealment.

## CLASS ACTION ALLEGATIONS

91.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf all natural persons who visited the California Department of Motor Vehicles website to apply for, renew, or check the status of a disability placard (the "Class"). Members of the Class are referred to as "Class Members."

92.     Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and any members of their immediate families; (2) Google, its subsidiaries, affiliates, parents, successors, predecessors, and any entity in which Google or its parents have a controlling interest and their current or former employees, officers, and directors; and (3) Plaintiff's counsel and Defendant's counsel.

93.     **Numerosity**: The exact number of Class Members is unknown and unavailable to Plaintiff at this time. Based on the number of online transactions reported by the DMV, Plaintiff believes that the Class includes millions of individuals.

94.     **Predominant Common Questions**: The claims asserted by Plaintiff and Class Members present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. Common questions applicable to the Class include, but are not limited to, the following:

a.     Whether Google's conduct violates the Driver's Privacy Protection Act, 18 U.S.C. §§ 2721, *et. seq.*;

b.      Whether Google knowingly obtained personal information;

c.      Whether the personal information Google obtained came from a "motor vehicle record;"

d.      Whether Google knowingly used personal information;

e.      Whether Google's use of personal information was for an "improper purpose;

f.      Whether Google's conduct violates the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*.;

g.      Whether Google learned the contents of Plaintiff's and Class Members' communications with the DMV; and

h.      Whether Google used the information it learned from the contents of Plaintiff's and Class Members' communications with the DMV.

95.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class. The claims of Plaintiff and Class Members arise from the same conduct by Google and are based on the same legal theories.

96.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest that is antagonistic to the interests of the Class, and Google has no defense unique to any Plaintiff or Class Member. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class, and they have the resources to do so. Neither Plaintiff, nor Plaintiff's counsel, have any interest adverse to the interests of any other Class Member.

97.     **Superiority**: This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense, and promote uniform decision-

making. Class-wide damages are essential to compel Google to comply with state and federal law. Moreover, because the amount of each individual Class Member's claim is small relative to the complexity of the litigation, and because of Google's financial resources, Class Members are unlikely to pursue legal redress individually for the violations detailed in this complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

98.    **Injunctive Relief**: Plaintiff also satisfies the requirements for maintaining a class under Rule 23(b)(2). Google acted on grounds that apply generally to the proposed Class, making final declaratory or injunctive relief appropriate with respect to the proposed Class as a whole.

99.    **Particular Issues**: Plaintiff also satisfies the requirements for maintaining a class action under Rule 23(c)(4). Plaintiff's claims are common to all Class Members and are capable of class-wide resolution that will significantly advance the litigation.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE DRIVER'S PRIVACY PROTECTION ACT

## 18 U.S.C. §§ 2721, *ET SEQ.*

100.    Plaintiff incorporates and realleges the foregoing factual allegations by reference.

101.    Plaintiff brings this cause of action individually and on behalf of Class Members.

102.    The DPPA provides a civil cause of action against any "person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted" under section 2721(b). 18 U.S.C. § 2724(a).

103.    Google intentionally designed Google Analytics and DoubleClick to obtain personal information and data from website users, and specifically suggested that website owners install Google Analytics and DoubleClick to maximize the amount of information and data collected by Google Analytics and DoubleClick.

104.    Google obtains personal information including, but not limited to, disability information from the instances of Google Analytics and DoubleClick installed on the DMV website and the motor vehicle records submitted to and maintained by the DMV through its website.

105.    Disability information is included within the definition of "personal information" under the DPPA.

106.    The personal information that Google obtains from the instances of Google Analytics and DoubleClick installed on the DMV website come from a "motor vehicle record" because they derive from the DMV database.

107.    Google knew that it was obtaining personal information from motor vehicle records maintained by the DMV via Google Analytics and DoubleClick installed on the DMV's website. As alleged above, Google assigns unique identifiers to each instance of Google Analytics and DoubleClick, including those instances operating on the DMV website. These unique identifiers are used by Google to associate the data obtained from Google Analytics and DoubleClick with the website where they are embedded. Thus, Google knows that Google Analytics and DoubleClick installed on the DMV website are obtaining personal information from the DMV and the motor vehicle records it maintains.

108.    Google obtains information from Google Analytics and DoubleClick when individuals use the DMV website to apply for, renew, provide information about, and/or check on the status of, among other things, disability placards which pertain to motor vehicle operators' permits. Thus, the information obtained by Google comes from information that the DMV requests and maintains about individuals' motor vehicle records.

109.    Google does not obtain or use personal information for any permissible purpose under 18 U.S.C. § 2721(b). Based on Google's marketing and advertising business, and on the facts alleged above, Google uses the personal information it obtains from motor vehicle records to create profiles, categorize individuals, and derive information about them to sell its customers the ability to create targeted marketing and advertising.

110.    Google's use of Google Analytics and DoubleClick to obtain personal information from motor vehicle records was willful or in reckless disregard of the law. Google is a sophisticated internet technology and online marketing company that knows it cannot collect individual's private and personal information without obtaining consent, or for improper purposes. Despite knowing that its practice of obtaining and using personal information is subject to restrictions, Google willfully and/or recklessly violated the DPPA.

111.    As a proximate result of Google's violation of the DPPA, Plaintiff and Class Members are entitled to recover: (1) actual damages, but not less than liquidated damages in the amount of $2,500; (2) punitive damages; (3) reasonable attorneys' fees and other litigation costs reasonably incurred; and (4) such other preliminary and equitable relief as the court determines to be appropriate.

112.    Furthermore, Plaintiff and Class Members seek an injunction prohibiting Google from continuing to obtain and use personal information from motor vehicle records maintained by the DMV using Google Analytics and DoubleClick.

**SECOND CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**CAL. PENAL CODE §§ 630, *ET SEQ.***

113.    Plaintiff incorporates and realleges the foregoing factual allegations by reference.

114.    Plaintiff brings this cause of action individually and on behalf of Class Members.

115.    In the California Invasion of Privacy Act ("CIPA"), the California Legislature explained that it was their intent "to protect the right of privacy of the people of this state." Cal. Penal Code § 630. The Legislature also declared that such protection was necessary given "that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." *Id.*

116.     It is illegal under CIPA for any person to use "any machine, instrument, or contrivance, or in any other manner . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, read[], or attempt[] to read, or to learn the contents or meaning of any message, report or communication while the same is in transit or passing over any wire, line, or cable or is being sent from, or received at any place within this state; or who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained, or who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in [section 631.]" Cal. Penal. Code § 631(a).

117.     Google willfully attempted to and did learn the contents or meaning of Plaintiff's and Class Members' communications with the DMV without their consent. Google intentionally designed Google Analytics and DoubleClick to collect and learn information about users' communications with websites and the contents of those communications. Google Analytics and DoubleClick are embedded on and throughout the DMV website and transmit the URL of each page visited on the website to Google. Google Analytics and DoubleClick also provide Google with information showing that Plaintiff and Class Members communicated with the DMV to apply for or renew driver's permits and/or licenses, vehicle title and/or registration, disability information for disability placards, and identification cards and/or to check on the status of those items. As alleged in more detail above, Google Analytics and DoubleClick also provide Google with the contents of Plaintiff's and Class Members' searches of the DMV website without their consent.

118.     Google attempted to and did use the information it learned from the contents of Plaintiff's and Class Members' communications with the DMV. Based on Google's marketing and advertising business, and on the facts alleged above, Google uses the information it obtains and collects from the DMV to create profiles, categorize individuals, and derive information about them to sell its customers the ability to create targeted marketing and advertising.

37

119.    The information obtained by Google through Google Analytics and DoubleClick is not mere "record information." Rather, the information obtained through Google Analytics and DoubleClick is substantive and personal; revealing, for example, that Plaintiff has a disability (or believes that they have a disability) and requires a disability parking placard.

120.    Google Analytics and DoubleClick are always active on nearly every page of the DMV website and broadly transmits other information from the DMV to Google that identifies websites users.

121.    Through the foregoing practices, Google intended to learn, and did learn, the meaning of the contents of Plaintiff's and Class Members' communications with the DMV including, but not limited to, URLs, search queries, submissions made to the DMV, and content and/or messages exchanged between the DMV, and Plaintiff and Class Members.

122.    Google Analytics and DoubleClick satisfy CIPA's requirement that a person use means such as a "machine, instrument, or contrivance, or in any other manner." Cal. Penal Code § 631(a). Moreover, Google satisfies the requirements of section 631 because Google Analytics and DoubleClick are programmed and intended to cause other machines, instruments, contrivances and in any other manner caused Google to obtain and learn the contents of Plaintiff's and Class Members' communications with the DMV and allowed Google to use what it learned. These include:

    a.    Plaintiff's and Class Members' internet browsers;

    b.    Plaintiff's and Class Members' computers, tablets, and/or mobile devices;

    c.    Google's website, marketing and ad servers;

    d.    The website and ad servers from which Google obtained Plaintiff's and Class Members' communications while they were using an internet browser to access or navigate the DMV website; and

    e.    The JavaScript and/or computer code and programs that Google used to obtain and learn the contents of Plaintiff's and Class Members' communications.

123.    Google conceived of and carried out its plan—to learn the contents of Plaintiff's and Class Members' communications while they were using a web browser or mobile application to visit and/or communicate with the DMV through its website—in California.

124.    Google learned the contents of Plaintiff's and Class Members' communications with the DMV, through its website, while those communications were in transit. Google learned about the communications after they were sent by Plaintiff and Class Members but before they were received by the DMV. Moreover, Plaintiff and Google are both California residents. Therefore, the communications were sent from, or received within California.

125.    Plaintiff and Class Members suffered loss by reason of Google's violations, including, but not limited to, violations of their right of privacy, loss of value in their personally identifiable information, and the inequity of Google's enrichment by means of obtaining, identifying and private information pertaining to Plaintiff and Class Members and learning the contents of their communications with the DMV.

126.    Google did not obtain authorization or consent to learn the contents of Plaintiff's and Class Members' communications with the DMV or to use that information.

127.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by Google's violation of Cal. Penal Code § 631 and each seek damages for the greater of $5,000 or three times the actual amount of damages they suffered.

128.    Furthermore, Plaintiff and Class Members seek an injunction prohibiting Google from continuing to obtain and learn the contents of their communications with the DMV using Google Analytics and DoubleClick, or from using any of that information.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

a.    Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

b.    Enter judgment in favor of Plaintiff and the Class;

c.     Enjoin Google from obtaining personal information from motor vehicle records maintained by the DMV and from using it;

d.     Enjoin Google from learning the contents of Plaintiff's and Class Members' communications with the DMV and from using what it learned from the communications;

e.     Award Plaintiff and Class Members actual and/or statutory damages pursuant to the DPPA;

f.     Award Plaintiff and Class Members actual and/or statutory damages pursuant to CIPA;

g.     Award Plaintiff and Class Members pre- and post-judgment interested as provided by law;

h.     Award Plaintiff and Class Members reasonable litigation expenses and attorneys' fees as permitted by law; and

i.     Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues triable as of right.


Dated:     May 24, 2024                          Respectfully submitted,

                                                 */s/ Roland Tellis*
                                                 Roland Tellis (SBN 186269)
                                                 rtellis@baronbudd.com
                                                 David Fernandes (SBN 280944)
                                                 dfernandes@baronbudd.com
                                                 Sterling L. Cluff (SBN 267142)
                                                 scluff@baronbudd.com
                                                 Michael J. Pacelli (SBN 338042)
                                                 mpacelli@baronbudd.com
                                                 **BARON & BUDD, P.C.**
                                                 15910 Ventura Blvd., Suite 1600
                                                 Encino, CA 91436
                                                 Telephone: 818.839.2333

                                                 Don Bivens (pro hac vice forthcoming)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DON BIVENS PLLC**
don@donbivens.com
15169 N. Scottsdale Road
Scottsdale, AZ 85254
Telephone: 602.708.1450

*Attorneys for Plaintiff and the Putative Class*

41