COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
MORGAN LEWIS (322205)
(melewis@cooley.com)
ANUPAM DHILLON (324746)
(adhillon@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

KATHERINE WILSON, individually and on behalf of all others similarly situated,

Plaintiff,

v.

GOOGLE LLC,

Defendant.

Case No. 5:24-cv-03176-BLF

**DEFENDANT GOOGLE LLC'S NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT AND REQUEST FOR JUDICIAL NOTICE**

Date: November 14, 2024
Time: 9:00 a.m.
Dept: Courtroom 3, 5th Floor
Judge: Beth Labson Freeman
Trial Date: TBD
Date Action Filed: May 24, 2024

# TABLE OF CONTENTS


Page

NOTICE OF MOTION AND MOTION ..... vii
STATEMENT OF RELIEF SOUGHT ..... vii
ISSUES TO BE DECIDED ..... vii
MEMORANDUM OF POINTS AND POINTS OF AUTHORITY ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
  A. The Parties ..... 2
  B. Google Analytics and DoubleClick ..... 2
  C. The DMV's Use of Google Analytics and DoubleClick ..... 3
III. ARGUMENT ..... 4
  A. Rule 12(b)(7) – Plaintiff Fails to Join a Required Party in This Action. ..... 4
    1. The DMV is a Required Party. ..... 4
      a. The Court cannot award "complete relief" without the DMV. ..... 5
      b. Proceeding without the DMV would impair the DMV's interests. ..... 7
      c. The DMV's Absence May Subject Google to Undue Liability. ..... 9
    2. The DMV Cannot be Joined. ..... 10
    3. Due to the DMV's Absence, The Court Should Dismiss the Action. ..... 10
  B. Rule 12(b)(6) – Plaintiff Fails to State a Claim under the DPPA. ..... 11
    1. Plaintiff Fails to Plausibly Allege that Google *Knowingly* Obtained or Used Her Personal Information. ..... 11
    2. Plaintiff Fails to Allege that the Alleged Personal Information Was From a Motor Vehicle Record. ..... 14
    3. The Challenged Conduct Here Falls Within the "Permitted Purposes" Exceptions, Which Precludes DPPA Liability ..... 17
  C. Rule 12(b)(6) – Plaintiff Fails to State a Claim under Section 631 of CIPA. ..... 18
    1. Google is the DMV's Vendor, Not a Third-Party Eavesdropper. ..... 19
    2. Plaintiff's Claim Under CIPA's Second Clause Has Multiple Defects ..... 21
    3. Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws. ..... 24
IV. CONCLUSION ..... 25
REQUEST FOR JUDICIAL NOTICE ..... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Vertafore, Inc.*, 28 F.4th 613 (5th Cir. 2022)........ 12

*Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015 (9th Cir. 2002)........ 8, 9, 10, 11

*Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)........ 11, 15, 16, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)........ 14, 22, 23

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal . 2023)........ 19

*Cal. v. Azuma Corp.*, 2023 WL 5835794 (E.D. Cal. Sept. 8, 2023)........ 9

*Cody v. Ring LLC*, 2024 WL 735667 (N.D. Cal. Feb. 22, 2024)........ 21, 23

*Davis v. Meta*, 2024 WL 3293644 (D. Nev. July 3, 2024)........ 16

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150 (9th Cir. 2002)........ 6, 9, 11

*Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18 (1st Cir. 2012)........ *passim*

*Dye v. Meta*, 2024 WL 2125602 (E.D.N.C. May 10, 2024)........ 15, 16, 17

*E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774 (9th Cir. 2005)........ 5, 6, 7

*E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010)........ 7, 9

*Encino Petroleum, Inc. v. Allied Prop. & Cas. Ins. Co.*, 2012 WL 1289850 (C.D. Cal. Apr. 16, 2012)........ 6

*Enslin v. The Coca-Cola Company*, 136 F. Supp. 3d 654 (E.D. Pa. 2015)........ 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**


*Esparza v. Gen Digital Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .......... 23

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 19

*Garcia v. Best W. Norwalk Inn, LLC*,
2021 WL 4260406 (C.D. Cal. June 14, 2021) .......... 25

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) .......... 12

*Gershzon v. Meta Platforms Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .......... 7, 15, 16

*In re Google Assistant Privacy Lit.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 24

*Graham v. Noom*,
533 F. Supp. 3d 832 (N.D. Cal. 2021) .......... 19, 20

*Heiting v. Taro Pharm s. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) .......... 24

*Hibbs v. Dep't of Hum. Res.*,
273 F.3d 844 (9th Cir. 2001), *aff'd sub nom. Nev. Dep't of Hum. Res. v. Hibbs*,
538 U.S. 721 (2003) .......... 10

*Iconlab Inc. v. Bausch Health Companies Inc.*,
2019 WL 12521292 (C.D. Cal. May 15, 2019), *aff'd*, 828 F. App'x 363 (9th Cir. 2020) .......... *passim*

*Jackson v. LinkedIn*,
No. 5:24-cv-00812-PCP .......... 7, 22, 24

*James v. Allstate Insurance Company*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......... 22, 25

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) .......... 20, 21

*Johnson v. Blue Nile, Inc.*,
2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 19

*Keogh v. Meta Platforms, Inc.*,
680 F. Supp. 3d 601 (D.S.C. 2023) .......... 13, 15, 16, 17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Licea v. Am. Eagle Outfitters, Inc.*,
659 F. Supp. 3d 1072 (C.D. Cal. 2023) .......... 19

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) .......... 19, 20, 22

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) .......... 19

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) .......... 23, 24

*Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*,
321 F.R.D. 475 (D.P.R. 2017) .......... 7

*Quigley v. Yelp*,
2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) .......... 23

*Rand v. Travelers Indem. Co.*,
637 F. Supp. 3d 55 (S.D.N.Y. 2022) .......... 12

*Republic of Philippines v. Pimentel*,
553 U.S. 851 (2008) .......... 11

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) .......... 22

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 1, 13, 23

*Salt River Project Agric. Improvement & Power Dist. v. Lee*,
672 F.3d 1176 (9th Cir. 2012) .......... 5

*Senne v. Vill. of Palatine, Ill.*,
695 F.3d 597 (7th Cir. 2012) .......... 11, 12

*Shermoen v. United States*,
982 F.2d 1312 (9th Cir. 1992) .......... 8

*Shimkus v. Gersten Companies*,
816 F.2d 1318 (9th Cir. 1987) .......... 6

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .......... 21

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. 2020) .......... 25

*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999) .......... 9

*In re USAA Data Sec. Litig.*,
621 F. Supp. 3d 454 (S.D.N.Y. 2022) .......... 12

*Valenzuela v. Super Bright LEDs Inc.*,
2023 WL 8424472 (C.D. Cal. Nov. 27, 2023) .......... 21

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) .......... 19

*Webb v. City of Tempe*,
2017 WL 1233827 (D. Ariz. Apr. 4, 2017) *aff'd*, 703 F. App'x 539 (9th Cir. 2017) .......... 11

*White v. Univ. of Cal.*,
2012 WL 12335354 (N.D. Cal. Oct. 9, 2012), *aff'd*, 765 F.3d 1010 (9th Cir. 2014) .......... 4

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) .......... 19

*Yale v. Clicktale, Inc.*,
2021 WL 1428400 (N.D. Cal. April 15, 2021) .......... 19

*Yockey v. Salesforce, Inc.*,
688 F. Supp. 3d 962 (2023) .......... 21

**Statutes**

18 U.S.C.
§ 2721(b)(1) .......... 17
§ 2723 (b) .......... 8
§ 2724 .......... 11
§ 2724(a) .......... 12
§ 2725(1) .......... 14

Cal. Penal Code § 631(a) .......... *passim*

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Cal. Veh. Code
§ 22511.5(b) ..... 14
§ 22511.55(a)(1)(C) ..... 14
§ 22511.56 ..... 14

**Federal Rules**

Fed. R. Civ. P.
12 ..... *passim*
19 ..... *passim*

Fed. R. Evid. 201 ..... 25

**Other Authorities**

BLACK'S LAW DICTIONARY (11th ed. 2019) ..... 14

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE THAT,** on November 14, 2024, in Courtroom 3, 5th floor of the above-entitled court, located at 280 South 1st Street, San Jose, California, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7), defendant Google LLC ("Google") will and hereby does move to dismiss the Complaint (ECF No. 1) filed by plaintiff Katherine Wilson ("Plaintiff"). This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of Greg Johnson ("Johnson Decl.") and Aarti Reddy ("Reddy Decl."), the concurrently-filed Request for Judicial Notice, the pleadings and evidence on file in this matter, oral argument of counsel, and such other materials and arguments as may be presented in connection with the hearing of the motion.

## STATEMENT OF RELIEF SOUGHT

Google seeks an order dismissing with prejudice all causes of action in the Complaint for failure to join a required party, or in the alternative, for failure to state a claim upon which relief can be granted.

## ISSUES TO BE DECIDED

Whether Plaintiff's Complaint should be dismissed because she has failed to join the California Department of Motor Vehicles ("DMV") as a required party under Rule 12(b)(7), and because she has failed to state a claim for each of her two causes of action under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND POINTS OF AUTHORITY

## I. INTRODUCTION

Plaintiff Katherine Wilson ("Plaintiff") claims that when she visited certain webpages of the California Department of Motor Vehicles (the "DMV"), Google LLC ("Google") learned of her private disability status in violation of the Driver's Privacy Protection Act ("DPPA") and the California Invasion of Privacy Act ("CIPA"). Google allegedly received this information embedded in the DMV's web addresses (or "URLs"), sent to Google due to Google Analytics or DoubleClick "tags" the DMV installed on its website. Thus, according to Plaintiff, because ***the DMV*** installed Google's tags on disability-related webpages and ***the DMV*** set up its pages in a way that allegedly discloses private information, ***Google*** should be held liable. This is not the law. The Court should grant dismissal because Plaintiff sues the wrong party and fails to state a claim.

***First***, the Court should dismiss this action with prejudice because the DMV is a required party that cannot be joined due to its sovereign immunity. The Court cannot grant complete relief to Plaintiff or the class in the DMV's absence. Indeed, the DMV's same alleged misconduct has already led to three lawsuits just in this district, including one filed against LinkedIn and by the same counsel that represent Plaintiff, premised on a nearly verbatim complaint. Without the DMV as a party, the Court's decision may also adversely impact the interests of the DMV and the existing parties in violation of Rule 19. The Massachusetts District Court dismissed a highly analogous DPPA case for this reason in *Downing v. Globe Direct*. This Court should do the same.

***Second***, Plaintiff's DPPA claim is untenable under Rule 12(b)(6). A party is liable under the DPPA only where it (1) knowingly obtains, discloses, or uses personal information, (2) from a motor vehicle record, (3) for an impermissible purpose. Here, Plaintiff alleges no facts plausibly showing that Google "knowingly" obtained personal information from the DMV and her conclusory assertions that Google must have known are inadequate. Likewise, the challenged information here does not come from a "motor vehicle record." That term definitionally excludes the ***parking*** placards at issue here and binding Ninth Circuit authority also limits the DPPA to records "maintained by an agency," which this challenged information was not. Moreover, even if Google knowingly obtained this information from a motor vehicle record, it would have done so

for the permitted purpose of assisting the DMV in performing its functions.

***Third***, Plaintiff's CIPA claim fares no better under Rule 12. Plaintiff alleges that Google violated the second and third clauses of Section 631, because Google willfully intercepted Plaintiff's communications with the DMV and read, attempted to read, or learned their contents (clause two) and used their contents (clause three). The claim fails at the outset because, as a mere vendor of advertising services receiving information for the DMV's benefit, Google is a party to the communication with no liability. Plaintiff also makes no factually-supported allegations of several elements of her clause-two claim. Plaintiff does not sufficiently allege that Google read or attempted to read these alleged communications, intercepted them "in transit," or acted willfully. Plaintiff's clause-three claim is also deficient because it rests on the flawed clause-two claim and because her allegations of use are conclusory and premised on generalities about Google's business.

For all these reasons, the Complaint is legally baseless and the Court should dismiss it.

## II. BACKGROUND

### A. The Parties

Google is a Delaware corporation headquartered in Mountain View, California. (Compl. ¶ 10.) "Commonly known for its search engine, Google Search," Google is a "global technology company that specializes in Internet-related services and products" offering "over 100 other services." (*Id.* ¶¶ 10, 22.) Plaintiff Katherine Wilson resides in California. (*Id.* ¶ 7.) She alleges she "possesses a disability parking placard issued to her by the DMV," that she "renewed her disability parking placard online in approximately June of 2023 and recalls renewing the disability parking placard through the MyDMV portal on the DMV website." (*Id.*)

### B. Google Analytics and DoubleClick

Google enables website owners to run advertising campaigns through its Google Marketing Platform, the "unified advertising and analytics platform" into which Google Analytics and DoubleClick are integrated. (*Id.* ¶ 32.) Using these services, under certain conditions, advertisers can target their advertisements to particular audiences based on certain permitted audience characteristics. (*Id.* ¶¶ 28-29.) The Google Analytics and DoubleClick tags are pieces of JavaScript codes that website owners like the DMV choose to install on their websites to better understand

their web traffic and, in certain circumstances, to improve their advertising efforts. (*Id.* ¶¶ 28-29, 35). These code snippets can collect and aggregate information providing insights into, for example, "what brought users to the site in the first place," which might be "a search engine, an advertisement they clicked on, or an email marketing campaign." (Johnson Decl. Ex. E). Advertisers like the DMV can utilize "configuration settings that allow [them] to customize how that data is processed" to include or exclude certain types of traffic. (*Id.*) After a website owner installs Google tags on its website, individuals' browsers send certain information about their visits to that website to Google. (Compl. ¶¶ 39-41.) Some of that information is then allegedly sent to Google and used to enable advertisers to optimize their advertising campaigns. (*Id.* ¶¶ 41-44.)

Before using Google Analytics, a website owner must accept the Google Analytics Terms of Service ("GA TOS"). Pursuant to that agreement, the DMV agreed not to "pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information" and that it would "comply with all applicable laws, policies, and regulations relating to the collection of information from Users." (Johnson Decl. Ex. B at § 7.)[1] Google's Help Center pages are also explicit that "no data be passed to Google that Google could use or recognize as personally identifiable information . . . such as names . . . email addresses, or any similar personal identifiers." (Reddy Decl. Ex. G.) Lastly, the Advertising Program Terms of Service and GA TOS require the DMV to indemnify Google for any liability stemming from the DMV's use of Google's advertising services. (Johnson Decl. Exs. A-C at § 8; Ex. D at § 11)

### C. The DMV's Use of Google Analytics and DoubleClick

Plaintiff alleges that, in or prior to 2023, the DMV installed Google tags on unspecified pages of its website such that, as an individual browses the DMV's website, these tags may cause the individual's browser to send specific URLs visited and a cookie identifier to Google. (*See*

---

[1] The DMV has been bound by similar obligations since installing Google Analytics. (Johnson Decl. Ex. A at § 7 ("You will not (and will not allow any third party to) use the Service to track and collect personally identifiable information of Internet users . . . and will comply with all applicable laws relating to the collection of information from visitors to Your websites").)

Compl. ¶¶ 8, 48-49, 56-57, 68, 83, 120.) Some of these URLs allegedly contain website visitors' first names, email addresses, or search queries. (*Id*; *see also* ¶¶ 52-55.) Allegedly, the DMV also installed Google tags on pages for disability parking placard applications and renewals, and the URLs for those pages contain references to the visitor's disability status. (*See id.* ¶¶ 48-49, 61-66, 69.)

Plaintiff contends that, while renewing her disability placard in 2023, her activity on the DMV webpages was transmitted to Google due to Google tags and that, at the time, she was unaware that the DMV had installed them on its website. (*See id.* ¶¶ 7-8.) Plaintiff does not identify any specific information she purportedly transmitted to Google, nor does she contend that she received targeted advertising relating to such transmission, or that Google used ***her*** data for any particular purpose. Instead, she merely alleges that she "discovered" the DMV's use of Google Analytics and DoubleClick in May 2024, under unspecified circumstances. (*Id.* ¶ 8.)

## III. ARGUMENT

Plaintiff brings two causes of action on behalf of herself and a class of all persons who visited the DMV website to apply for, renew, or check the status of a disability placard. Both claims should be dismissed under Rule 12(b)(7), for Plaintiff's failure to join a required party—the DMV itself. Moreover, even if Plaintiff could cure this defect (she cannot), the action should still be dismissed because Plaintiff also fails to state a claim under Rule 12(b)(6).

### A. Rule 12(b)(7) – Plaintiff Fails to Join a Required Party in This Action.

In determining whether a complaint must be dismissed for failure to join a required party, the Court conducts a three-step analysis. First, it considers if the third party is "required" under Rule 19(a)(1). If so, the court asks if the party can be joined. If joinder is impossible, the court decides if the case can fairly proceed without that party or must be dismissed. Fed. R. Civ. P. 19(b).

Notably, "to determine whether Rule 19 requires joinder of additional parties, the court may consider evidence outside of the pleadings." *White v. Univ. of Cal.*, 2012 WL 12335354 at *5 (N.D. Cal. Oct. 9, 2012), *aff'd*, 765 F.3d 1010 (9th Cir. 2014).)

#### 1. The DMV is a Required Party.

Rule 19(a)(1) deems a party "required" under three circumstances: (A) in that person's

absence, "the court cannot accord complete relief among existing parties," or (B) "he has an interest in the action and resolving the action in his absence," (i) "may as a practical matter impair or impede his ability to protect that interest," or (ii) "may leave an existing party subject to inconsistent obligations because of that interest." *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). The DMV is required here under all three tests.

**a. The Court Cannot Award "Complete Relief" Without the DMV.**

A party is required if, in its absence, the court cannot grant "complete relief among the existing parties." Fed. R. Civ. P. 19(a)(1)(A). Complete relief is "consummate" rather than "partial or hollow relief." *E.E.O.C. v. Peabody W. Coal Co*., 400 F.3d 774, 780 (9th Cir. 2005). Here, absent joinder of the DMV, this Court cannot grant complete relief for multiple, sufficient reasons.

***First***, without the DMV, Plaintiff cannot secure complete relief from this Court. Based on her own allegations, the DMV's conduct is "a cause of the same [equitable] injury to the [P]laintiff" as Google's alleged conduct. *Iconlab Inc. v. Bausch Health Companies Inc.*, 2019 WL 12521292, at *4 (C.D. Cal. May 15, 2019) (judgment against defendant-purchaser would not offer complete relief from illegal use, absent non-party claiming ownership of technology), *aff'd*, 828 F. App'x 363 (9th Cir. 2020) (citations omitted). Stated simply, relief will be hollow without the DMV. *Id.*

Specifically, Plaintiff alleges she is harmed when Google obtains, reads, and uses her alleged communications and interactions with the DMV's website. She seeks injunctive relief preventing Google from obtaining her personal information from the DMV, and from reading or using such information. (Compl. at Prayer for Relief.) But her own allegations establish that the Court cannot grant this relief without joining the DMV. Plaintiff admits that the ***DMV*** chose where to install Google's tags and code on its website and, therefore, what information was sent to Google. (*Id.* ¶ 37.) Indeed, any attempt by Google to review information received from the DMV to ensure it contains no personal information would, perversely, require Google to violate Plaintiff's requested injunction prohibiting Google from "learning the contents of [Plaintiff's] communications with the DMV." (*Id.* at Prayer for Relief.) Nothing in Plaintiff's Complaint supports an inference that Google can preemptively block alleged communications from the DMV's website without ever "obtaining" or "reading" them. Moreover, even if Google were able

to independently comply with all the injunctive relief Plaintiff seeks, that equitable relief would still be incomplete. The DMV would remain free to simply repeat its conduct with another advertising services company, continuing to cause Plaintiff the same alleged injury.

The ruling in the highly analogous case *Downing v. Globe Direct LLC* demonstrates this case cannot proceed without the DMV. 806 F. Supp. 2d 461, 470 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18, 19 (1st Cir. 2012). There, the Massachusetts Registry of Motor Vehicles (RMV) hired Globe Direct to mail registration renewal notices and advertisements and provided Globe Direct with the names and addresses of vehicle owners to facilitate that mailing. *Id.* at 464. Plaintiff, who received the mailing and ads, sued Globe Direct under the DPPA, alleging that he had not consented to its use of his motor vehicle record information for these advertising purposes. The court observed that failure to sue the state could prejudice the plaintiff, as "Massachusetts [could] sprout[] a new RMV renewal-registration contract with a different company much like a Hydra would grow new heads." *Id.* at 468–69. The Ninth Circuit has repeatedly affirmed this logic. *See, e.g.*, *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002) (no complete relief from judgment enjoining defendant contractor from effectuating hiring preferences of absent third-party employer); *see also Iconlab Inc.*, 2019 WL 12521292, at *4 ("this Court does not have the power to make Plaintiffs whole without imposing obligations on the Absent Parties"), *aff'd*, 828 F. App'x 363 (9th Cir. 2020). The same reasoning applies here—this Court's injunction would not prevent the DMV from allegedly continuing to violate Plaintiff's privacy interests by sharing her data with other third parties.

***Second***, Plaintiff's suit runs afoul of another fundamental purpose of Rule 19's completeness requirement: to avoid "multiple lawsuits on the same cause of action." *E.E.O.C.*, 400 F.3d at 780 (citation omitted). "The interests that are being furthered [by Rule 19] are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter." Rule 19, Committee Note, "The Amended Rule"; *Shimkus v. Gersten Companies*, 816 F.2d 1318, 1322 (9th Cir. 1987) ("Although not a factor specified in Rule 19(a), judicial economy favors joining [absent parties]" as otherwise "the court would be burdened" with "multiple suits."); *Encino Petroleum, Inc. v. Allied Prop. & Cas. Ins. Co.*, 2012 WL 1289850, at

*2 (C.D. Cal. Apr. 16, 2012) (same). Here this risk has firmly materialized. There are already ***two other cases in this district*** stemming from the DMV's allegedly improper use of advertising technology on its disability parking placard renewal website pages. *Gershzon v. Meta Platforms Inc.*, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023) ("*Gerhszon*"), concerns Meta's pixel technology and *Jackson v. LinkedIn*, No. 5:24-cv-00812-PCP (brought by the very same counsel that represent Plaintiff here) challenges the DMV's use of LinkedIn's internet pixel on the same webpages. All three allege that the DMV's use of internet advertising technology on its disability webpages causes personal information to be disclosed to the defendant companies. (Compl. at ¶ 49; *Jackson* Compl. at ¶ 41; *Gershzon* Compl. at ¶ 29) All seek equitable relief preventing the companies from "receiving" this information. (Compl. at Prayer for Relief; *Jackson* Compl. at Prayer for Relief; *Gershzon* Compl. at Prayer for Relief.) Indeed, this action is largely a "cut and paste" of counsel's *Jackson* complaint. This case concerns different technology and products, but has the same causes of action and a class definition that subsumes the putative class in *Jackson*.[2] Even if all plaintiffs succeed in their piecemeal actions, they ***still*** will not have the relief they seek, because the DMV will not be bound and will remain free to use other companies' technologies.

***Third***, relief is not complete where—as here—a defendant cannot seek indemnification from a third party to which it may be entitled. *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070, 1081 (9th Cir. 2010) (court could not grant complete relief where, if defendant found liable, it would "not be able to seek indemnification from the [absent party]"); *Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 321 F.R.D. 475, 479 (D.P.R. 2017) (under *E.E.O.C.*, absent party's duty to indemnify defendant "alone merits a finding that [absent party required under] Rule 19(a)(1)(A)"). If the Court found Google liable, Google could be contractually entitled to indemnification from the DMV under their agreement and "[i]t would be profoundly unfair if [Defendant] could not seek indemnification from the [absent party]." *E.E.O.C.*, 610 F. 3d at 1081; (Johnson Decl. Exs. A-C at § 8; Ex. D at § 11.)

**b. Proceeding Without the DMV Would Impair Its Interests.**

[2] Google does not assert that the cases are related. They concern different defendants and different challenged technologies. Plaintiffs have also never asserted that they are related.

Pursuant to Rule 19(a)(1)(B)(i), a party is necessary where it "claims an interest relating to the subject of the action" and its "absence may as a practical matter impair or impede [its] ability to protect the interest." "The Court has a duty to protect absent persons who will be affected by [its] decree." *Iconlab Inc.*, 2019 WL 12521292, at *3 (internal quotations omitted). An interest must "be more than a financial stake, and more than speculation about a future event." *Id.* at *4. It does not, however, have to be definitive. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992) (necessary party finding predicated only on that party "having a claim to an interest").

Litigating in the DMV's absence may impair its interests in two independent respects. ***First***, the DMV has an interest in this case because the Court may have to hold that the DMV's conduct violated the law. *Am. Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (absent party necessary where relief may "amount[] to a declaratory judgment that [the absent party's conduct] is unlawful" because though absent party was "not bound by this ruling . . . their interests may well be affected *as a practical matter* by the judgment that its operations are illegal"). Here, as in *Downing*, because "a declaration that Defendant violated the DPPA is the same as holding that [the DMV] violated the law, Plaintiff's relief cannot be granted without prejudice to [the DMV]." *Downing*, 806 F. Supp. 2d at 469. A finding that the DMV's conduct violates the DPPA may be used against the DMV under 18 U.S.C. § 2723 (b), which allows the Attorney General to impose civil penalties against motor vehicle agencies for violating the DPPA.

***Second***, this lawsuit directly implicates the DMV's contractual agreements with Google and may result in a finding that the DMV violated those agreements. As discussed above, to use Google's services, the DMV accepted GA TOS, thereby agreeing it would not "pass information, hashed or otherwise, to Google that Google could use or recognize as personally identifiable information" and would "comply with all applicable laws, policies, and regulations relating to the collection of information from Users." (Johnson Decl., Ex. B at § 7.) Because this lawsuit accuses the DMV of such conduct, it could result in a finding that the DMV has breached these agreements, potentially terminating its ability to use Google's products and/or liability to Google. The DMV has chosen to use Google Analytics to enable and support its public services for over 15 years. (Johnson Decl. at ¶ 3.) A finding that such use violates the DPPA would likely leave Google

unable to perform its contract with the DMV and could potentially end the DMV's access to Google Analytics (at least). In these circumstances, courts routinely find the absent party's interests are impaired. *E.g., Iconlab, Inc.*, 828 F. App'x at 366 (absent parties required where declaratory relief could invalidate their contracts); *Dawavendewa*, 276 F.3d at 1157 (absent party required where "litigation threatens to impair [its] contractual interests, and thus, its fundamental economic relationship with" a party); *Downing*, 806 F. Supp. 2d at 467 (RMV's interest impaired, as "any decision by this court would effectively invalidate" the contract or make it "less valuable" to the state) (citing G*reyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1025 (9th Cir. 2002).)

The purpose of the DMV is to "regulate the motor vehicle industry" including by "licensing drivers, registering vehicles, [and] securing identities."[3] This work includes outreach to drivers and citizens about services and legal requirements. The DMV has chosen to perform such outreach through online advertising, and Plaintiff's action may diminish the DMV's ability to do so. Thus, "a judgment rendered in [the DMV's] absence would impair its "ability to govern effectively and efficiently." *Downing,* 806 F. Supp. 2d at 467 n.40 (quoting *Dawavendewa*, 276 F.3d at 1155).

***Lastly***, Google acknowledges that some courts in the Ninth Circuit have required that the absent party "come forward and affirmatively claim an interest in the subject of the litigation." *Cal. v. Azuma Corp.*, 2023 WL 5835794, at *6 (E.D. Cal. Sept. 8, 2023) (recognizing split and rejecting this interpretation). Google respectfully asserts that this interpretation is based on an overly narrow interpretation of *United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999). *See*, *e.g.*, *Iconlab, Inc.*, 828 F. App'x at 366 (affirming ruling that absent parties that had asserted no interest in the action still had a legally protected interest for purposes of Rule 19(a)(1)(B)); *E.E.O.C.*, 610 F.3d at 1081 (finding Secretary had interest in action without finding Secretary affirmatively asserted interest).

**c. The DMV's Absence May Subject Google to Undue Liability.**

The DMV is also required because resolution of this matter in its absence leaves Google at

---

[3] *About the California Department of Motor Vehicles*, State of California Department of Motor Vehicles (last accessed July 9, 2024), https://www.dmv.ca.gov/portal/about-the-california-department-of-motor-vehicles/.

a "a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Rule 19(a)(1)(B)(ii). As addressed, Google has no realistic means of complying with an injunction against obtaining personal information from the DMV if it is also enjoined from in any way reviewing or learning what it receives in connection with visits to the DMV's webpages. Further, if Google were to review information sent to it regarding the DMV's webpages to ensure it does not contain personal information, Google may be at risk of further liability under CIPA.

**2. The DMV Cannot be Joined.**

The DMV cannot be joined because the Eleventh Amendment prohibits joinder of nonconsenting state agencies in federal court, and there are no relevant exceptions here. *Hibbs v. Dep't of Hum. Res.*, 273 F.3d 844, 850 (9th Cir. 2001), *aff'd sub nom. Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 723 (2003). Further, Congress has not abrogated the States' sovereign immunity in private DPPA lawsuits. *Downing,* 806 F. Supp. 2d at 468. Thus, this factor is satisfied.

**3. Due to the DMV's Absence, The Court Should Dismiss the Action.**

If joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The rule sets out four considerations for making this determination.

***First***, courts consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." *Id.* at 19(b)(1). This analysis "largely duplicates the consideration that made a party necessary under Rule 19(a)." *Greyhound Racing, Inc.*, 305 F.3d at 1024–25. As set forth above, this factor is satisfied.

***Second***, courts consider how prejudice to existing or absent parties could be lessened or avoided by "protective provisions in the judgment," "shaping the relief," or "other measures." Fed. R. Civ. P. 19(b)(2)(A) & (B). Again, because the DMV would not be bound, the Court's ability to shape relief to redress Plaintiff's claimed injury is limited. *Downing*, 806 F. Supp. 2d at 469-70.

***Third,*** courts consider "whether a judgment rendered in the person's absence would be adequate." Fed. R. Civ. P. 19(b)(3). As discussed, this Court cannot grant adequate relief, as that would "require[] extensive equitable remedies that would bind the Absent Parties." *Iconlab*, 2019 WL 12521292, at *6; *see also Dawavendewa*, 276 F.3d at 1162 ("No partial relief is adequate.")

***Fourth***, courts consider "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P 19(b)(4). This factor also weighs ***in favor of*** dismissal, because the DPPA provides other means of addressing Plaintiff's alleged injury. It empowers the attorney general to seek the DMV's compliance on the public's behalf. *Downing,* 806 F. Supp. 2d at 469; *see also Dawavendewa*, 276 F.3d at 1162 (plaintiff has "viable alternative forum in which to seek redress" because the E.E.O.C. could bring a suit to address his injury).

Even without this alternative, a required party's sovereign immunity is "a compelling factor supporting dismissal of a claim under Rule 19(b)." *Webb v. City of Tempe*, 2017 WL 1233827, at *5 (D. Ariz. Apr. 4, 2017) ("While dismissing a claim when the plaintiff has no alternative remedy may be a harsh result, courts do so when a necessary party cannot be joined because of sovereign immunity."), *aff'd*, 703 F. App'x 539, 540 (9th Cir. 2017). This is because "[s]ociety has 'consciously opted' . . . to shield states from suit without congressional or state consent." *Webb*, 2017 WL 1233827, at *5. Numerous decisions are in accord. *Republic of Philippines v. Pimentel*, 553 U.S. 851, 872 (2008) (plaintiff may lose "a forum for definitive resolution of their claims. But that result is contemplated[.]"); *see also Greyhound Racing, Inc.*, 305 F.3d at 1025 (similar).

For all of these reasons, each of the Rule 19(b) factors compels dismissal.

**B. Rule 12(b)(6) – Plaintiff Fails to State a Claim under the DPPA.**

18 U.S.C. Section 2724 provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the DPPA] shall be liable to the individual to whom the information pertains." Thus, violation of the DPPA requires that a defendant: (1) with the requisite *mens rea*, took some affirmative action to obtain, disclose, or use personal information, (2) from a record maintained by the DMV pertaining to a driver's operating permit, title, registration, or identification card, (3) for an impermissible purpose. *See Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 603 (7th Cir. 2012); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019). Plaintiff fails to plausibly allege ***any*** of these elements.

**1. Plaintiff Fails to Plausibly Allege that Google *Knowingly* Obtained or Used Her Personal Information.**

Courts have consistently held that, to adequately plead a knowing DPPA violation, a

plaintiff must allege that the defendant voluntarily took an action it was on notice would result in the obtainment, disclosure, or use of a plaintiff's personal information. For example, *Senne* held that a police officer placing a parking ticket displaying the plaintiff's personal information on his car dashboard took "[v]oluntary action . . . sufficient to satisfy the mens rea element of the DPPA." 695 F.3d at 603. Similarly, an insurance company designing its publicly-accessible online quote tool to auto-populate driver's license numbers for anyone entering "a bare minimum of publicly available information about [an] individual" knowingly disclosed personal information. *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *1 (E.D.N.Y. July 21, 2023). A knowing violation can also occur where security alerts from a government agency provide notice of the potential disclosure. *See In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 468 (S.D.N.Y. 2022) (State Department of Financial Services warned that insurance quote portals created a cybersecurity risk); *Rand v. Travelers Indem. Co.*, 637 F. Supp. 3d 55, 68 (S.D.N.Y. 2022) (same).

While it is not necessary that the defendant have notice its actions are illegal, the DPPA does require ***knowing*** obtainment, disclosure, or use of the alleged personal information. 18 U.S.C. Section 2724(a). Accordingly, mere passive failure to prevent a third party (like the DMV) from violating the DPPA is insufficient to meet the statute's knowledge requirement. In *Enslin v. The Coca-Cola Company*, the defendant's failure to secure laptops that contained personal information from employees' motor vehicle records was insufficient to trigger DPPA liability. 136 F. Supp. 3d 654, 669-72 (E.D. Pa. 2015). As the court explained, "[a] 'knowing disclosure' of [personal information] requires the defendant to take some 'voluntary action' to disclose the information." *Id.* at 670. Likewise, the court in *Allen v. Vertafore, Inc.* held that the defendant's storage of personal information on "unsecured external servers," that permitted third parties to gain unauthorized access, was not knowing disclosure. 28 F.4th 613, 617 (5th Cir. 2022). Thus, a defendant must take a voluntary action that it is on notice ***would*** violate the first DPPA prong.

Plaintiff's Complaint cannot clear this bar and does not plausibly allege that Google "knowingly" obtained her information. She alleges only that Google engages in the anodyne and commonplace practice of offering analytics and advertising tag technology and propounds only conclusory allegations that Google "knows that it is intercepting communications between users

and the DMV." (Compl. ¶ 51; *see also id.* ¶ 70.) The facts pled, however, belie these claims. They suggest, instead, that the only voluntary action Google took with respect to Plaintiff's allegedly personal information was to contractually prohibit the DMV from sending it. Google's only knowing action was designed to ***prevent*** disclosure, not cause it.

The Complaint makes clear both that the DMV chose whether and where to install Google tags (*id.* ¶¶ 35, 37) and that it is ***the DMV's chosen URLs*** that contain the allegedly personal information. Plaintiff alleges that Google receives that information from "the various URLs that users visit within the California DMV website," which allegedly "provide clear insight into users' data including their disability information." (*See, e.g.*, *id.* ¶ 56.) The Complaint marks the "path" and "Request URL" data elements in each screenshot purporting to show the URLs containing private information and explains that "Google obtains URL information" containing the challenged data in each instance. (*Id.* ¶ 64; *see also id.* ¶¶ 57-68.) This is not enough to hold Google liable for third-party conduct. It is self-evident that ***the DMV*** set up its own webpages and chose how to configure its URLs. The Complaint does not and cannot allege that ***Google*** controlled the allegedly privacy-violating URLs the DMV chose to use on its webpage. Accordingly, Google took no voluntary action with knowledge that it would receive this allegedly impermissible information.

The Complaint also contains ***no factual allegations*** supporting the claim that Google was aware that the DMV was transmitting this allegedly personal information. Plaintiff never alleges, for example, that she received any form of targeted advertising related to her disability status, much less advertising that she has a basis to connect to Google or her visits to the DMV's website. *See Keogh v. Meta Platforms, Inc.*, 680 F. Supp. 3d 601, 606 (D.S.C. 2023) (expressing skepticism where the plaintiff did not "describe or even allege that he received any advertising from Meta concerning his DMV visit"). Instead, Plaintiff falls back on generalities—*e.g.*, that Google Analytics and DoubleClick can transmit information that is generally used for advertising services. (*E.g.*, Compl. ¶¶ 27, 42.) With no specific facts pled, Plaintiff's conclusory claims that Google knowingly obtained and used her information from the DMV website fall well short of the pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Finally, Plaintiff's position that Google's mere alleged receipt of information constitutes a

DPPA violation would not only run afoul of authorities on the knowledge requirement, but would read the word "obtain" out of the statute. Unlike receipt, "obtainment" requires an affirmative act to bring about receipt. BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "obtain" as "[t]o bring into one's own possession; to procure, esp. through effort"). Again, Google's only relevant affirmative acts were intended to contractually ***prevent*** Google's receipt of personal information.

### 2. Plaintiff Fails to Allege that the Alleged Personal Information Was From a Motor Vehicle Record.

To violate the DPPA, a defendant must obtain protected information from a motor vehicle record. The statute defines "motor vehicle record" as a "record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). The portion of the DMV website from which Plaintiff alleges Google obtained protected information is not such a record.

First, the challenged DMV webpages (pages used to apply for, renew, or check the status of a disability placard, which define class membership) (Compl. ¶ 91) are not motor vehicle records under the plain text of the statute's definition. Plaintiff never alleges how these webpages qualify as motor vehicle records under the statute and makes only the unadorned pronouncement that "[a] disabled parking placard pertains to a motor vehicle operator's permit." (*Id.* ¶ 19.) This legal conclusion is meaningless, as it is supported by no factual allegations. It is also demonstrably false, as disability placards relate solely to ***parking privileges***, not an operator's permit. Tellingly, while the California Vehicle Code contains multiple references to the "parking privileges" disability placards confer, it contains no discussion of placards in relation to operators' permits. *See, e.g.*, Cal. Veh. Code §§ 22511.5(b), 22511.55(a)(1)(C), 22511.56.

The Complaint confirms that disability placard information appears on the DMV website page titled "Disabled Person ***Parking*** Placards and Plates." (*Id.* ¶ 61 (text and screenshot) (emphasis added).) In the "Frequently Asked Questions" section of the webpage bearing that title, the DMV answers, "What are the privileges of a DP placard or DP License Plates?" with only a list of places a driver with a disability placard "may park" and a single reference to a service station privilege. (Reddy Decl. Ex. F.). The page mentions no rights or privileges pertaining to a motor vehicle

operator's permit. Additionally, the DMV publicly states that disability placards may be used when the recipient is only a passenger, further confirming that they do not pertain to an "operator's permit." (*Id.* ("Placards . . . [are] a good option for a caregiver who transports a disabled person").)

The South Carolina District Court's decision in *Keogh v. Meta Platforms* is directly relevant here. There, the plaintiff alleged a DPPA violation based on his visit to the South Carolina DMV's webpage due to the Meta/Facebook web pixels. *Keogh*, 680 F. Supp. 3d at 604. The Court ruled, for several reasons, that Keogh had no viable DPPA claim. The court explained, "even if the [DMV] website was a 'record,' it is not a 'motor vehicle' record under the statutory definition, which is limited to records pertaining to [the enumerated list above]." *Id.* at 610. The *Keogh* court found the plaintiff's argument that "every single webpage on the South Carolina Department of Motor Vehicles website has some kind of a 'connection with driving'" to be "plainly untrue." *Id.* This Court should reach the same conclusion as to the disability parking placard pages at issue here. They simply do not pertain to a motor vehicle operator's permit. *See* also *Dye v. Meta*, 2024 WL 2125602, at *3 (E.D.N.C. May 10, 2024) ("whether a record or information is 'connected' to driving does not satisfy the DPPA's definition of a 'motor vehicle record.") Google respectfully submits that this Court should decline to follow *Gershzon v. Meta Platforms Inc.* on this point. Its ruling that a disability placard pertains to an operator's permit and not just parking rights is counter to common sense and to the DMV's own statements about placards. The *Keogh* court rejected *Gershzon* and explained, citing the Ninth Circuit in *Andrews*, that "the DPPA does not create a right to privacy with respect to every interaction that a citizen may have with the DMV website. … it provides important protection for specific information in specific types of records, none of which are alleged here." *Keogh*, 680 F. Supp. 3d at 610-11 (internal citation omitted).

The challenged DMV webpages here are also not motor vehicle records because, as several courts relying on Ninth Circuit authority have now found, under the DPPA, the DMV website is not a DPPA "record" at all. *See id.* ("To start, the SCDMV website is not a 'record' under the DPPA."); *Dye*, 2024 WL 2125602, at *3; *Davis v. Meta*, 2024 WL 3293644, at *4 (D. Nev. July 3, 2024) (dismissing DPPA claim because plaintiff "does not plausibly allege that the Nevada DMV website is a motor vehicle record as defined by the DPPA."). In 2019, the Ninth Circuit issued its

seminal DPPA decision in *Andrews v. Sirius XM Radio Inc.*, holding that obtaining information from a driver's license did not violate the DPPA and that "Congress intended the DPPA to reflect the Privacy Act of 1974 . . . which defines a 'record' as 'information about an individual *that is maintained by an agency*.'" 932 F.3d at 1260 (emphasis in original). Here, Google is alleged to have received information from DMV webpages Plaintiff visited about what Plaintiff typed into those pages "after they were sent by Plaintiff and Class Members but ***before they were received by the DMV***." (Compl. ¶ 124 (emphasis added).) Information allegedly intercepted *en route* to the DMV can hardly be from a record "maintained by" the DMV—the source of the information as pled was Plaintiff herself. (*See id.*) And "where . . . the initial source of personal information is a record in the possession of an individual, rather than a state DMV, then use or disclosure of that information ***does not violate the DPPA.***" *Andrews*, 932 F.3d at 1260 (emphasis added). *Gershzon's* reasoning that, because DMV records are allegedly created ***after*** visits to the MyDMV portal, information about visits to DMV website pages should be construed as a record "maintained by an agency" makes no logical sense and violates the bright line requirement set forth in *Andrews*.

Plaintiff's interactions with the DMV online are analogous to a trip to a physical DMV office. If a third party overheard her queries about a disability placard at the counter, that information would plainly not be "from a motor vehicle record." Here too, Plaintiff cannot meet the binding standard set forth in *Andrews*. As *Keogh* correctly held, contemporaneous information about webpages visited—an automatically generated byproduct of Plaintiff's browsing—simply does not come from records "maintained by" the DMV. *Keogh*, 680 F. Supp. 3d at 609 (citing *Andrews*, 932 F. 3d at 1260). *Keogh* and every other post-*Gershzon* ruling (*Dye* and *Davis*) all persuasively confirm that information about visits to the DMV's website is ***not*** from a motor vehicle record, establishing a trend away from the flawed and increasingly isolated holding in *Gershzon.*

The Eastern District of North Carolina in *Dye v. Meta* recently analyzed a DPPA claim arising from factual allegations nearly identical to those brought here. *Dye*, 2024 WL 2125602, at *1-*2. Echoing the logic in *Keogh*, the court in *Dye* similarly dismissed the plaintiff's claim and held that state DMV websites are not motor vehicle records. "[E]ven assuming that the [DMV]

website uses the information it collects to create other records about motor vehicle registrations or disability placards," the court wrote, "that does not cause the [DMV] website *itself* to be a motor vehicle record as that term is defined by the DPPA." *Dye*, 2024 WL 2125602, at *3. Recognizing that if state DMV websites were themselves motor vehicle records, there would be "a violation of the statute anytime a Facebook user accesses [a DMV] website," the *Dye* court concluded that such an interpretation would "stretch the DPPA too far." *Id.* Finding that the DPPA reaches the alleged conduct here would also be at odds with the statute's purpose. According to the Ninth Circuit, "[a]s characterized by the Supreme Court, the purpose of the DPPA is to 'regulate[ ] the disclosure and resale of personal information contained in the records of state DMVs.'" *Andrews*, 932 F.3d at 1258. Here, Plaintiff alleges only that the DMV disclosed information about who visited its website, rather than any information at all from its repository of driver data records. Therefore, even if some overly literal reading of the DPPA could arguably encompass visits to the DMV website, this Court should "not adopt a literal interpretation [that] would thwart the purpose of the overall statutory scheme or lead to an absurd result." *Id.* at 1260 (internal quotes and citations omitted).

### 3. The Challenged Conduct Here Falls Within the "Permitted Purposes" Exceptions, Which Precludes DPPA Liability

18 U.S.C. Section 2721(b)(1) permits obtaining personal information from a motor vehicle record where such conduct assists "any government agency . . . in carrying out its functions." Despite Plaintiff's careful wordsmithing, the Complaint concedes that the DMV installed its Google tags on webpages it chose. (Compl. ¶¶ 35-37.) As a government agency organized to serve a public function, common sense dictates that the DMV installed Google Analytics and DoubleClick for a legitimate government purpose, such as understanding the visitors to its website and improving its advertising of its services. (Compl. ¶ 32.) Plaintiff alleges no contrary motivation.

The Complaint includes generic allegations that data transmitted through Google Analytics and DoubleClick are used to enhance ad targeting, but such handwaving is irrelevant. If the use of personal information is authorized to assist a government agency, the fact that such use may also serve a separate business purpose does not create liability. The First Circuit's holding in *Downing*, which affirmed the ruling discussed in Section III.A. above, is highly instructive. The First Circuit

did not reach the dispositive question in the trial court's decision—whether the case could proceed under Rule 19 without the RMV—because it found the plaintiff could not state his DPPA claim. There, the defendant, a contractor for the Massachusetts Registry of Motor Vehicles' registration renewal program, inserted RMV ***advertisements*** in mailings containing registration renewals. *Downing*, 682 F.3d at 19-20. The First Circuit held that the inclusion of advertisements did not trigger liability, because the mailings had the permissible purpose of assisting the agency in carrying out its functions. *Id.* at 23-24. Here too, the permissible purpose of helping the DMV market its services would preclude liability, despite Plaintiff's other non-specific allegations of marketing use.

**C. Rule 12(b)(6) – Plaintiff Fails to State a Claim under Section 631 of CIPA.**

Plaintiff fails to state a cause of action under CIPA's second and third clauses. CIPA's second clause applies to "[a]ny person who . . . willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any . . . communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a). CIPA's third clause applies to any person "who uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained in violation of clause two. *Id*. Plaintiff's claims under each clause should be dismissed for multiple reasons.

***First,*** both claims are barred by the party exception. As a vendor that provided a tool to assist the DMV with its marketing and advertising efforts, Google was a party to Plaintiff's alleged communications with the DMV, not a third-party eavesdropper.

***Second***, Plaintiff fails to plausibly allege many requisite elements of her claim under CIPA's second clause. Specifically, her Complaint is devoid of factual allegations establishing that (1) Google "read or attempted to read, or to learn the contents or meaning of" any purported communication, (2) any alleged interception occurred while the communication was "in transit," and (3) any such interception was "willful." Each of these failures is dispositive.

***Third***, Plaintiff's claim under CIPA's third clause fails because it is entirely derivative of her deficient claim under CIPA's second clause. Additionally, her claim under the third clause

cannot stand because she has not alleged that Google "use[d] or attempt[ed] to use" the information she shared with the DMV. Cal. Penal Code § 631(a).

**1. Google is the DMV's Vendor, Not a Third-Party Eavesdropper.**

As an initial matter, both of Plaintiff's CIPA claims fail under the party exception. It is well-established that a party to a communication cannot wiretap itself. *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 607 (9th Cir. 2020). Courts widely recognize that the party exception applies to vendor services, such as those at issue here, which enable a party to a communication to record or track its own communications. The leading case on this topic, *Graham v. Noom*, analyzed allegations analogous to those raised here, and held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the clients to analyze their data" but had not "intercepted and used the data itself." 533 F. Supp. 3d 832, 832 (N.D. Cal. 2021). Rather, the vendor operated as "an extension of Noom," the website operator, offering "a tool . . . that allows ***Noom*** to record and analyze ***its own data***." *Id.* (emphases added). Numerous courts across this district and elsewhere have endorsed this reasoning. *See, e.g.*, *Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *1 (N.D. Cal. May 8, 2024) (finding *Graham* analysis dispositive of CIPA claims where "plaintiffs have only alleged that FullStory provides a tool that allows Ladder to record, track, and analyze the interactions that users have with its own site.")[4]

Here too, Plaintiff has not pled that Google acted as anything more than a service provider that makes Google tag data available to the DMV. Plaintiff alleges that Google tags "are installed

---

[4] *See also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *3 (N.D. Cal. Dec. 22, 2022) (applying the party exception to a vendor); *Licea v. Am. Eagle Outfitters, Inc.*, 659 F. Supp. 3d 1072, 1083 (C.D. Cal. 2023) (similar); *Yale v. Clicktale, Inc.*, 2021 WL 1428400, at *1, *3 (N.D. Cal. April 15, 2021); *Johnson v. Blue Nile, Inc.*, 2021 WL 1312771, at *1 (N.D. Cal. Apr. 8, 2021); *see also Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *13 (E.D. Cal. Mar. 30, 2023); *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1068 (C.D. Cal . 2023).

by website owners." (Compl. ¶ 37.) Her allegations then focus on how these tools "***allow[] marketers*** to construct various campaigns;" how Google "markets and ***sells to its customers*** the ability to target potential customers via Google Ads;" and how Google "***enables advertisers*** to target users with relevant content or advertisements[.]" (Compl. ¶¶ 43, 44, 69 (emphases added); *see also id.* ¶ 46 (information from Google "allow[s] advertisers to target users").) Nowhere does Plaintiff allege that Google shared her data (or any DMV data) with other advertisers. And while Plaintiff claims that Google "identif[ies], characterize[s] and categorize[s]" users, she fails to plead that Google did so for any other purpose than to provide that information back to the DMV. (Compl. ¶ 42.) Accordingly, her Complaint only establishes that Google collected and maintained information received ***at the direction of*** the DMV, to enable advertising requested ***by*** the DMV. Just as in *Graham*, *Ladder*, and other cases, Plaintiff's allegations merely establish that Google provided "a tool . . . that allows [the DMV] to record and analyze its own data in aid of [the DMV's] business." *Graham,* 533 F. Supp. 3d at 832.

For many courts, the analysis begins and ends with *Graham*. Plaintiff may, however, invoke another line of decisions holding an analytics provider liable where it has "the capability to use" communications for any purpose other than supporting the website operator. *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023). Even if the Court adopted *Javier*'s framework, Plaintiff's claims would still fail because she has not alleged specific facts showing that Google has used—or is even capable of using—information received from the DMV for its own purposes.

As explained above, Plaintiff's allegations focus on how Google Analytics and DoubleClick "allow marketers" or "enable advertisers" to conduct targeted advertising, but nowhere does she allege that ***Google used or*** was even capable of using the DMV's data for its own ad targeting purposes. Instead, Plaintiff points to generalized allegations that are copied from her counsel's other pleadings, including that Google "monetize[s] the data obtained and learned . . . through the sale of ads."[5] Plaintiff's allegations that Google uses data to "identify, characterize, and categorize" users or create user profiles are also deficient, because none of those allegations are tethered to Google's

---

[5] *Compare* Compl. ¶ 43 *with Jackson* Compl. ¶ 35.

purported independent use of data. (Compl. ¶¶ 41, 42.) *See, e.g.*, *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *7 (N.D. Cal. Aug. 30, 2023) (allegations that defendant "analyz[ed] data and provid[ed] customer data metrics related to each conversation" and "accesse[d] and analyze[d]" those "conversations" were not sufficient to show capability of use); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472, at *8 (C.D. Cal. Nov. 27, 2023) (allegation that chat vendor had "capability to use its record of [w]ebsite users' interactions" for data analytics and marketing/advertising to consumers was "conclusory and insufficient"); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (dismissing CIPA claim that provider "analyzes the customer-support agent interactions in real time to create live transcripts of communications"). Even if they were, none of these allegations are tethered to the ***DMV's*** use of Google's tags, and are thus not sufficient. *Cody v. Ring LLC*, 2024 WL 735667, at *6 (N.D. Cal. Feb. 22, 2024) (no capability of use under *Javier* based on news reporting that an analytics provider independently used data because that reporting was not tethered to data collection from the specific website at issue in complaint). Notably, Plaintiff also could not amend to plausibly allege that Google targets users based on disability status, given Google's express policies that prohibit advertisers from sending such information to Google. Reddy Decl. Exs. B, G. Accordingly, irrespective of whether the Court applies *Graham* or *Javier*, Plaintiff fails to allege facts showing that Google was a third-party eavesdropper that either used or was capable of using her data for its own purposes, rather than a mere vendor. Her CIPA claims are therefore barred by the party exception.

**2. Plaintiff's Claim Under CIPA's Second Clause Has Multiple Defects.**

Even setting aside this fundamental deficiency, Plaintiff fails to plead facts establishing other elements of a claim brought under CIPA's second clause. Specifically, Plaintiff has not plausibly alleged that Google: (1) "read or attempted to read" her "communications," (2) while they were in transit, and (3) did so "willfully." Her claims are doomed for these reasons as well.

***Read or Attempted to Read.*** Under CIPA's second clause, Plaintiff must at least plausibly allege facts concerning Google's attempt to "read, or to learn the contents" of any purported communications. § 631(a). Plaintiff's conclusory allegations that "Google intended to learn, and did learn, the meaning of the contents of Plaintiff and Class Members' communications with the

DMV" are recycled from *Jackson*,[6] and are nothing but a recitation of the elements not entitled to a presumption of truth. (Compl. ¶ 121; *Twombly*, 550 U.S. at 570.) Plaintiff elsewhere alleges that search queries and specific website actions are "obtained by Google" through Google Analytics or DoubleClick (Compl. ¶¶ 64, 68, 69); however, this is merely an allegation that Google ***received*** the data, not that it read it or attempted to learn its contents. In *James v. Allstate Insurance Company*, for example, allegations that the analytics provider "recorded the data and store[d] it on its servers" were found "insufficient to support a plausible inference [that] [the analytics provider] attempted to read or learn the contents of the communications." 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023); *see also Love*, 2024 WL 2104497, at *2 (finding allegation that defendant "may use and share information in an aggregated and de-identified manner" insufficient as it created "no coherent story of how or why FullStory would learn such granular information about users of one of its customer's sites"). Plaintiff's allegations that Google "obtained" certain data from the DMV is similarly deficient. As in *James*, Plaintiff has not pled any facts creating a plausible inference that Google read or attempted to use the contents of her communications with the DMV, such as by alleging that she saw disability-related ads that she can plausibly connect to her visits to the DMV's website or to Google.

Further, an analytics provider that offers a tool to process a customer's data into an automated report based on the metrics the customer chooses (Compl. ¶¶ 42-43) cannot be said to "read" or "learn" the contents of a communication. If that were sufficient to constitute a CIPA violation, every software-as-a-service provider would be liable for the use of their tool on any website. Such ubiquitous business practices cannot violate CIPA or fit with the California state court decision from which the vendor argument extends, *Ribas v. Clark*, 38 Cal. 3d 355 (1985).

***In Transit.*** "[T]he crucial question under § 631(a)'s second clause is whether [plaintiff] has plausibly alleged that [defendant] read one of his communications while it was still in transit, *i.e.*, before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); Section 631(a) (penalizing attempts to "learn the contents . . . of any . . . communication

---

[6] *Compare* Compl. ¶ 121 *with Jackson v. LinkedIn*, Compl. ¶¶ 109.

while the same is in transit"). Plaintiff does not meet this standard, because her allegations regarding ***when*** the purported communications were intercepted are implausible.

Plaintiff's Complaint offers a single passing allegation regarding the "in transit" requirement, which merely parrots the elements of a CIPA claim. She pleads that "Google learned the contents of Plaintiff's and Class Members' communications with the DMV, through its website, while those communications were in transit . . . after they were sent by Plaintiff and Class Members but before they were received by the DMV." (Compl. ¶ 124.) The Court should not credit such a bare recitation of the statute's elements. *Twombly*, 550 U.S. at 570; *see also Esparza v. Gen Digital Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims involving pixel technology where "Plaintiff fail[ed] to allege specific facts about . . . how the interception took place"); *Cody v. Ring LLC*, 2024 WL 735667, at *5 (N.D. Cal. Feb. 22, 2024) ("Cody's conclusory allegations restating the pleading requirement of real-time interception . . . fail to explain how the software works or how the interception occurs"); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough" to "make it plausible Google is intercepting [plaintiff's] data in transit").

Setting aside this defect, Plaintiff's allegations that her "communications" were intercepted in transit are also implausible because they are flatly contrary to her DPPA-related allegations. She has thus "not alleged facts giving rise to an inference that [her] communications were intercepted while 'in transit.'" *Quigley v. Yelp*, Inc., 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018). Specifically, Plaintiff alleges that her data is only intercepted by Google ***after*** it is sent to the DMV. To support her DPPA claim, she pleads that "Google Analytics and DoubleClick . . . permit[] ***the DMV*** to transmit users'" information to Google, and that these tools "are transmitting information ***from motor vehicle records maintained by the DMV***." (Compl. ¶¶ 69-70 (emphases added).) She further contends that the allegedly intercepted data "come from a 'motor vehicle record' ***because they derive from the DMV databases***." (*Id.* at ¶ 106 (emphasis added).) Plaintiff cannot have it both ways. Either Google intercepts the purported communications before they reach the DMV, in which case they are not motor vehicle records under the DPPA, or the DMV sends these communications to Google after it receives them, in which case she has failed to allege an

interception in transit. In either instance, neither requisite element of the DPPA and CIPA claims are alleged with adequate clarity, and each claim should be dismissed.

***Willful.*** To state a claim, Plaintiff must plead that Google "willfully" obtained and read, or attempted to read, her communications with the DMV. § 631(a). Plaintiff's allegations of intent are largely copied from her counsel's *Jackson* Complaint. (*Compare* Compl. ¶¶ 117, 121 *with Jackson* Compl. ¶¶ 105, 109.) As in *Jackson*, Plaintiff alleges Google acted "willfully" or "recklessly" merely because Google Analytics and DoubleClick "are embedded on and throughout the DMV website" and because the DMV conveyed information from its disability-related webpages to Google. (Compl. ¶¶ 110, 117.) Such general allegations are not sufficient to establish intent under CIPA. *Cf. Heiting v. Taro Pharm s. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (allegations that "Defendant paid Genesys to intercept messages . . . [did not] demonstrate[] Defendant acted with the requisite knowledge or intent to aid and abet Genesys's purported CIPA violation"). Even if they were, Plaintiff cannot plausibly allege such intent on the face of Google's policies disclosing the ***opposite*** intention—that Google does not want personally identifiable information and expressly prohibits websites from transmitting such data to Google through its GA TOS and Help Center pages. (Reddy Decl., Exs. B, G.) Her claim fails for this reason as well.

**3. Plaintiff's Claims Under CIPA's Third Clause Have Further Flaws.**

To begin, a claim brought under CIPA's third clause for use of unlawfully obtained data must be predicated on a violation of either of the first two clauses. The claim thus fails because Plaintiff does not assert a claim under CIPA's first clause or state a viable claim under its second clause. *In re Google Assistant Privacy Lit.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) (Plaintiffs must establish . . . a violation of the first or second clauses. Because Plaintiffs have not done so, they have failed to plead a violation of third clause."); *Mastel,* 549 F. Supp. 3d at 1137 (no derivative liability under third clause without predicate).

Additionally, as discussed above, Plaintiff pleads no facts showing that Google used any of the allegedly intercepted information. While the Complaint contains a hodgepodge of allegations regarding how data from Google Analytics and DoubleClick are "fed" into Google's "marketing and advertising systems" to allow advertisers "to target specific demographics," there are no

specific allegations related to Google's use of any data allegedly obtained from the DMV—let alone any data from the DMV's disability-related webpages. (Compl. ¶ 42.) Because these allegations are not tied to the DMV or the challenged webpages, this is an even more attenuated series of allegations than those rejected in *James* that "record[ing] the data and stor[ing] it . . . is insufficient to support a plausible inference [the analytics provider] attempted to read or learn [its] contents." *James*, 2023 WL 8879246, at *3. The claim fails for this reason as well.

## IV. CONCLUSION

For the above reasons, the Complaint should be dismissed in its entirety.

## REQUEST FOR JUDICIAL NOTICE

Pursuant to Rule 201 of the Federal Rules of Evidence and related authority, Google respectfully requests that the Court take judicial notice of Exhibit F, a webpage from the DMV's website titled "Disabled Person Parking Placards & Plates"; Exhibit B, the operative version of the GA TOS; and Exhibit G, a webpage from Google's Help Center. Each Exhibit, publicly available online, is indisputably authentic as substantiated by hyperlinks and screen captures. *See, e.g.*, *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 145-46 (N.D. Cal. 2020) (citation omitted) ("websites and their contents may be proper subjects for judicial notice [as a] general matter[.]"); *Garcia v. Best W. Norwalk Inn, LLC*, 2021 WL 4260406, at *2 (C.D. Cal. June 14, 2021) ("[w]ebsites and their contents may [] be proper subjects for judicial notice.") Further, Google does not offer any Exhibit for the truth of the matter asserted therein: Google relies on ***Exhibit F*** (DMV webpage) to describe the DMV's public representations regarding disability placards. Similarly, Google offers ***Exhibit B*** (GA TOS) and ***Exhibit G*** (Google Analytics Help Center page) only to show its state of mind—*i.e.*, that Google requested that advertisers not share personal or sensitive information with it via Google Analytics. *Supra* III.C.2. For the foregoing reasons, Exhibits F, B, and G are proper subjects of judicial notice.[7]

---

[7] The operative GA TOS, last updated on May 15, 2023, applied to the DMV's conduct when Plaintiff's Complaint was filed. It is attached as Exhibit B to the Johnson Declaration.

Dated: July 9, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
GOOGLE LLC

304965731