Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| KATHERINE WILSON individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>GOOGLE LLC,<br><br>Defendant. | **CASE NO. 5:24-cv-03176-BLF**<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT GOOGLE LLC'S MOTION TO DISMISS**<br><br>Date: November 14, 2024<br>Time: 9:00 a.m.<br>Dept.: Courtroom 3, 5th floor<br>Judge: Hon. Beth Labson Freeman<br>Trial Date: TBD<br>Date Action Filed: May 24, 2024 |

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. SUMMARY OF PERTINENT ALLEGATIONS .......... 2

III. ARGUMENT .......... 3

A. The DMV Is Not a "Required Party" and Its Absence Does Not Warrant Dismissal. .......... 3

1. *Downing v. Globe Direct LLC*, the tentpole of Google's Rule 12(b)(7) argument, is inapposite. .......... 4

2. The DMV is not a "required party" under Rule 19. .......... 5

a. The Court can award "complete relief" without the DMV. .......... 5

b. The DMV has not claimed a legal interest in this action and does not have a claim to an interest that would be impaired or impeded by its absence. .......... 8

c. The DMV's absence will not subject Google to undue liability .......... 9

3. The DMV's absence does not warrant dismissal. .......... 10

B. Plaintiff Adequately Pleads Her DPPA Claim. .......... 12

1. Plaintiff adequately alleges that Google knowingly obtained and used her personal information. .......... 13

2. Plaintiff adequately alleges that Google obtained her personal information "from a motor vehicle record." .......... 16

3. Google's conduct is not "permitted" by the DPPA. .......... 19

C. Plaintiff Adequately Pleads Her CIPA Claim. .......... 20

1. Plaintiff adequately alleges that Google is a "third-party eavesdropper," not a party to the relevant communications. .......... 20

2. Plaintiff adequately alleges a violation of § 631(a)'s second clause. .......... 22

3. Plaintiff adequately alleges a violation of § 631(a)'s third clause. .......... 25

IV. CONCLUSION .......... 25

**TABLE OF AUTHORITIES**

**Cases**

*A.D. v. Cal. Highway Patrol*,
No. 07-cv-05483-SI, 2009 WL 773872 (N.D. Cal. Mar. 17, 2009) ........................................6, 7

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) ..................................................................................................15

*Andrews v. Sirius XM Radio Inc.*,
932 F.3d 1253 (9th Cir. 2019) ....................................................................................5, 9, 12, 16

*Bakia v. Los Angeles Cnty. of State of Cal.*,
687 F.2d 299 (9th Cir. 1982) ....................................................................................................3

*Bates v. Franchise Tax Bd.*,
124 Cal. App. 4th 367 (Cal. Ct. App. 2004) ...........................................................................7

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020).................................................................................................20

*Davis v. Meta*,
2024 WL 3293644 (D. Nev. July 3, 2024) ............................................................................17

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) ................................................................................................11

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .................................................................................24

*Downing v. Globe Direct LLC*,
806 F. Supp. 2d 461 (D. Mass. 2011) ..............................................................................passim

*Dye v. Meta*,
2024 WL 2125602 (E.D.N.C. May 10, 2024) ........................................................................17

*E.E.O.C. v. Peabody W. Coal Co.*,
610 F.3d 1070 (9th Cir. 2010) ..............................................................................................7, 8

*Enslin v. The Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .....................................................................................15

*Force MOS Tech. Co. v. Lin*,
No. 22-cv-08938-SVK, 2024 WL 1199017 (N.D. Cal. Mar. 19, 2024) .........................3, 4, 6, 10

*Gershzon v. Meta Platforms, Inc.*,
No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) .................................passim

*Gladstone v. Amazon Web Servs., Inc.*,
No. 2:23-CV-00491-TL, 2024 WL 3276490 (W.D. Wash. July 2, 2024).................................22

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ....................................................................................21

*Heerde v. Learfield Comm's, LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024)............22, 24

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ..............................24

*Hoang v. Bank of Am., N.A.*,
910 F.3d 1096 (9th Cir. 2018) ..........................................................................................25

*Iconlab Inc. v. Bausch Health Companies Inc.*,
828 F. App'x 363 (9th Cir. 2020) ........................................................................................8

*Iconlab Inc. v. Bausch Health Companies Inc.*,
No. 16-cv-03121-JLS-KES, 2019 WL 12521292 (C.D. Cal. May 15, 2019) ..........................3, 9

*James v. Allstate Ins. Co.*,
No. 3:23-cv-01931-JSC, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023)...................................23

*Javier v. Assurance IQ, LLC*,
649 F. Supp. 3d 891 (N.D. Cal. 2023) ..................................................................................21

*Keogh v. Meta Platforms, Inc.*,
No. 6:23-CV-5004-KDB, 2023 WL 9657924 (D.S.C. Feb. 14, 2023).....................16, 17, 18, 20

*Knowlton v. City of Wauwatosa*,
No. 20-cv-1660, 2023 WL 2951425 (E.D. Wis. Apr. 14, 2023) ...............................................19

*Lopez v. Smith*,
203 F.3d 1122 (9th Cir. 2000) ..........................................................................................25

*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990) ..........................................................................................5, 9

*Maracich v. Spears*,
570 U.S. 48 (2013)................................................................................................................12

*Matera v. Google Inc.*,
No. 15-cv-04062, 2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) .............................................20

*Northrop Corp. v. McDonnel Douglas Corp.*,
705 F.2d 1030 (9th Cir. 1983) ..............................................................................................8

*Pichler v. UNITE*,
542 F.3d 380 (3d Cir. 2008) ..............................................................................................15

*Pickering v. FCA US LLC, et al.*,
No. 21-cv-1813-GW-RAOX, 2021 WL 5968454 (C.D. Cal. Apr. 12, 2021) ..............................7

*Rand v. Travelers Indem. Co.*,
No. 21-cv-10744, 2022 WL 15523722 (S.D.N.Y. Oct. 27, 2022).............................................14

*Revitch v. New Moosejaw, LLC*,
No. 18-CV-06827-VC, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ......................................23

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ........................................ 22, 23

*Rodriguez v. Aquatic Sales Sols. LLC*,
No. 2:23-CV-05198-CAS-EX, 2024 WL 2804097 (C.D. Cal. May 29, 2024) .......... 21

*Salt River Project Agric. Improvement & Power Dist. v. Lee*
672 F.3d 1176 (9th Cir. 2012) ........................................ 3

*Senne v. Village of Palatine, Illinois*,
695 F.3d 597 (7th Cir. 2012) ........................................ 15

*Smith v. Google, LLC*,
No. 23-CV-03527-PCP, 2024 WL 2808270 (N.D. Cal. June 3, 2024) .......... 21, 23, 24

*Tinoco v. San Diego Gas & Elec. Co.*,
327 F.R.D. 651 (S.D. Cal. 2018) ........................................ 7

*Tison v. Arizona*,
481 U.S. 137 (1987) ........................................ 14

*Turner v. Nuance Commc'ns, Inc.*,
No. 22-CV-05827-DMR, 2024 WL 2750017 (N.D. Cal. May 28, 2024) .......... 22

*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999) ........................................ 8

*United States v. Hastie*,
854 F.3d 1298 (11th Cir. 2017) ........................................ 15

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) ........................................ 23

**<u>Statutes</u>**

18 U.S.C. § 2721 ........................................ 1, 12, 19, 20

18 U.S.C. § 2722 ........................................ 12

18 U.S.C. § 2723 ........................................ 11

18 U.S.C. § 2724 ........................................ 13, 14

18 U.S.C. § 2725 ........................................ 16

Cal. Govt. Code § 810 ........................................ 7

Cal. Penal Code § 631 ........................................ passim

## I. INTRODUCTION

In recent years, Google's advertising business has generated over $200 billion in *annual* revenue, and it is estimated that by 2027, that number will reach $340 billion. A major part of that revenue is generated through Google's proprietary software code called "Google Analytics" and "DoubleClick" (collectively, the "Collection Software"). Importantly here, the Collection Software is embedded throughout the California Department of Motor Vehicles ("DMV") website, where it surreptitiously harvests an extraordinary amount of legally protected personal information about DMV customers and the contents of their communications with the DMV, without their knowledge or consent. Google uses that private data to create, or add to, a user profile maintained by Google, which allows it to identify, characterize, and categorize its users. Using this valuable information, Google monetizes its users' profiles by allowing its advertising customers to target individuals with digital ads based on specific personal characteristics.

Plaintiff, who is disabled, is a victim of Google's data harvesting scheme. When she interacted with the DMV website to submit a renewal application for a disability placard, the Collection Software secretly collected her personal disability information, along with her first and last name, date of birth, email address, and URL information from the DMV website. Google then used this highly personal information for advertising purposes. Google's conduct violates the Drivers Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, *et seq.*, and the California Invasion of Privacy Act ("CIPA"), California Penal Code § 630, *et seq.*

The linchpin of Google's motion to dismiss is that *the DMV* is the only wrongdoer here, and there is nothing Google can do about the highly personal information *it* intentionally obtained, used, and profited from. The argument is illogical, contrary to the facts, and, in any event, requires the Court to ignore well-established joinder rules. Against this backdrop, Google's arguments fail.

First, the DMV is not a "required" party under Rule 19. Plaintiff can obtain complete relief from Google without joining the DMV, the DMV has not claimed any interest in this action, and a judgement against Google will not subject it to multiple or inconsistent obligations.

Second, Plaintiff adequately pleads her claims under the DPPA and CIPA, and Google's arguments for dismissal under are neither novel nor convincing. Indeed, Judge Susan Illston denied

a motion to dismiss by Meta last year in a case involving nearly identical allegations about software code Meta installed on the DMV's website to obtain similar personal data. *See Gershzon v. Meta Platforms, Inc.*, No. 23-cv-00083-SI, 2023 WL 5420234 (N.D. Cal. Aug. 22, 2023).

The Court should deny Google's motion to dismiss in its entirety.

## II. SUMMARY OF PERTINENT ALLEGATIONS

Google is a digital advertising giant whose business model centers around harvesting and profiting from personal data it collects. *See* Class Action Complaint ("Compl."), ECF 1, ¶ 4. To enhance its data collection efforts, Google voluntarily and intentionally designed the Collection Software to secretly and indiscriminately transmit users' personal information, communications, and interactions with third parties, including the DMV, to itself for its own financial gain. *See id.* ¶¶ 2, 34-70.

Specifically, Google constructs individual user profiles using the data it compiles through the Collection Software's use of cookies and tracking technology. *Id.* ¶¶ 35-41. The personal information and communications Google obtains through the Collection Software are funneled into its advertising businesses and are used to fuel various services offered via its proprietary Google Ads and Google Marketing Platform, which allow customers to target specific audiences. *Id.* ¶¶ 25-27, 42-43. Indeed, Google advertises that "targeting ads is an essential part of a successful advertising campaign" *id.* ¶ 25, and its customers can target "ideal audiences" based on extremely specific personal characteristics, *id.* ¶ 44.

As relevant here, Google's Collection Software obtains and collects users' highly personal information, including its users' personal disability information, disability placard information, first and last names, dates of birth, email addresses, and other identifying information from the DMV's motor vehicle records, and about users' activity on the DMV website, including the contents of users' communications with the DMV. *See, e.g.*, *id.* ¶ 69. The information obtained by Google is then combined with other information that Google obtains about users as they move around the DMV website to connect that information to the users' profiles. *Id.* As a result, advertisers can target users by using the personal information and data that Google illegally harvested through the Collection Software on the DMV website. *Id.*

Plaintiff Katherine Wilson is a citizen and resident of the State of California and possesses a DMV-issued disability parking placard ("DPP"). *Id.* ¶ 7. In 2023, she applied for a renewal of her DPP through the DMV website, and during the renewal process, Plaintiff provided the DMV with highly personal information, including her disability information, email addresses, and disability placard information*.* *Id.* ¶¶ 7-8, 68. Google collected Plaintiff's personal information through its Collection Software embedded on DMV's websites and learned the contents of her communications with the DMV, all without her knowledge or consent. *Id.* ¶¶ 8-9.

## III. ARGUMENT

### A. The DMV Is Not a "Required Party" and Its Absence Does Not Warrant Dismissal.

Google urges this Court to find that the DMV is a "required party"[1] to this litigation under Rule 19 and that dismissal of the entire case is warranted under Fed. R. Civ. P. 12(b)(7) because joinder of the DMV is not feasible. *See* Google's Motion to Dismiss ("MTD"), ECF No. 19, at 1, 10. Neither the facts nor the law support Google's argument.

Rule 19's joinder analysis involves a three-step inquiry: (1) Is the non-party "necessary" to the litigation?; (2) If so, is it feasible to order the absent party be joined?; and (3) If joinder is not feasible, can the case proceed without the absent party, or is the absent party indispensable such that the action must be dismissed? *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012). If a court determines that a non-party is not "necessary," it need not address the next two questions. *Force MOS Tech. Co. v. Lin*, No. 22-cv-08938-SVK, 2024 WL 1199017, at *1 (N.D. Cal. Mar. 19, 2024) (citation omitted).

"Rule 19 gives a trial court considerable discretion . . . ." *Bakia v. Los Angeles Cnty. of State of Cal*., 687 F.2d 299, 301 (9th Cir. 1982). Importantly, "[t]he Rule 19 inquiry is a practical, fact-specific one, designed to avoid the harsh results of rigid application." *Iconlab Inc. v. Bausch Health Companies Inc.*, No. 16-cv-03121-JLS-KES, 2019 WL 12521292, *3 (C.D. Cal. May 15, 2019) (citations omitted). "Evaluating the propriety of dismissal 'requires the district court to analyze

[1] Rule 19 now uses the term "required parties," but courts sometimes still use the terms "necessary" party in the Rule 19 analysis based on the Rule's pre-amendment language.

various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue.'" *Id.* (quotation omitted). "The party seeking joinder under Rule 19 bears the burden of persuasion." *Force MOS Tech.*, 2024 WL 1199017, at *1 (citation omitted).

**1. <u>*Downing v. Globe Direct LLC*, the tentpole of Google's Rule 12(b)(7) argument, is inapposite.</u>**

At the center of Google's argument is a decision from the District of Massachusetts in *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18, 19 (1st Cir. 2012). The *Downing* court held that the Commonwealth of Massachusetts was a required party to a DPPA class action against a direct marketer who mailed registration renewal notices on behalf of the Massachusetts Registry of Motor Vehicles ("RMV"). Google claims that this "highly analogous decision . . . demonstrates that this case cannot proceed without the DMV." MTD at 6. Indeed, Google leans heavily on *Downing* to support essentially every element of its faulty Rule 19 analysis. However, because *Downing* was decided on very different facts, it lacks any persuasive value.

Critically, the *Downing* case *did not* involve the highly personal disability information at issue here, nor did it involve a party's misuse of such personal information for its own financial gain. Instead, in *Downing*, the RMV retained a direct marketer to print and mail registration renewal notices to motor vehicle owners *on behalf of Massachusetts*. 806 F. Supp. 2d at 464. The RMV provided the outside marketer with the names and addresses of motor vehicle owners for mailing purposes. And, to defray the cost of the mailing and thereby save Massachusetts money, the RMV's contract *required* the marketer to include third party advertisements in the mailings, which the RMV *approved*. *Id*. at 464. The district court found that the RMV was a required party because the plaintiff requested an order enjoining the defendant marketer from engaging in certain future conduct *required by the RMV's contract*. *Id*. at 467. Because such an injunction "would effectively invalidate Massachusetts's contract," the court held that the State should have a say in the determination and should have been joined. *Id.* But, because joinder was not feasible and the Rule 19(b) factors favored dismissal, the court dismissed the case. *Id*. at 468-470.

The facts here are easily distinguishable in many crucial respects. Here, Google obtained

and used Plaintiff's personal disability information (Compl., ¶ 8-9), whereas the information used by the marketer in *Downing* was merely names and addresses. *Downing*, 806 F. Supp. 2d at 464. Additionally, while the RMV's contract with the marketer in *Downing* obligated the marketer to use the plaintiffs' names and addresses to mail the advertisements, *id.*, Google does not and cannot demonstrate that the use of Plaintiff's personal disability information *in particular* is necessary for Google to perform its obligations under its service agreements with the DMV. *Cf. id.* at 464. In fact, Google itself argues that its agreement with the DMV prohibits it from doing so.

Relatedly, Plaintiff is not seeking to enjoin Google from any conduct required under its agreements with the DMV. Plaintiff seeks to prevent Google from unlawfully obtaining and using Plaintiff's personal disability information for its own targeted advertising purposes, inuring to its own pecuniary benefit. Try as it might, Google cannot avoid the obvious: this case involves Google's *own conduct* and falls under "the second part of the DPPA which 'concerns not DMVs themselves, but instead those who illicitly seek information from motor vehicle records." *Gershzon*, 2023 WL 5420234, at *4 (citing *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253 (9th Cir. 2019)).

Without *Downing's* support, Google's argument collapses. But even if the facts here were analogous, Google's Rule 12(b)(7) argument fails for the additional reasons below.

**2. <u>The DMV is not a "required party" under Rule 19.</u>**

A party may be "required" under Rule 19(a) for three different reasons: first, if, in its absence, the court cannot accord complete relief among existing parties; second, if it claims an interest in the action and resolving the action in its absence may, as a practical matter, impair or impede its ability to protect that interest; and third, if it claims an interest in the action and resolving the action in its absence may leave an existing party subject to inconsistent obligations because of that interest. Fed. R. Civ. P. 19(a)(1)(A)-(B)(ii); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558-59 (9th Cir. 1990). None of these reasons apply here.

**a. The Court can award "complete relief" without the DMV.**

Google argues that any relief awarded by this Court would be incomplete without the DMV because (a) in the absence of an injunction against it, the DMV will remain free to share Plaintiff's

data with third parties, and (b) it would be unfair if Google could not seek contractual indemnification under the Google Analytics Terms of Service and Google's Advertising Program Terms (collectively the "Agreements") against the DMV. MTD at 7. Plaintiff contests Google's request for judicial notice of the Agreements, but even if the Court considers them, Google's arguments fall flat.

"In evaluating whether a court may award complete relief without joining an additional party, a 'court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties.'" *Force MOS Tech.*, 2024 WL 1199017, at *2 (quotation omitted). "This requirement is satisfied where "a party can recover damages sufficient to compensate for his or her injuries from the defendants already in the action." *Id.* at *2 (citing *A.D. v. Cal. Highway Patrol*, No. 07-cv-05483-SI, 2009 WL 773872, at *2 (N.D. Cal. Mar. 17, 2009)).

Google's first argument, that an injunction against the DMV is necessary to afford Plaintiff complete relief, mischaracterizes Plaintiff's allegations. *See* MTD at 6-7. Under the DPPA, Plaintiff seeks monetary damages and injunctive relief prohibiting Google from using its Collection Software to obtain and use personal information from her DMV records. Compl., ¶¶ 111-12, 127-28. Google shockingly argues that injunctive relief against it alone is futile because it cannot take *any action* to ensure that its Collection Software complies with the law (MTD at 5), an entirely unsupported, self-serving statement about Google's technical capabilities that the Court cannot accept at face value. Moreover, Google develops sudden concern for Plaintiff's privacy rights and argues that any relief Plaintiff could obtain against Google here would be incomplete because the DMV would remain free to share Plaintiff's personal information with *other companies* that are apparently harvesting Plaintiff's data from the DMV website. MTD at 5-7. However, that hypothetical scenario does not mean that the relief Plaintiff is seeking *from Google* for injuries caused *by Google* would be incomplete. The DMV is not the entity illegally collecting, using, and monetizing Plaintiff's highly personal information through the Collection Software, Google is. *See, e.g.*, Compl., ¶¶ 42-47, 109.

Using the same blame-shifting misconstruction of Plaintiff's allegations, Google next

argues that the DMV is a required party in order to avoid multiple lawsuits on the same cause of action. MTD at 6-7. Google identifies two other lawsuits against *different* defendants alleging that those defendants unlawfully use *different* technologies to obtain and use data from the DMV as a basis to argue that without the DMV as a party, no company can resist harvesting protected data from the DMV's website. *Id*. at 7. That argument is illogical, because in those two cases, like here, the parties allege that the defendants, *not the DMV*, are violating the law, so there is no basis to enjoin the DMV to ensure other parties do not break the law in the future.

Finally, Google argues that it has contractual indemnification rights against the DMV, and that if this Court finds it liable, it cannot seek indemnification. MTD at 7. But a party's right to indemnification against a non-party is not the proper basis for a finding that the non-party is "required" under Rule 19. *See Tinoco v. San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 658 (S.D. Cal. 2018) (the mere possibility of indemnity between current defendant and proposed defendant does not meet the requirements of Rule 19's "complete relief" analysis); *accord Pickering v. FCA US LLC, et al.*, No. 21-cv-1813-GW-RAOX, 2021 WL 5968454, at *2 (C.D. Cal. Apr. 12, 2021); *see also A.D. v. California Highway Patrol*, 2009 WL 733872 at *2 ("A party potentially subject to an indemnity action arising from the claim is not necessary [to] afford complete relief.").

In any event, Google never explains *why* it could not seek indemnification from the DMV—the Court and Plaintiff are left to guess. Instead, it cites its agreements with the DMV that *contradict* its assertion. For example, Google's Advertising Program Terms contain a Section entitled "Dispute Resolution Agreement" under which Google and the DMV agree to arbitrate any disputes. *See* Johnson Decl., Ex. D §13. Alternatively, Google can pursue claims against the DMV in California State Court under the California Government Claims Act, Cal. Govt. Code § 810, *et seq*. Section 905.2 thereof explains the procedure for "all claims for money or damages against the state." *See Bates v. Franchise Tax Bd.*, 124 Cal. App. 4th 367, 382-83 (Cal. Ct. App. 2004).

Google's reliance on *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070 (9th Cir. 2010), for the proposition that it would be "unfair" if it could not pursue contractual indemnification against the DMV is also inapposite. MTD at 7. In *Peabody*, there was no contract between the defendant and absent party, the Secretary of the Interior. *See id.* at 1082. Accordingly, if the Secretary were

not joined in that case, the defendant would have had no avenue to seek indemnification. *Id.* at 1083. ("[B]ecause Peabody's indemnification suit would seek damages, it would be barred by the government's sovereign immunity unless that immunity is waived by statute. We can find no waiver of sovereign immunity to such a suit."). Because Google has a right to seek indemnification against the DMV in a separate proceeding, the "unfairness" considerations in *Peabody* are simply not present here.

**b. The DMV has not claimed a legal interest in this action and does not have a claim to an interest that would be impaired or impeded by its absence.**

Google also fails to establish or even assert that the DMV has affirmatively claimed an interest in this matter as required by Rule 19(a)(1)(B). This is important, because as Google repeats throughout its motion, this is the third case against advertisers arising from third-party tracking software on the DMV's website, yet ***the DMV has not claimed an interest in any case***. Because the Court can accord complete relief among the parties, the analysis under Rule 19 properly stops here. *United States v. Bowen*, 172 F.3d 682, 688-89 (9th Cir. 1999) (collecting cases showing that joinder is permissible only when complete relief is impossible in a non-party's absence or when the absent party affirmatively claims a legally protected interest in the action); *Northrop Corp. v. McDonnel Douglas Corp.*, 705 F.2d 1030, 1043-45 (9th Cir. 1983) (joinder under Rule 19(a)(1)(B) denied because the non-party had "never asserted a formal interest in either the subject matter of this action or the action itself.").

Every Ninth Circuit case Google relies upon for this argument involved an absent party affirmatively claiming an interest in the litigation except for *Peabody*, 610 F.3d at 1081, in which the issue was not addressed. Google represents that in *Iconlab Inc. v. Bausch Health Companies Inc.*, 828 F. App'x 363 (9th Cir. 2020), the Court "affirm[ed] a ruling that absent parties that had asserted no interest in the action still had a legally protected interest for purposes of Rule 19(a)(1)(B))" (MTD at 5), but that is a blatant misreading of the case. The district court instead held that "[a] legally protected interest does not automatically make its possessor a necessary party; **the possessor must actually assert or otherwise 'claim' to possess the interest**[,]" and

recognized that "**Plaintiffs do not argue that the [absent parties] have not claimed an interest here**." *Iconlab*, 2019 WL 12521292, at *5, n.5 (emphasis added).

Nevertheless, Google cannot meet the lower standard it champions. Google argues that the DMV has an interest related to this action that will be impaired by its absence because this case "may result in a finding that the DMV violated" the law or its contractual agreements with Google. MTD at 8. However, to determine liability under the DPPA, the Court need only determine that *Google* "(1) knowingly obtained [Plaintiff's] personal information (2) from a motor vehicle record (3) for a nonpermissible use." *Andrews*, 932 F.3d at 1259. As fully addressed below, Plaintiff's DPPA claim, as alleged in her Complaint, easily meets each of these elements and does not depend on a finding that the *DMV* violated the law or breached any contractual agreements with Google.

Nor will Plaintiff's action "diminish the DMV's ability" to regulate the motor vehicle industry through "outreach to drivers and citizens about services and legal requirements." MTD at 9. Google provides no factual support for its claim that the DMV's key functions and ability to "govern effectively and efficiently" will be impaired or invalidated by a judgment *against Google* for *Google's illegal conduct*. *See Makah*, 910 F.2d at 558 (a "legally protected interest" must be more than mere "speculation about a future event," which would be "impaired or impeded" by the lawsuit). Plaintiff is not seeking any relief that would prevent the DMV from contracting for advertising services with other law-abiding entities, or maintaining its contract with Google so long as Google ceases its illegal harvesting and exploitation of Plaintiff's highly personal information to profit from targeted advertising.

**c. The DMV's absence will not subject Google to undue liability.**

The DMV's absence does not put Google at "substantial risk of incurring" multiple "or otherwise inconsistent obligations" because of the DMV's alleged interests. *See* MTD at 9-10, citing Fed. R. Civ. P. 19(a)(1)(B)(ii). Google's argument echoes its earlier evidence-free defense that it cannot bring the Collection Software into compliance with the law. The Court cannot accept at face value Google's assertion that the *only* way it can comply with an injunction is to violate the law, or that Google cannot take some action—like installing a data filter—to prevent it from collecting and using the protected data at issue here.

* * *

Google has not satisfied any of the three tests under the "required party" inquiry, so the Court can reject its Rule 12(b)(7) argument without further analysis. *See Force MOS Tech.*, 2024 WL 1199017, at *1. However, even if the DMV were "required," dismissal would not be warranted.

### 3. The DMV's absence does not warrant dismissal.

The parties do not dispute that joinder of the DMV is not possible, so "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 provides four factors for the Court to consider, none of which warrant dismissal. *See* Fed. R. Civ. P. 19(b)(1)-(4).

***First***, no party will suffer prejudice if the Court renders judgment in the DMV's absence. Fed. R. Civ. P. 19(b)(1). Google correctly notes that the prejudice analysis is largely duplicative of the required party analysis under Rule 19(a). MTD at 10. Because Google makes no new arguments regarding prejudice, this factor does not support dismissal. *See* § III.A.2, *supra*.

***Second***, because the DMV and Google will not be prejudiced by the DMV's absence, no "protective provisions in the judgment," "shaping the relief," or "other measures" are necessary. Fed. R. Civ. P. 19(b)(2)(A) & (B). As explained above, the DMV's contractual interests will not be impacted by a judgment ordering Google to stop collecting and using Plaintiff's highly personal information from the DMV website, because, for example, Google can modify the Collection Software to stop Google's unlawful activities. *See* § III.A.2.c. As for prejudice to Google's contractual right to indemnification, Google can, if necessary, litigate this right in California courts or demand arbitration. *See* § III.A.2.a.

***Third***, a judgment *against Google* in the DMV's absence will not be inadequate, Fed. R. Civ. P. 19(b)(3), because, contrary to Google's argument, Plaintiff's requested relief against *Google* will be complete, and will compensate and protect Plaintiff from the harm *Google* caused her and the Class. *See* § III.A.2.a.

***Fourth***, Plaintiff will have no adequate remedy against Google if the action is dismissed. *See* Fed. R. Civ. P 19(b)(4). The DPPA allows the Attorney General to seek the DMV's compliance

with the law, but despite Google's attempts to avoid responsibility by portraying the DMV as the unlawful actor in contravention of Plaintiff's allegations, Plaintiff is seeking redress for *Google's* conduct. *See* § III.A.1, A.2.a. The DPPA does not permit the Attorney General to impose penalties *against Google*, only the DMV. 18 U.S.C. § 2723.

Google's reliance on *Dawavendewa* only highlights the weakness of its argument. There, the court recognized that the plaintiff could have sued "in tribal court and after an adverse decision, Dawavendewa could allege sufficient actions by tribal officials, *i.e.*, Navajo Supreme Court Justices, to sustain his action." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1163, n.12 (9th Cir. 2002). Google has not argued here that Plaintiff has similar—or any—options for an alternate forum.

*Downing* is also unpersuasive. There, it was the RMV's own actions in requiring the marketer's use of personal information to mail advertisements that caused the alleged DPPA violation, 806 F. Supp. 2d at 467, so a suit by the Attorney General against the RMV could have provided the plaintiff with an adequate remedy. Here, the agreement between the DMV and Google does not require Google to obtain and use Plaintiff's personal information. *See* MTD at 3, 8. Plaintiff alleges that Google collects that information and uses it *despite* this provision. An action by the Attorney General against the DMV would not remedy the misconduct alleged.

Google also argues that even if Plaintiff lacks an adequate remedy, the DMV's sovereign immunity alone supports dismissal. MTD at 10-11. That a "required" party may have sovereign immunity is not, as a matter of course and without more, a basis for dismissal. In *Dawavendewa*, the Ninth Circuit found that "some courts have noted that there may be very little need for balancing Rule 19(b) factors because immunity itself may be viewed as one of those interests compelling by themselves, which requires dismissing the suit . . . the Ninth Circuit has, nonetheless, consistently applied the four part balancing test to determine whether Indian tribes are indispensable parties." 276 F.3d at 1162 (citations and internal quotations omitted). Google has provided no basis to deviate from that practice. This Court should apply the four-part balancing test, as outlined above, notwithstanding the DMV's sovereign immunity.

Accordingly, even if the DMV were a "required party," joinder is not feasible and in equity

and good conscience, the action should proceed among the existing parties. The Court should deny Google's Rule 12(b)(7) motion.

**B. Plaintiff Adequately Pleads Her DPPA Claim.**

The co-sponsors of the DPPA made clear that the statute protects the public's right to control access to the personal information they provide to the DMV because individuals are *obligated* to provide that information to operate a motor vehicle. 139 Cong. Rec. S15745-01, S15764 (Nov. 16, 1993), available at 1993 WL 470986. Congress enacted the DPPA because "most" state DMVs were selling data to marketers, and some were divulging data to any taker for a fee, which facilitated stalking and other crimes. *Id*. By codifying the "individual's fundamental right to privacy and safety" into law, the DPPA "seeks to control dissemination of information collected using the coercive power of the state." *Maracich v. Spears*, 570 U.S. 48, 57, 82 (2013); *Andrews*, 932 F.3d at 1261.

The DPPA is comprised of two parts: the first part prohibits "[a] State department of motor vehicles" from "knowingly disclos[ing] or otherwise mak[ing] available . . . personal information . . . about any individual obtained by the department in connection with a motor vehicle record." 18 U.S.C. § 2721(a). The second part, which is the focus of this litigation, makes it unlawful for "any person knowingly to obtain or disclose personal information, from a motor vehicle record" unless it is for a permitted purpose. 18 U.S.C. § 2722(a). In other words, § 2722 "***concerns not DMVs themselves, but instead those who illicitly seek information from motor vehicle records***." *Andrews*, 932 F.3d at 1258 (emphasis added).

To state a claim under the DPPA, Plaintiff must allege that Google "(1) knowingly obtained [her] personal information (2) from a motor vehicle record (3) for a nonpermissible use." *Id.* at 1259. Google's motion argues that Plaintiff's DPPA claim should be dismissed because Plaintiff failed to adequately allege any of these three elements. Notably, however, Judge Illston rejected nearly identical arguments last year when Meta asserted them in *Gershzon*, 2023 WL 5420234, a factually similar case involving a "Pixel" created by Meta that obtained plaintiff's personal information from the DMV's website. For the reasons below, this Court should follow Judge Illston's well-reasoned opinion in *Gershzon* and deny Google's motion.

### 1. Plaintiff adequately alleges that Google knowingly obtained and used her personal information.

Google is subject to a DPPA claim if it "knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted." 18 U.S.C. § 2724(a). "As a matter of statutory construction, the 'knowingly' requirement applies to the first element of a DPPA claim–'obtains, discloses or uses personal information.'" *Gershzon*, 2023 WL 5420234, at *10.

Plaintiff alleges that her "personal information was obtained 'knowingly' under the DPPA because Google specifically designed [the Collection Software] to collect information wherever it is installed and suggested that website owners install it in ways that maximize the data collected thereby. Furthermore, Google knows that [the Collection Software is] transmitting information from motor vehicle records maintained by the DMV, and transmitting information about, and the contents, of communications exchanged between users and the DMV." Compl., ¶ 70. Plaintiff supports this allegation with facts specifically detailing how Google provided the DMV with the Collection Software that Google itself intentionally designed to gather and transmit the personal information as alleged. *Id.* ¶¶ 49-51. Plaintiff then provides examples, including screenshots, of the process by which the Collection Software obtains information when users access and browse the DMV website and how the Collection Software collected Plaintiff's personal information identified in the Complaint. *Id*. ¶¶ 61-68. Google also assigned a unique identifier to the Collection Software and maintains records associating the Collection Software with the data it transmits and the website in which it is embedded, so it has knowledge of the source and content of the transmissions. *Id.* ¶ 50. Additionally, Plaintiff alleges that Google knowingly uses the data it harvests for marketing purposes once it obtains that data. *Id*. ¶¶ 42-47, 69-70.

Plaintiff's allegations are bolstered by Google's representations about the capabilities of the Collection Software to identify specific details about users. For example, Google's website boasts that customers can target specific audience segments "determined by people's activity using Google products and third-party websites, or estimated based on content certain groups of people are likely to be interested in." *Id*. ¶ 43. And Google states that it can help advertisers "reach and attract new

customers with ads for [their] highest-performing products" by using "historical feed performance and user behavior" to "predict[] which new users are most likely to perform well for items in [an advertiser's] feed. Once the system finds statistically significant relationships between feed items and user intent, it combines that possible intent with demographics-based information such as age and gender to match the user's intent with a relevant product in [an advertiser's] feed." *Id.* ¶ 28.

Similar allegations were sufficient to satisfy the "knowingly" pleading requirement in *Gershzon*. *See* 2023 WL 5420234, at *10. Yet, despite Plaintiff's detailed factual allegations, Google attempts to evade responsibility by shifting the blame to the DMV for its use of the Collection Software as Google intended. Google argues that its collection and use of personal information was "a mere passive failure to prevent a third party (like the DMV) from violating the DPPA," which is "insufficient to meet the statute's knowledge requirement." MTD at 12. That argument fails for at least three reasons.

***First***, even if Google were a passive observer to the DMV's misconduct, that does not save it from Plaintiff's allegation that Google "uses" Plaintiff's personal information after obtaining it for its own profit. *See* Compl., ¶ 43. Of course, the DPPA prohibits knowing "use" of personal information. 18 U.S.C. § 2724(a).

***Second***, Google's blame shifting ignores allegations that *Google* intentionally designed the Collection Software to obtain detailed information about individuals for ad targeting purposes; *Google* affirmatively represents that Collection Software can be used to target specific users based on the detailed information it collects; *Google* provided the Collection Software to the DMV for the purpose of obtaining information for its own advertising purposes; and *Google* designed the Collection Software to circumvent third party cookie settings. Plaintiff's allegations regarding Google's voluntary and intentional actions are sufficient to plead its "knowing" conduct. *See Rand v. Travelers Indem. Co.*, No. 21-cv-10744, 2022 WL 15523722, at *6 (S.D.N.Y. Oct. 27, 2022) (decision to "auto-populate" protected information on website effected "knowing" disclosure); *Tison v. Arizona*, 481 U.S. 137, 150 (1987) (noting that a party "intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts").

Google's reliance on inapposite cases that did not involve voluntary action by a defendant

confirms the weakness of its argument. In *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018), the court found that the non-actions of an employer accused of "disclosing" information that was stolen by "various, unknown identity thieves" was not a knowing disclosure. *Id.* at 659. Similarly, in *Allen v. Vertafore, Inc*., 28 F.4th 613 (5th Cir. 2022), the court found that the non-action of storing personal information on unsecured external servers that third parties accessed was not a knowing disclosure. *Id*. at 617.

Here, unlike the defendants in *Enslin and Allen* who were themselves crime victims, Google voluntarily created and distributed its Collection Software to transmit pertinent information from third parties, including the DMV, for its own use. In doing so, Google had a responsibility to comply with the DPPA.

***Third***, Plaintiff alleges facts showing that Google knew that it was obtaining or using protected personal information from the DMV. Specifically, Plaintiff alleges that Google: (a) knows that its Collection Software is operating on the DMV's website (Compl., ¶ 51); (b) knows that the information the Collection Software obtains comes from the DMV website because it contains a unique numerical identifier identifying the DMV as the source of the transmission (*id*. ¶ 50); (c) knows the type of information that its Collection Software obtains because the Collection Software works as it was designed (*id*. ¶¶ 69-70); and (d) uses the information the Collection Software obtains for targeted advertising. *Id*. And, it does not matter whether Google was aware that the personal information it obtained and used was legally protected under the DPPA—the statute only requires that Google knowingly obtained or used Plaintiff's personal information, not that Google knew the legal status of that information. "Voluntary action, not knowledge of illegality or potential consequences, is sufficient to satisfy the mens rea element." *Senne v. Village of Palatine, Illinois*, 695 F.3d 597, 603 (7th Cir. 2012); *see also Pichler v. UNITE*, 542 F.3d 380, 396-97 (3d Cir. 2008) (discussing the term "knowingly" as it is used in the DPPA and finding that knowledge of illegality is not an element); *United States v. Hastie*, 854 F.3d 1298, 1305 (11th Cir. 2017) ("the [DPPA] does not require knowledge that [disclosure of personal information] is illegal").

Tellingly, the only case Google relies on in support of this argument does not analyze the DPPA's "knowingly" requirement at all. Google cites *Keogh v. Meta Platforms, Inc.*, No. 6:23-CV-

5004-KDB, 2023 WL 9657924, at *2 (D.S.C. Feb. 14, 2023), and appends the following parenthetical: "expressing skepticism where the plaintiff did not 'describe or even allege that he received any advertising from Meta concerning his DMV visit.'" MTD at 13. However, the quoted language comes from the court's "Facts and Procedural History" section of the opinion and only describes the plaintiff's allegations that "Meta used information related to his online visit to the SCDMV 'to help it in its advertising efforts[.]'" *Keogh*, 2023 WL 9657924, at *2. Thus, the court was not "expressing skepticism" that Meta "knowingly" used personal information from the SCDMV.

### 2. <u>Plaintiff adequately alleges that Google obtained her personal information "from a motor vehicle record."</u>

The DPPA defines a "motor vehicle record" as "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." 18 U.S.C. § 2725(1). "Congress intended the DPPA to reflect the Privacy Act of 1974, which defines a 'record' as 'information about an individual that is maintained by an agency.'" *Andrews*, 932 F. 3d at 1260 (citation omitted).

Plaintiff alleges that "[t]he DMV requires users to create a MyDMV account to access services through the DMV website. To create a MyDMV account, users are required [to] register with the DMV. In so doing, they are required to provide their name, which is the name that will appear on their driver's license or identification card. All of the information that users provide when registering for their MyDMV account is saved to the DMV database." Compl., ¶ 53. Plaintiff then alleges that the Collection Software "obtain[s] a record when users access their MyDMV account, which includes the user's first name, the 'cid' and 'jid' code that Google uses to uniquely identify its members, as well as other identifiers and descriptive data." *Id*. ¶ 55.

Plaintiff also alleges that Google obtains information regarding applications and renewal applications for a DPP, such as "URL information including information regarding each of the steps in the DPP application process, thereby revealing an individual's disability information[.]" *Id*. ¶¶ 63-64, 66. And "[a]fter submitting the form, the user receives an e-mail from the DMV regarding the DPP application. To view their application, users can click the 'Status Checker' button. After

clicking the button, users are prompted to enter the 'case number' and 'email address' associated with their application" and are redirected to the DMV website, where "Google obtains a URL with users' email addresses directly from DMV's website." *Id*. ¶¶ 67-68.

And since Plaintiff was *renewing* her DPP in 2023, *id*. ¶ 7, the DMV already maintained a record of her initial approved application in its database as reflected in her MyDMV account.

In sum, Plaintiff alleges that Google obtains Plaintiff's personal disability information from the DMV via the Collection Software, and that information comes from a "motor vehicle record" because the information derives from the DMV database. Those factual allegations are sufficient to state a DPPA claim. *See Gershzon*, 2023 WL 5420234, at *8 (holding that similar allegations satisfy the "from a motor vehicle record" pleading requirement).

Indeed, the foregoing allegations demonstrate that the "motor vehicle records" at issue are more than just DMV webpages, as Google argues. MTD at 14-15. For that reason, Google's reliance on *Keogh* here is, again, misplaced. In *Keogh*, the court found that the SCDMV website was not a "record" under the DPPA because it merely "provides information to the public and perhaps a means to communicate with the agency or link to its services" and plaintiff did not allege that the website "even maintains a record of the identity of those who visit its website.'" 2023 WL 9657924, at *5, fn.5. In contrast, Plaintiff's allegations above demonstrate that Google obtained her protected personal information from the DMV and her MyDMV account during the renewal of Plaintiff's disability placard (Compl., ¶ 7), which the DMV necessarily would have maintained as a legal record. *Id*. These facts also distinguish Plaintiff's allegations from those in *Davis v. Meta*, 2024 WL 3293644, at *4 (D. Nev. July 3, 2024) ("Davis does not allege that he made a 'MyDMV' account or any other kind of personal account where his information was stored by the Nevada DMV. Nor does he allege that the public-facing Nevada DMV website had any way of maintaining a record of Davis's personal information."), and *Dye v. Meta*, 2024 WL 2125602, at *3 (E.D.N.C. May 10, 2024) ("The complaint fails to allege any information about an individual that is maintained on the myNCDMV website by the DMV such that the website itself could be considered a 'record' for purposes of the DPPA.").

As such, the allegations here are more like those in *Gershzon*, in which the plaintiff alleged

that "the DMV maintained [his personal] information after Gershzon provided it to the DMV through his 'MyDMV' online account." *Gershzon*, 2023 WL 5420234, at *8. The *Keogh* court itself recognized that the lack of allegations regarding whether the DMV "maintained" the information was what distinguished it from *Gershzon* on this point and led to a different conclusion. *Keogh*, 2023 WL 9657924, at *5. Given the similarities between the allegations here and in *Gershzon*, this Court should follow *Gershzon's* reasoning.

Google also argues that DPPs are not motor vehicle records because they "relate solely to *parking privileges*, not an operator's permit." MTD at 14-15 (emphasis in original). Judge Illston flatly rejected an identical argument in *Gershzon*, holding:

> A disability parking placard (and an application for such a placard) does pertain to a motor vehicle operator's permit. If a person with a disability is licensed to drive in California and requires an accommodation in the form of a disabled parking placard, the person must apply for such a placard. Disability parking placards are only used in connection with driving, unlike a voter registration form which has no connection to driving. Thus, a disabled parking placard "pertains to a motor vehicle operator's permit."

*Gershzon*, 2023 WL 5420234, at *8.

Notably, Google does not explain *why* parking privileges do not "pertain to a motor vehicle's operator's permit." Instead, it simply states that disabled parking placards relate to parking rather than driving without elaboration or citation to support. That is not enough, because parking unquestionably "pertains to" driving. As the *Keogh* court recognized, "'[p]ertain to' or 'pertain' is a broad term which means with 'reference to' or 'related to[.]'" *Keogh*, 2023 WL 9657924, at *6, n.1. Parking accommodations are necessarily "related to" driving because parking is an action that can only be taken in connection with driving, and thus a DPP is "related to" the operation of a motor vehicle.

Plaintiff notes that as further evidence of the intertwined nature of driving and parking that Exhibit F to the Reddy Declaration (ECF 19-9) demonstrates that the DMV offers disabled person license plates that provide *the same privileges as a DPP*, but unlike a DPP, they must be permanently affixed to a single vehicle. *Id.* at p.1. It would stretch the bounds of reason to argue that disabled person *license plates* affixed to a motor vehicle are not related to a motor vehicle's

operator's permit, and DPPs are functionally identical to those plates.

Accordingly, Plaintiff has sufficiently alleged that a DPP "pertains to a motor vehicle's operator's permit."

**3. <u>Google's conduct is not "permitted" by the DPPA.</u>**

Google also argues that its conduct is permitted by 18 U.S.C. § 2721(b)(1), which permits obtaining personal information where such conduct assists "any government agency . . . in carrying out its functions." MTD at 17-18. Google's argument is defective for multiple reasons. At the outset, Plaintiff alleges that Google does not obtain or use information for any permissible purpose (Compl., ¶¶ 74, 81, 109), and Google's argument to the contrary raises a question of fact not appropriate for resolution at the pleading stage. *See Gershzon*, 2023 WL 5420234, at *9 ("Whether Meta in fact had a permissible purpose in obtaining and using personal information from the DMV website raises factual questions to be resolved on summary judgment or at trial."); *Knowlton v. City of Wauwatosa*, No. 20-cv-1660, 2023 WL 2951425, at *1 (E.D. Wis. Apr. 14, 2023).

Even if the Court were to address the argument now, the Court should reject it because Google does not identify with specificity the "functions" that it purportedly assists the DMV with. It merely states that "[a]s a government agency organized to serve a public function, ***common sense dictates*** that the DMV installed [the Collection Software] for a legitimate government purpose, ***such as*** understanding the visitors to its website and improving its advertising of its services." MTD at 17. That's all—Google provides no authority holding that "understanding the visitors to its website and improving its advertising of its services" is a DMV "function" under § 2721(b)(1). An unsupported assertion about the function of the DMV is insufficient to establish an exception to liability under the DPPA in the face of Plaintiff's contrary allegations.

Google's similar reliance on the First Circuit's decision in *Downing* is unpersuasive because, as Plaintiff has already explained, *Downing* was decided on entirely different facts. *See* § III.A.1. As pertinent here, on appeal, the court found a legitimate government purpose in a vendor sending renewal notices on behalf of the State and the contract between the RMV and vendor specified the governmental purposes for the vendor's actions. *Downing*, 682 F. 3d at 20, 24-25.

Finally, *Keogh* is instructive. There, the court held that the permissible purposes exception of the DPPA did not apply in that case because "whether or not the DMV could assert one or more 'permissible uses' with respect to its governmental use of Meta's services, ***that does not allow Meta to avoid compliance with the statute with respect to its own conduct***." *Keogh*, 2023 WL 9657924 at *7 (emphasis added). That holding applies with the same force here, where Google collects personal information from motor vehicle records and uses it to monetize the collected data through the sale of ads for its own use in providing targeted advertisements to entities other than the DMV, as explained above. Therefore, even if Google had described a legitimate government function it assisted the DMV with, § 2721(b)(1) does not apply because there is no permissible purpose for *Google's* use of the personal data to generate massive advertising revenue.

Accordingly, Plaintiff has adequately stated her DPPA claim.

**C. Plaintiff Adequately Pleads Her CIPA Claim.**

CIPA targets "the substantive intrusion that occurs when private communications are intercepted by someone who does not have the right." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020). Plaintiff alleges that Google violated the second and third clauses of CIPA. The second clause of § 631(a) creates liability for any person who "*willfully and without the consent of all parties* to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of" communications. The third clause creates liability for any person who "uses, or attempts to use, in any manner . . ., or to communicate in any way, *any information so obtained*," or who even agrees to do so. *See id.* (emphasis added); *Matera v. Google Inc.*, No. 15-cv-04062, 2016 WL 8200619, at *18 (N.D. Cal. Aug. 12, 2016).

Plaintiff adequately states a claim under both clauses of § 631(a).

**1. <u>Plaintiff adequately alleges that Google is a "third-party eavesdropper," not a party to the relevant communications.</u>**

Google argues that it cannot be liable for any violation of Cal. Penal Code § 631(a) because, as a mere vendor, it acts as an "extension" of the DMV and therefore was a party to Plaintiff's alleged communications with the DMV. *See* MTD at 19-21. But this argument relies *entirely* on Google's misrepresentation that Plaintiff did not allege that Google used her private

communications for its own financial purposes. However, Plaintiff alleges, for example, that "Google feeds the vast quantities of personal data obtained from and learned by Google Analytics and DoubleClick into the marketing and advertising systems that it sells to its advertising customers. Google capitalizes on the data and information it collects to identify, characterize, and categorize users, selling to its marketing and advertising customers the ability to target specific demographics." Compl., ¶ 42; *see also, e.g.*, *id*. ¶ 118 ("Google uses the information it obtains and collects from the DMV to create profiles, categorize individuals, and derive information about them to sell its customers the ability to create targeted marketing and advertising."); ¶¶ 7, 27, 41, 43.

Indeed, Google made a nearly identical argument in *Smith v. Google, LLC*, No. 23-CV-03527-PCP, 2024 WL 2808270 (N.D. Cal. June 3, 2024), and the court rejected this contention, finding that "the complaint alleges that Google *does* read and use Google Analytics data." *Id*. at *4 (emphasis in original). The *Smith* court held that "Plaintiffs' allegations, which must be taken as true, suggest that Google is not simply a vendor of a tool that websites can use to 'record' their own users' interactions on their websites, but rather that Google read or used the data collected about these users. Although Google can provide evidence to refute these allegations at a later stage, on this Rule 12(b)(6) motion Google's device-vendor arguments do not provide a basis to dismiss plaintiffs' Section 631 claim." *Id*. at *5. Plaintiff respectfully submits this court should follow the holding in *Smith*. *Accord Rodriguez v. Aquatic Sales Sols. LLC*, No. 2:23-CV-05198-CAS-EX, 2024 WL 2804097, at *12 (C.D. Cal. May 29, 2024).

Notably, Google's argument presupposes that it is exempt from CIPA if it does not "use" the data it collects, relying on *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021). In *Graham*, the court held that a third-party vendor did not violate CIPA where it merely "provide[d] a software service that captures its clients' data . . . and allow[ed] the client to analyze their data" but had not "intercepted and used the data itself." *Id*. at 832. Although Plaintiff meets this standard, this "use" requirement represents a minority view.

In *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891 (N.D. Cal. 2023), Judge Breyer opined that the reasoning in *Graham* and its progeny is flawed because they read a "use" requirement into the entirety of § 631(a), swallowing the third prong in the process. *See id.* at 900 (noting that "the

third prong of the statute already penalizes 'use'"). Judge Breyer found that *Graham* ignored the California Supreme Court's stated rationale for § 631: "the right to control the nature and extent of the firsthand dissemination of [their] statements." *Id.* at 899 (citing *Ribas v. Clark*, 38 Cal. 3d 355, 361–62 (1985)). As relevant here, Judge Breyer concluded in *Javier* that software providers are third parties only when they have the "capability" to use customer data "for any other purpose." *Javier*, 649 F. Supp. 3d at 900. A "growing number of district courts" have "reached the same conclusion" as the court in *Javier*. *Gladstone v. Amazon Web Servs., Inc.*, No. 2:23-CV-00491-TL, 2024 WL 3276490, at *6 (W.D. Wash. July 2, 2024) (quoting *Turner v. Nuance Commc'ns, Inc.*, No. 22-CV-05827-DMR, 2024 WL 2750017, at *10 (N.D. Cal. May 28, 2024)). The *Gladstone* court "particularly concur[ed] with *Javier*'s critiques of *Graham*'s reading of Section 631[.]" 2024 WL 3276490, at *6 (quoting *Javier*, 649 F. Supp. 3d at 900). *Accord Heerde v. Learfield Comm's, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *7 (C.D. Cal. July 19, 2024) ("This court agrees with the reasoning of *Yockey* and *Javier* and finds a third party's intent with respect to the use of the collected information is irrelevant. The inquiry turns on whether the third party has the capability to use the communications for any purpose other than to provide those communications to the intended recipient.").

If Plaintiff's allegations fall short of alleging that Google does use data from the DMV for its own purposes—they do not—they surely sufficiently allege that the Collection Software has that capability. *See* Compl., ¶¶ 35-41. Accordingly, Google is not exempt from CIPA § 631.

**2. <u>Plaintiff adequately alleges a violation of § 631(a)'s second clause.</u>**

Contrary to Google, Plaintiff plausibly alleges that Google: (1) read or attempted to read her communications, (2) while they were in transit, and (3) did so willfully.

***First***, Plaintiff alleges facts plausibly showing that Google read, or attempted to read or to learn, the contents of her communications with the DMV to provide its advertising customers with detailed information about individuals for targeted advertising purposes. Specifically, Google harvests data from communications that it obtains via the Collection Software and uses what it learns to "make extremely personal inferences about individuals" (Compl., ¶¶ 26, 29), "construct[]

individual user profiles using the data it compiles through the Collection Software's use of cookies and tracking technology" (*id*. ¶ 41), and "identify, characterize, and categorize users, *id*. ¶ 42." Similar allegations regarding Google's conduct were sufficient in *Smith*, 2024 WL 2808270, at *5, and Plaintiff's allegations exceed those deemed sufficient in *Valenzuela v. Nationwide Mut. Ins. Co.*, where the plaintiff merely alleged that the defendant's "business model is to harvest data from communications." 686 F. Supp. 3d 969, 977 (C.D. Cal. 2023). Google's cited case, *James v. Allstate Ins. Co.*, No. 3:23-cv-01931-JSC, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023), is inapposite because the plaintiff there alleged only that the defendant "recorded the data and stores it on its servers," which was "insufficient to support a plausible interference [the defendant] attempted to read or learn the contents of the communication while in transit." *Id*. at *3.

***Second***, Plaintiff sufficiently alleges that the Collection Software intercepted her communications while "in transit." First, Google "ignores the plain language of section 631." *Ribas*, 696 P.2d at 640. Section 631(a) is written in the disjunctive, and it penalizes third parties who intercept communications "while the communication[s] [are] either 'in transit' *or [are] 'being sent from' [or] 'received at' a place within this state*." *Id.*, at 640 (emphasis added); *Revitch v. New Moosejaw, LLC*, No. 18-CV-06827-VC, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) ("the particulars of the eavesdropping mechanism are of little consequence to the section 631 analysis," because "[s]ection 631's protections extend explicitly to the beginnings and ends of communications").

Here, there can be little doubt that Plaintiff's communications with the DMV were being sent from and received in California because she is a *California* resident communicating with the *California* DMV. Compl., ¶ 7. As such, she satisfies the requirements of section 631.

Plaintiff also alleges that her communications were intercepted "in transit" because the Collection Software collected the contents of her communications with the DMV as soon as she submitted her renewal application. Compl., ¶¶ 39-40 ("If a user is browsing a website where Google Analytics or DoubleClick are embedded, an HTTP request is sent using cookies, which includes information about the user's actions on the website."). These allegations of parallel transmissions to both the website and Google are sufficient to meet the "in transit" requirement. *See Revitch*,

2019 WL 5485330, at *2 ("communication by pressing a button on his mouse or a key on his keyboard . . . [e]ven if the browser caused a parallel signal to be sent . . . that intervention happened while the signal was already in transit"); *Heerde*, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024) (allegations of parallel communications sufficient).

***Third***, Plaintiff alleges willful conduct, because as explained above, she alleges that the very purpose of the Collection Software is to gather highly personal information which Google can use to identify, characterize, and categorize users for targeted advertising. Compl., ¶¶ 26, 41-42. And Plaintiff alleges that personal data "is extremely valuable to Google and its marketing and advertising clients because the inferences derived from users' personal information allow marketers and advertisers to target potential customers." *Id.* ¶ 29. In short, Plaintiff alleges that Google read communications and learned of their contents intentionally and by design, not fortuitously or inadvertently. Similar allegations were sufficient in *Gershzon*, which found that they raised a factual question. 2023 WL 5420234, at *11. Plaintiff's allegations are far more detailed than those in *Heiting v. Taro Pharms. USA, Inc.*, No. 2:23-cv-08002-SPG-E, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023), on which Google relies.

Finally, Google relies on its policies that allegedly indicate that Google "does not want personally identifiable information" and prohibits websites from transmitting it to Google. MTD at 24. The Court should not judicially notice the Google Analytics Terms of Service and Help Center pages that Google relies upon for this argument for the reasons set forth in Plaintiff's separate objection. Nevertheless, the *Smith* court recently rejected this exact same contention from Google: "While Google argues that judicially noticeable policy documents suggest that Google did not actually want to receive personally identifiable information and expressly prohibited developers from transmitting such data, this presents a question of fact that the Court cannot resolve at this stage." *Smith*, 2024 WL 2808270, at *5. Similarly, the court in *Gladstone* "was 'not convinced that [Defendant's] inclusion of a catch-all provision requiring its customers to comply with the law generally is enough to satisfy its legal obligations' under CIPA. Whether Defendant truly possessed the requisite intent will be 'tested on an evidentiary record." *Gladstone*, 2024 WL 3276490, at *11 *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1076 (N.D. Cal. 2023) (similar).

**3. <u>Plaintiff adequately alleges a violation of § 631(a)'s third clause.</u>**

Google's arguments for dismissal of Plaintiff's claim under CIPA's third clause are derivative of its discredited arguments above. *See* MTD 24-25. First, Plaintiff adequately alleges a claim under CIPA's second clause, so Google's argument to the contrary fails. Second, Plaintiff adequately alleges that Google used Plaintiff's intercepted information. *See, e.g.*, Compl., ¶ 7 ("Plaintiff discovered that Google secretly used Google Analytics and DoubleClick when she renewed her disability parking placard to unlawfully collect her personal information from her motor vehicle record, and intercept and learn the contents of her communications with the DMV, which it later used to generate revenue for its advertising and marketing business without [her] consent."); ¶ 69 (Describing how Google obtains and uses DMV "users' email addresses, disability information, disability placard information, and other identifying information from the DMV's motor vehicle records, and about users' activity on the DMV website, including the contents of users' communications with the DMV."); ¶ 118 ("Google uses the information it obtains and collects from the DMV to create profiles, categorize individuals, and derive information about them to sell its customers the ability to create targeted marketing and advertising.").

These allegations plainly refute Google's argument that Plaintiff alleged "no specific allegations related to Google's use of any data allegedly obtained from the DMV—let alone any data from the DMV's disability-related webpages" (MTD 24-25), and the Court should reject it.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court find that the DMV is not a "required party" under Rule 19 and that Plaintiff adequately pleaded her DPPA and CIPA claims, and deny Google's motion in its entirety.

In the alternative, Plaintiff respectfully requests leave to amend, which is to be granted with "extreme liberality," *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018), and unless the Court "determines that the pleading could not possibly be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

Date: August 6, 2024

Respectfully submitted,

By: */s/ Roland S. Tellis*

Roland Tellis (SBN 186269)
rtellis@baronbudd.com
David Fernandes (SBN 280944)
dfernandes@baronbudd.com
Sterling L. Cluff (SBN 267142)
scluff@baronbudd.com
Michael J. Pacelli (SBN 338042)
mpacelli@baronbudd.com
**BARON & BUDD, P.C.**
15910 Ventura Blvd., Suite 1600
Encino, CA 91436
Telephone: 818.839.2333

*Attorneys for Plaintiff and the Putative Class*