COOLEY LLP
JEFFREY M. GUTKIN (216083)
(jgutkin@cooley.com)
AARTI REDDY (274889)
(areddy@cooley.com)
MORGAN LEWIS (322205)
(melewis@cooley.com)
ANUPAM DHILLON (324746)
(adhillon@cooley.com)
JULIA M. IRWIN (352861)
(jirwin@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Defendant
GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KATHERINE WILSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:24-cv-03176-EKL<br><br>**DEFENDANT GOOGLE LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT**<br><br>Date: TBD<br>Time: TBD<br>Dept: Courtroom 3, 5th Floor<br>Judge: Eumi K. Lee<br>Trial Date: TBD<br>Date Action Filed: May 24, 2024 |

# TABLE OF CONTENTS

Page


I. INTRODUCTION ..... 1

II. PLAINTIFF FAILED TO JOIN A REQUIRED PARTY. ..... 1

A. *Downing v. Globe Direct* Is Not Distinguishable and Is Directly on Point. ..... 1

B. The DMV Is a Required Party Under Rule 19(a)(1). ..... 2

1. The Court Cannot Grant Complete Relief in the DMV's Absence. ..... 2

2. The DMV's Interest May Be Impaired in Its Absence. ..... 4

3. Without the DMV, Google May Be Subject to Inconsistent Obligations. ..... 5

C. The DMV's Absence Warrants Dismissal Pursuant to Rule 19(b). ..... 5

III. PLAINTIFF'S ARGUMENTS DO NOT ESTABLISH GOOGLE'S DPPA LIABILITY. ..... 6

A. The Complaint Does Not Allege Google's Knowing Obtainment or Use. ..... 6

B. The Challenged Data Do Not Come "From" a "Motor Vehicle Record." ..... 8

C. The Complaint Fails to Allege Google's Use for an Impermissible Purpose. ..... 10

IV. NONE OF PLAINTIFF'S ARGUMENTS SAVE HER CIPA CLAIMS FROM DISMISSAL. ..... 11

A. Plaintiff Has Failed to Plead Google Is a Third-Party Eavesdropper. ..... 11

B. Plaintiff's CIPA Clause 2 Claim Fails for Myriad Independent Reasons. ..... 13

C. Plaintiff's CIPA's Clause 3 Claim Is Also Doomed. ..... 15

V. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. Cal. Highway Patrol*,
2009 WL 733872 (N.D. Cal. Mar. 17, 2009) .... 3

*Allen v. Vertafore, Inc.*,
28 F.4th 613 (5th Cir. 2022) .... 8

*Am. Greyhound Racing, Inc. v. Hull*,
305 F.3d 1015 (9th Cir. 2002) .... 4, 6

*Am. Marine Corp. v. Blue Shield of Cal.*,
2011 WL 1399244 (N.D. Cal. Apr. 13, 2011) .... 5

*Andrews v. Sirius XM Radio, Inc.*,
932 F.3d 1253 (9th Cir. 2019) .... 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 2

*Cal. v. Azuma Corp.*,
2023 WL 5835794 (E.D. Cal. Sept. 8, 2023) .... 4

*Cody v. Ring LLC*,
2024 WL 735667 (N.D. Cal. Feb. 22, 2024) .... 13, 14

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*,
276 F.3d 1150 (9th Cir. 2002) .... 3, 6

*Doe v. Google LLC*,
2024 WL 3490744 (N.D. Cal. July 22, 2024) .... 12, 13, 15

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .... 15

*Downing v. Globe Direct*,
806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*, 682 F.3d 18 (1st Cir. 2012) .... *passim*

*Enslin v. Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015) .... 8

*Esparza v. Gen Digit. Inc.*,
2024 WL 655986 (C.D. Cal. Jan. 16, 2024) .... 14

*Force MOS Tech. Co. v. Lin*,
2024 WL 1199017 (N.D. Cal. Mar. 19, 2024) .... 3

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gershzon v. Meta Platforms, Inc.*,
2023 WL 5420234 (N.D. Cal. Aug. 22, 2023) ... *passim*

*Heerde v. Learfield Commc'ns, LLC*,
2024 WL 3573874 (C.D. Cal. July 19, 2024) ... 14

*Iconlab Inc. v. Bausch Health Cos.*,
2019 WL 12521292 (C.D. Cal. May 15, 2019) ... 4

*Jackson v. LinkedIn Corp.*,
No. 24-cv-00812-PCP (N. D. Cal. Aug. 13, 2024), ECF No. 57 ... 4

*Keogh v. Meta Platforms, Inc.,*
680 F. Supp. 3d 601 (D.S.C. 2023) ... 7

*Knight v. Meta Platforms, Inc.*,
No. 23-13347 (D.N.J. July 29, 2024) ... 9

*Knowlton v. City of Wauwatosa,*
2023 WL 2951425 (E.D. Wis. Apr. 14, 2023) ... 10

*Love v. Ladder Fin., Inc.*,
2024 WL 2104497 (N.D. Cal. May 8, 2024) ... 13

*Northrop Corp. v. McDonnell Douglas Corp.*,
705 F.2d 1030 (9th Cir. 1983) ... 4

*Rand v. Travelers Indemnity Co.,*
637 F. Supp. 3d 55 (S.D.N.Y. 2022) ... 8

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ... 14

*Rodriguez v. Google LLC*,
2021 WL 6621070 (N.D. Cal. Aug. 18, 2021) ... 14

*Senne v. Village of Palatine, Ill.*,
695 F.3d 597 (7th Cir. 2012) ... 9

*Smith v. Google, LLC,*
2024 WL 2808270 (N.D. Cal. June 3, 2024) ... 12

*Tison v. Arizona,*
481 U.S. 137 (1987) ... 8

*United States v. Bowen*,
172 F.3d 682 (9th Cir. 1999) ... 4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) .......... 14

*Valenzuela v. Nationwide Mut. Ins. Co.*,
686 F. Supp. 3d 969 (C.D. Cal. 2023) .......... 14

**Statutes**

18 U.S.C. § 2725 .......... 1, 9, 10

## I. INTRODUCTION

Google's Motion to Dismiss ("Mot.") established that Plaintiff's Complaint cannot go forward for a host of reasons. Plaintiff failed to join a required party and the entity actually responsible for her alleged injuries—the California DMV—despite the fact that this case is ***the third case pending in this district*** concerning its conduct. Plaintiff also failed to plead Google's "knowing" obtainment of personal information from a "motor vehicle record" under the DPPA and failed to plead a "willful," non-party interception of a communication "in transit" under CIPA. Plaintiff's Opposition ("Opp.") not only confirms that her Complaint deals solely in generalities, but also fails to refute Google's arguments. The Court should dismiss this action in its entirety.[1]

## II. PLAINTIFF FAILED TO JOIN A REQUIRED PARTY.

### A. *Downing v. Globe Direct* Is Not Distinguishable and Is Directly on Point.

Because *Downing v. Globe Direct*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd*, 682 F.3d 18 (1st Cir. 2012), provides a roadmap to dismissal here, Plaintiff spends pages trying to cast it as inapposite. It is not. *Downing* involved a DPPA claim against a third-party vendor (Globe Direct) that facilitated a state motor vehicle agency's advertising. Here, Google is a third-party vendor facilitating the DMV's advertising. The Court should refuse Plaintiff's plea to ignore *Downing*.

***First***, Plaintiff argues *Downing* is distinguishable because it did not involve disclosure of "highly personal disability information." Opp. at 4. This distinction is irrelevant; the DPPA applies equally to all personal information, if taken from a motor vehicle record. 18 U.S.C. § 2725.

***Second***, Plaintiff distinguishes *Downing*, arguing that Google's receipt of the challenged information is not "necessary for Google to perform its obligations under its service agreements with the DMV." Opp. at 5. Plaintiff does not explain why this makes *Downing* inapplicable and it is not. Indeed, the case to join the DMV is arguably stronger here, where the DMV's alleged actions likely violate its underlying agreement with Google, such that any finding that Google is liable may result in contractual (and, as discussed below, DPPA) liability for the DMV. Mot. at 8.

***Third***, to the extent Plaintiff suggests that *Downing* is distinguishable because an injunction

[1] Defined terms here have the same meaning as in the Motion. Unless otherwise indicated, all internal citations and quotations are omitted, and all emphasis is added.

"would [have] effectively invalidate[d]" the parties' contract, Opp. at 4, the same is true here. Plaintiff asks this Court to find Google liable for receiving "personal information" from the DMV, but Sections 4 and 7 of the GA TOS prohibit the DMV from sending "personally identifying information of internet users" to Google through Google Analytics. If it did so, the DMV's right to use the service would "***terminate immediately***." Johnson Decl., Ex A. Termination here presents more severe ramifications than those in *Downing*, as a finding that the DMV violated the GA TOS would require indemnification. *Id.* at § 8. ***Finally***, while *Downing* is a helpful guide to how this Court should apply Rule 19, it is not the "center" of Google's argument. Google's position is grounded in substantial Ninth Circuit precedent, which, as shown below, Plaintiff largely ignores.

### B. The DMV Is a Required Party Under Rule 19(a)(1).

#### 1. The Court Cannot Grant Complete Relief in the DMV's Absence.

Google's Motion shows that the Court cannot afford Plaintiff "complete relief" in the DMV's absence for multiple, independently sufficient reasons that the Opposition fails to refute.

***First***, Plaintiff's Opposition confirms that Google cannot independently provide her requested relief. Mot. at 5. Plaintiff claims that Google "mischaracterizes [her] allegations," but she did not and could not refute that: (1) she alleged that ***the DMV*** chooses where to install the tags and thus what information to send to Google (Compl. ¶ 37), and (2) nothing in her Complaint supports a reasonable inference that Google can preemptively block alleged communications from the DMV's website without ever "reading or learning the contents of that data." (Prayer for Relief). Plaintiff further contends, without authority, that the Court should not credit Google's "unsupported [and] self-serving statement[s]" regarding its ability to block receipt of DMV data. Opp. at 6. In so arguing, Plaintiff misunderstands her pleading burden—Plaintiff must plead plausible allegations to establish the Court can address her injury. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's only other rejoinder is that she can seek relief only from Google (and not the DMV), because Google (as opposed to the DMV) is the entity "collecting, using, and monetizing" her information. However, her allegations do not support that argument either. *See, e.g.*, Compl. ¶ 42 (pleading that Google "sell[s] ***to its . . . customers*** the ability to target specific demographics").

Plaintiff likewise provides no serious rebuttal to Google's argument that absent the DMV's

joinder, the DMV is free to contract with other third parties for the same advertising services at issue in this case and continue allegedly injuring her. As Google has explained, there are already multiple cases in this district alleging the same injury from the DMV's same conduct, one of which is brought by Plaintiff's counsel. *See Gershzon v. Meta Platforms, Inc.*, 2023 WL 5420234, at *1 (N.D. Cal. Aug. 22, 2023); *Jackson v. LinkedIn*, No. 5:24-cv-00812-PCP. Plaintiff does not deny that: (1) she is a putative class member in *Gershzon* and *Jackson*, (2) that the same personal information at issue here (*i.e.*, from the DMV's DPP-related webpages) was allegedly intercepted by Meta and LinkedIn, respectively, and (3) that a ruling here would not prevent the DMV from sharing that information with these other third parties. The Ninth Circuit has found that a plaintiff could not be afforded "complete relief" in similar circumstances. In *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, the plaintiff sued the defendant power district for its policy of preferentially hiring Navajos, which was required by its lease from the Navajo Nation. 276 F.3d 1150, 1153 (9th Cir. 2002). The Ninth Circuit found that the Nation was a required party because in its absence, the Court could not grant complete relief. The Court reasoned that even if it required the defendant to end its preferential hiring policy, the Nation could simply replace the defendant with another company that would institute the policy, continuing the plaintiff's injury. *Id.* at 1155; *see also Downing*, 806 F. Supp. 2d 468 (noting that absent RMV's joinder, it could repeat plaintiff's injury by hiring another advertising company "much like a Hydra would grow new heads").

The court in *Jackson*, which denied the Rule 19 motion, failed to analyze this precedent, instead relying on two district court cases, which Plaintiff urges this Court to rely on: *Force MOS Tech. Co. v. Lin,* 2024 WL 1199017 (N.D. Cal. Mar. 19, 2024) and *A.D. v. Cal. Highway Patrol*, 2009 WL 733872 (N.D. Cal. Mar. 17, 2009). Both courts found they could grant complete relief because the plaintiffs could obtain ***monetary relief*** from the defendant without the absent party. These cases did not involve ***injunctive relief*** and are inapposite. In *Force MOS* and *A.D.,* there was no risk of continuing harm by the absent party, as there is here (and as there was in *Jackson*).

***Second***, strikingly, Plaintiff offers no meaningful rebuttal to Google's argument that proceeding with this action would run counter to another of Rule 19's core purposes: "avoiding repeated lawsuits on the same essential subject matter." Rule 19, Committee Note, "The Amended

Rule"; Mot. at 6 (collecting authorities). Plaintiff's only rebuttal is that *Gershzon* and *Jackson* are not duplicative because they involve different defendants. But the law is intended to avoid "repeated lawsuits on the same essential ***subject matter***." Rule 19, Committee Note, "The Amended Rule." The risk of duplicative and wasteful litigation has already been realized in the three cases stemming from the same alleged misconduct by the DMV in this district. Like Plaintiff, *Jackson* did not address judicial economy, which strongly favors finding the DMV a required party here.

**2. The DMV's Interest May Be Impaired in Its Absence.**

***First***, Plaintiff asserts that the Court should not consider this factor simply because the DMV has not intervened. While Plaintiff contends this factor can only be met if the DMV has taken an affirmative step to assert an interest, she does not address Google's authority recognizing a split on this issue, and further acknowledges that the Ninth Circuit has found an absent party has an interest without applying this "requirement." Opp. at 8 (describing *E.E.O.C.*[2]); *see also* Mot. at 9. Given that the Ninth Circuit does not always even address whether the absent party proactively asserted an interest, doing so is plainly not required. *Cal. v. Azuma Corp.*, 2023 WL 5835794, at *6 (E.D. Cal. Sept. 8, 2023) (collecting authorities acknowledging split and rejecting assertion requirement). As stated in the plain language of the statute, the DMV merely needs a claim to an interest, that is, an interest that is "more than a financial stake, and more than speculation about a future event." *Iconlab Inc. v. Bausch Health Cos.*, 2019 WL 12521292, at *3 (C.D. Cal. May 15, 2019); *see also* Order Granting Motion to Dismiss in Part ("*Jackson* Order"), *Jackson v. LinkedIn Corp.*, No. 24-cv-00812-PCP (N. D. Cal. Aug. 13, 2024), ECF No. 57, at 5 (applying same standard and not relying on the DMV's silence as basis for denying LinkedIn's Rule 19 argument)

***Second***, Plaintiff argues that the DMV's interest in this action will not be impaired because the Court can theoretically find Google liable for a DPPA violation without also finding that the DMV violated the law or its agreements with Google. Opp. at 9. That is not the law. Rule 19(a)(1)(B)(i) asks if the absent party's interest "***may*** [] as a practical matter" be impaired. *See Am.*

[2] Notably, *E.E.O.C.* was decided after the cases which Plaintiff cites as the basis for this "assertion" requirement, *United States v. Bowen*, 172 F.3d 682, 688-89 (9th Cir. 1999) and *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043-45 (9th Cir. 1983). Further, as addressed in Google's Motion, neither of these cases states assertion is required. They merely state the court considered assertion as a factor in deciding if the absent party had an interest. Mot. at 9.

*Greyhound Racing, Inc. v. Hull*, 305 F.3d 1015, 1024 (9th Cir. 2002) (finding that while absent tribes would not be bound by court's ruling, "their interests may well be affected ***as a practical matter*** by the judgment that [their] operations are illegal"); *Downing*, 806 F.Supp.2d at 467 (finding RMV had an interest where "as a practical matter" the litigation could result in invalidation of contract). Plaintiff does not explain how she can show that Google received "personally identifiable information" from the DMV and from a motor vehicle record without ***also*** establishing that the DMV breached the GA TOS and violated the DPPA. That is enough to make the DMV required.

Google respectfully submits that *Jackson's* brief and unexplained finding that whether the DMV's conduct "was unlawful or a breach of the [LinkedIn contract] is not before this Court" is unpersuasive. If Google is liable for receiving Plaintiff's personal information from a motor vehicle record with no consent, the DMV would necessarily have violated the DPPA and could face fines.

**3. Without the DMV, Google May Be Subject to Inconsistent Obligations.**

As discussed, nothing in Plaintiff's pleading establishes that Google can comply with the injunction Plaintiff seeks unless the DMV is joined. She asks the Court to assume that Google can prevent receipt of data even though she alleged that ***the DMV*** installed the Google Analytics and DoubleClick tags. Compl. ¶ 37. The Court should ignore Plaintiff's attempt to bootstrap new allegations to her pleading with a vague new assertion that Google can "install a data filter" to remedy the issues in the Complaint. *Am. Marine Corp. v. Blue Shield of Cal.*, 2011 WL 1399244, at *4 (N.D. Cal. Apr. 13, 2011) (on motion to dismiss "[a] district court cannot consider 'new' facts . . . asserted in . . . opposition"). And, even if this fact were pled, Plaintiff does not explain how such a filter could operate without Google "obtaining" or "reading" DMV communications. This Court should not be persuaded by *Jackson*'s cursory analysis, which declined to address the plausibility of Plaintiff's allegations and instead faulted LinkedIn for "not provid[ing] evidence" showing its inability to modify data it receives from the DMV. *Jackson* Order at 6.

**C. The DMV's Absence Warrants Dismissal Pursuant to Rule 19(b).**

Google's motion explains why dismissal is warranted under all four Rule 19(b) factors. As to the first three factors, Plaintiff merely refers back to, or repeats, her arguments about Rule 19(a)(1)(A), which Google addressed above. As to the fourth factor, which asks "whether plaintiff

would have an adequate remedy if the action were dismissed for nonjoinder," Plaintiff argues that she will have no adequate remedy ***against Google*** if the action were dismissed. However, Plaintiff acknowledges, as she must, that the Attorney General is empowered "to seek the DMV's compliance with the law[.]" Opp. at 10-11. Enforcement against the DMV would necessarily prevent Google from receiving sensitive information and remedy Plaintiff's purported injury.[3] Further, as Google explained in its Motion, the fourth factor weighs in favor of dismissal where sovereign immunity is present ***even where***, unlike here, the plaintiff has no alternative remedy. Mot. at 11. Plaintiff does not argue otherwise, and instead contends the other three factors may sometimes outweigh this consideration. Opp. at 11-12. Plaintiff cites no authority for this and offers no basis for this Court to depart from the Ninth Circuit's "regular" practice of holding that an absent party's sovereign immunity weighs in favor of dismissal. *Am. Greyhound Racing*, 305 F.3d at 1025.

## III. PLAINTIFF'S ARGUMENTS DO NOT ESTABLISH GOOGLE'S DPPA LIABILITY.

### A. The Complaint Does Not Allege Google's Knowing Obtainment or Use.

***First,*** Plaintiff argues that Google must have knowingly obtained the challenged data by pointing to her claim that "Google knows that [the Collection Software are] transmitting [the challenged] information." *See* Opp. at 13 (citing Compl. ¶ 70). She further claims that: Google: (1) designed Google Analytics and DoubleClick to transmit information and "suggested that website owners install it in ways that maximize the data collected" and (2) allowed the DMV to use these tools. *See id.* These generic assertions fail to allege the requisite *mens rea* for a DPPA violation.

Plaintiff clearly alleged that ***the DMV***: (1) installed Google Analytics and DoubleClick on pages related to disability placards and (2) designed its URLs to contain allegedly personal information. Compl. ¶¶ 37, 56-60. Plaintiff does not and cannot allege that Google had any role in this, nor that Google was aware that the DMV was transmitting the challenged data. But were it not for the DMV's intervening missteps, there would be no colorable DPPA violation. Thus, the allegation that Google created and offers Google Analytics and DoubleClick is not enough to

[3] Plaintiff attempts to distinguish *Dawavendewa*, arguing that the plaintiff there had other "options" because the E.E.O.C. had intervened and the plaintiff could have brought the case in another forum. Opp. at 11. Untrue. The court had denied the E.E.O.C.'s motion to intervene, *Dawavendewa*, 276 F.3d at 1163, and it stated only that the plaintiff ***might*** have an alternative forum. *Id.* at 1162-63.

establish that Google knew the DMV would or did violate its explicit contractual prohibitions.

***Second,*** Plaintiff asserts that she adequately alleged knowing ***use*** of her information, proving Google's knowledge. *E.g.*, Opp. at 13. She did not. Her citations to general resources about how Google Analytics and DoubleClick can work do not bear on the DMV's individual implementation or establish that Google combed through URL text for personal information. For Plaintiff's argument to work, Google's automated systems would have to be reading URLs in the manner a human might—to infer the purpose of the webpage. Yet there are no allegations suggesting that Google's systems are even capable of this. Without them, Plaintiff's false claims that the DMV's URLs were used to build a "profile" of her are entirely unsupported. Moreover, Plaintiff's claim that Google recommends maximizing data collection also ignores the ***undisputed*** fact that Google "contractually prohibit[s] the DMV from sending" personal information. Mot. at 13; Opp. at 5. If a food bank prohibits giving items containing peanuts, the fact that it encourages generous donation hardly evidences knowledge that a careless actor will donate peanut butter.

Additionally, as *Keogh v. Meta Platforms, Inc.* pointed out, conclusory allegations that data are generally used for advertising lack the factual support necessary to survive a motion to dismiss. 680 F. Supp. 3d 601, 606 (D.S.C. 2023). As in *Keogh*, Plaintiff never claims that she saw ads related to her disability or driver status at all, much less ads that she can attribute to Google or interactions with the DMV's website. Plaintiff herself is, of course, best positioned to know whether she saw any such ads. The Court should not bend over backward to patch the holes in her pleadings.

***Third,*** Plaintiff's heavy reliance on *Gershzon v. Meta Platforms, Inc.* is misplaced. *See* Opp. at 14. That decision rejected a legal argument Google does not make here. *Gershzon*, 2023 WL 5420234, at *10 (Meta argued that the knowledge requirement "applies to all three elements of the statute" whereas Google only argues that it did not knowingly obtain personal information.). Further, the *Gershzon* court did not fully consider the voluntary action requirement discussed in the DPPA cases cited in Google's Motion. Mot. at 11-12. To the extent that *Gershzon* found that offering a commonplace technology "knowingly" violates the DPPA if the DMV uses it in a manner contrary to that party's express contractual terms, this Court should decline to follow suit.

***Fourth,*** the authorities Plaintiff cites do not show that Google engaged in voluntary action.

Citing *Tison v. Arizona*, a murder case, Plaintiff submits that "a party 'intends certain consequences when [it] knows that those consequences are substantially certain to result from [its] acts.'" Opp. at 14 (citing *Tison*, 481 U.S. 137, 150 (1987)). The Complaint does not meet Plaintiff's own proposed standard. There is no allegation (and no basis to infer) that Google would ever have been "substantially certain" that the DMV would install the challenged tags on disability-related pages ***and*** implant personal information in its URLs. Likewise, in sharp contrast to the defendant in *Rand v. Travelers Indemnity Co.*, which designed its site to auto-populate private information for any website visitor to see, the alleged DPPA violation here arose from the intervening, contractually prohibited actions of the DMV. 637 F. Supp. 3d 55, 67-68 (S.D.N.Y. 2022).

In this way, the *Enslin* and *Allen* decisions that Plaintiff brushes aside are highly analogous. These cases illustrate the right result where ***a third party*** acts to violate the DPPA. *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 669-72 (E.D. Pa. 2015); *Allen v. Vertafore, Inc.*, 28 F.4th 613, 617 (5th Cir. 2022). Plaintiff mischaracterizes these cases as instances where there was ***no*** challenged action by the defendant. Opp. at 15 (referencing "non-action" by the *Enslin* and *Allen* defendants). In fact, in both, the plaintiffs asserted the defendant's actions had caused the DPPA violations. *Enslin*, 136 F. Supp. 3d at 671 (defendant allegedly "privately [held information]" on "unsecured laptops"); *Allen*, 28 F.4th at 617 (defendant allegedly "stored personal information on 'unsecured external servers'"). Nonetheless, those courts found that the defendants' actions were ***not the kind of knowing action*** that triggers DPPA liability. Action triggering DPPA liability must be, as Plaintiff puts it, "substantially certain to result" in the transmission of prohibited information.

### B. The Challenged Data Do Not Come "From" a "Motor Vehicle Record."

Plaintiff does not dispute that, under the binding authority of *Andrews*, only data "maintained by" the DMV can be a DPPA "motor vehicle record." Opp. at 16 (citing *Andrews v. Sirius XM Radio, Inc.*, 932 F.3d 1253, 1260 (9th Cir. 2019)). Yet the Complaint remains focused on information that Plaintiff ***never alleges*** the DMV maintained, including her searches on the DMV site, Compl. ¶¶ 57, 58, her driving self-assessment, *id.* ¶ 59, and her email address, *id.* ¶ 68.

Again, Plaintiff leans on *Gershzon* while attempting to distinguish this case from *Keogh*, *Davis*, and *Dye*—three cases that confirm the strict judicial adherence to *Andrews*' "motor vehicle

record" interpretation and refuse to apply the DPPA to DMV websites. Opp. at 17-18. As an initial matter, two more decisions have come down against Plaintiff's overly broad interpretation of "motor vehicle record" just since Plaintiff's opposition brief. Letter Order, *Knight v. Meta Platforms, Inc.*, No. 23-13347 (D.N.J. July 29, 2024), at ECF No. 19 (dismissing DPPA case with leave to amend on the grounds that the New Jersey Motor Vehicle Commission website is not a "motor vehicle record"); *Jackson* Order (same for the California DMV).[4] The legal consensus that information concerning activities on DMV websites does ***not*** come from a DPPA "motor vehicle record" is now crystal clear, as is the fact that the *Gershzon* decision is a legal outlier, not followed by a single subsequent decision. The heart of Plaintiff's claims is that she performed actions and entered information on the DMV website that Google allegedly received by virtue of how the DMV set up its page URLs. Decision after decision has now held that this does not implicate the DPPA.

Plaintiff attempts to escape the clear weight of this authority by focusing on her allegations (parroted from the *Gershzon* complaint) concerning her use of MyDMV. First, this distinction makes no substantive difference, and *Gershzon* gave it undue weight in reaching the wrong outcome. What Google allegedly received from the DMV's website is nothing more than a report of Plaintiff's activities there. Second, as another dispositive matter, a close read of Plaintiff's Complaint reveals that the ***only*** piece of information she alleges actually came from her MyDMV account is her first name. Compl. ¶ 54. But a first name by itself does not "identify an individual" as required by the DPPA. 18 U.S.C. 2725(3) ("'personal information' means information that identifies an individual[.]"). While courts have suggested that a "full name"—disclosed along with an "address, driver's license number, date of birth, sex, height and weight"—may be "personal information" within the meaning of the DPPA, *Senne v. Village of Palatine, Ill.*, 695 F.3d 597, 600 (7th Cir. 2012), a first name alone (in this case "Katherine") hardly identifies an individual.

Finally, Plaintiff responds to Google's argument that a ***parking*** placard does not pertain to a vehicle ***operating*** permit by pointing out that the DMV offers disabled license plates that "must be permanently affixed to a single vehicle," arguing, strangely, that "[i]t would stretch the bounds

[4] Though *Jackson* and *Knight* distinguished *Gershzon* on the basis of its MyDMV allegations, those allegations do not help Plaintiff here, as discussed above and in the Motion. Mot. at 15-17.

of reason to argue that disabled person *license plates* affixed to a motor vehicle are not related to a motor vehicle operator's permit, and DPPs are functionally identical to those plates." Opp. at 18-19. Plaintiff gives no rationale for her apparent perspective that just mounting the disabled indicator to a car proves its relation to an operator's permit. In any event, whether license plates pertain to an operator's permit is irrelevant, as license plates are not at issue here. Disability placards are.

Plaintiff's assertion that "parking unquestionably 'pertains to' driving" (Opp. at 18) does not persuade. The DPPA does not encompass all things related to "driving." It much more narrowly requires that a "motor vehicle record" pertain to a "motor vehicle operator's ***permit***." 18 U.S.C. § 2725(1). The right to park in designated locations and the right to operate a vehicle are wholly distinct. Here, Plaintiff does not dispute that parking placards are ***available to non-drivers*** with no operator's permit. A disabled youth with no operator's permit can still get a DPP to allow someone driving them to park in a disabled parking spot. The one does not "pertain to" the other.

### C. The Complaint Fails to Allege Google's Use for an Impermissible Purpose.

To rebut Google's argument that any information obtained through Google Analytics and DoubleClick was to help the DMV carry out its functions, Plaintiff points back to her boilerplate statements that Google's purpose was not permissible. Opp. at 19. These conclusory claims are of no moment, particularly where they contravene other specific facts alleged. Plaintiff specifically alleges that the purpose of Google Analytics and DoubleClick is to "allow[] marketers to construct various campaigns . . . to better market to audience segments." Compl. ¶ 43. In other words, Plaintiff alleges that these products help the DMV carry out the functions of its website and reach drivers. These very purposes grounded *Downing*'s conclusion that the advertising vendor there did not violate the DPPA. 682 F.3d at 23-24. This Court should reach the same conclusion.

Plaintiff cites *Knowlton v. City of Wauwatosa* and *Gershzon* for the proposition that permitted purpose arguments cannot be decided at the motion to dismiss stage. Opp. at 19 (citing *Knowlton*, 2023 WL 2951425, at *1 (E.D. Wis. Apr. 14, 2023); *Gershzon*, 2023 WL 5420234, at *9). The *Knowlton* order cited is perplexing and likely an error, as it is a ***denial*** of a motion in limine to exclude any testimony on a permissible DPPA purpose. *Knowlton*, 2023 WL 2951425, at *1. Likewise, *Gershzon*'s brief treatment of the issue is not as persuasive as the careful analysis to

the contrary in *Downing*, on which Google's motion relies. Mot. at 17-18. *Downing* decided, at the pleading stage, that an action with a permissible governmental purpose will not be rendered impermissible by a secondary alleged advertising purpose. The Court should follow it here.

Finally, Plaintiff makes much of *Keogh*'s language suggesting that Meta could not rely on the DMV's permitted purpose to "avoid compliance with the statute with respect to its own conduct." However, as explained throughout this brief, Plaintiff makes no plausible allegation that Google used this data for its own purposes, separate from those of servicing the DMV.

## IV. None of Plaintiff's Arguments Save Her CIPA Claims from Dismissal.

### A. Plaintiff Has Failed to Plead Google Is a Third-Party Eavesdropper.

In response to Google's argument that Plaintiff fails to plead it acts as a third-party eavesdropper, Plaintiff contends she plausibly alleges "that Google used her private communications for its own purposes." Opp. at 20-21. Further, as a tacit concession that her pleading does not plausibly allege Google "used" her data, Plaintiff also asks the Court to adopt a less restrictive "capability of use" framework. Opp. at 21-22. Both of her arguments are unavailing.

To begin, the Court should decline Plaintiff's request to apply *Javier* and ignore *Graham* in analyzing whether Google acted as a third-party eavesdropper. There is no merit to Judge Breyer's critique that *Graham*'s reasoning would "swallow[] [CIPA's] third prong" by imputing a use requirement in the second prong. Opp. at 21-22. The third prong broadly penalizes "use" of "any information ***so obtained***"—*i.e.*, through the first and second prongs. Thus, CIPA's third prong proscribes different conduct than the second, as *Graham* correctly held. It can, for example, apply to a defendant who uses data intercepted by another, even if she did not eavesdrop herself.

In any event, Plaintiff's insubstantial allegations do not show that Google acted as a third-party eavesdropper under either *Graham* or *Javier*. To support her assertion that Google "used her private communications for its own financial purposes," and is thus a third-party eavesdropper, Opp. at 21, Plaintiff only offers vague allusions to the Complaint's allegations. Opp. at 21 (citing Compl. ¶¶ 7, 27, 35-43, 118). Plaintiff's cursory treatment of her allegations is no accident—none support her arguments. *See, e.g.*, Compl. ¶ 7 (allegations regarding "Parties"); ¶¶ 35-39 (not addressing "use"). Indeed, the only allegations she cites that directly address Google's purported

"use" or "capability of use" are highly general and make clear that Google collects data in its capacity as a vendor ***on behalf of its advertising customers****—i.e.*, to "***allow[] marketers*** to track users behavior," "***allow advertisers*** to . . . construct various campaigns," and "***sell[] . . . advertising customers*** the ability to target specific demographics." ¶¶ 27, 42-43. While Plaintiff generally alleges that Google "create[s] profiles" of users, nowhere does she plead that Google does so for its own independent purposes. *See also* Compl. ¶¶ 40, 41, 118. To the contrary, she affirmatively concedes Google "create[s] profiles" to "***sell its customers the ability to create targeted marketing and advertising***." As explained in its Motion, numerous courts have dismissed CIPA claims based on similarly deficient allegations. Mot. at 19, n.4, 21 (collecting authorities).

While Plaintiff urges the Court to rely on *Smith v. Google, LLC*, that case only underscores the deficiency of the allegations here. In *Smith*, Judge Pitts denied a motion to dismiss because the complaint pled Google acted as more than a vendor based on more specific allegations regarding use—including that Google allegedly intercepted data from tax websites to "power its algorithms" and compile "a detailed dossier, or digital fingerprint . . . for the benefit of Google[.]" 2024 WL 2808270, at *4 (N.D. Cal. June 3, 2024); *Smith v. Google*, No. 23-cv-3527-PCP, ECF No. 35 ¶ 29. No such allegations are pled here. In *Jackson*, Judge Pitts denied the motion to dismiss as to CIPA, citing *Smith*. But as here, the plaintiff in *Jackson* offered only a few general allegations that the defendant "monetizes the collected data through the sale of ads" and "enables advertisers to target users with relevant content." *Jackson* Order at 9. Such allegations are not enough to plead that Google used data independently, as an eavesdropper, as many courts have held. Mot. at 21.

Even if Plaintiff had plausibly alleged use or capability of use, her claims would still fail because none of her allegations are tethered to the ***DMV's*** use of Google Analytics or DoubleClick—an argument she fails to refute. Mot. at 20-21. On this score, Judge Chhabria's ruling in *Doe* is more instructive than either of Judge Pitts' rulings in *Smith* and *Jackson.* In *Doe*, the Court dismissed CIPA claims involving the use of Google Analytics on healthcare websites, observing the complaint "relie[d] heavily on Google's own product descriptions" and lacked allegations as to the plaintiff's browsing. *Doe v. Google LLC*, 2024 WL 3490744, at *3 (N.D. Cal. July 22, 2024). The Court concluded that such general allegations could not support a plausible CIPA violation:

> The problem is that these product descriptions are generic—they describe various ways in which Google's products are capable of operating generally . . . [b]ut instead of offering factual allegations about how [websites] are *actually* using Google's products, the plaintiffs allege hypothetical examples—based on generic product descriptions—of how various product features could be used in ways that could result in privacy violations. They are [] assuming that particular features of Google's product are being enabled on [certain] webpages, based simply on the fact that those features happen to be described in Google's generic product descriptions.

*Id.* at *3; *see also Cody v. Ring LLC*, 2024 WL 735667, at *6 n.3 (N.D. Cal. Feb. 22, 2024) (finding allegations of use "conclusory" where they were based on public reporting that analytics provider "exploited" chat data for "targeted advertising" but said "nothing about ***Ring*** [defendant website] or about Meta or Kustomer using ***Ring*** data to create targeted advertising.") That is the problem here. At most, Plaintiff offers general product descriptions that are untied to the DMV's use of Google Analytics and DoubleClick, without establishing that those features were used by the DMV. Compl. ¶ 27 (describing "various services offered via Google's Marketing Platform"); *id.* at ¶ 28 ("dynamic prospecting . . . function of Google ads"). This is dispositive of Plaintiff's CIPA claim.

### B. Plaintiff's CIPA Clause 2 Claim Fails for Myriad Independent Reasons.

***Read or Attempt to Learn Contents.*** Relying on the same allegations discussed above, Plaintiff argues she has plausibly alleged Google attempted to read or learn the contents of her communications because it purportedly "construct[s] individual user profiles" and can "identify, characterize, and categorize users." Opp. at 22-23 (citing Compl. ¶¶ 41-42.) Nowhere does Plaintiff plausibly allege that Google ever read or attempted to learn the contents of ***her*** communications, that she received any targeted ads based on her disability status, or that Google ever used ***any*** data from the DMV—disability-related or otherwise. Plaintiff attempts to distinguish *James v. Allstate* by arguing that the plaintiff there alleged only that the defendant "recorded the data and stores it on its servers." Not so. *James v. Allstate* involved the same kinds of allegations that Plaintiff offers here, namely that the vendor defendant "benefit[ed] financially from collecting information" by identifying "leads" used for marketing purposes. *James v. Allstate Ins. Co.*, No. 3:23-cv-01931, ECF No. 34 ¶ 3; *see also Love v. Ladder Fin., Inc.*, 2024 WL 2104497, at *2 (N.D. Cal. May 8, 2024) (holding allegations that session replay provider FullStory "may use and share" aggregated information "for research, analysis, modeling, marketing, and improvement of our Services" does

not make it plausible that it was "accessing or reading the personal identifying information").

Plaintiff invokes *Valenzuela*, in which the court relied on the allegation that the vendor's "business model" was to "harvest" communications. *Valenzuela v. Nationwide Mut. Ins. Co.*, 686 F. Supp. 3d 969, 972 (C.D. Cal. 2023). Courts in this district have found nearly identical allegations too "generalized and vague" to support plausible liability. *Cody*, 2024 WL 735667, at *6 (allegation that Kustomer "harvest[s] the chat transcripts for valuable data" too "generalized and vague").

***In Transit.*** The Opposition fails to establish that Google intercepted communications "in transit." First, ignoring Google's authorities, Plaintiff argues she can bypass the "in transit" requirement by merely alleging her alleged communications are "'received at' a place within this state." Opp. at 23. She cannot. In *Cody*, the Court rejected this exact argument based on *Ribas v. Clark*, the same case Plaintiff cites here. The *Cody* Court explained that the word "while" precedes the phrases "in transit" and "received at"; thus, the *Ribas* court's "interpretation leaves the contemporaneous requirement intact." 2024 WL 735667, at *5; *see also Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) ("Plaintiff cannot avoid the simultaneity argument merely because she sends or receives a message in California."). Neither of Plaintiff's cases support her a-textual reading of the statute. *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019) (analyzing party exception and noting that the alleged interception "happened while the signal was already in transit"); *Heerde v. Learfield Commc'ns, LLC*, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024) (finding "in transit" requirement met based on allegations that data was "sent in parallel" after content was transmitted by user).

In the alternative, Plaintiff argues that she has satisfied the "in transit" requirement by alleging that Google "collected the contents of her communications . . . as soon as she submitted her renewal application." Opp. at 23 (citing Compl. ¶¶ 39-40). Nothing she cites establishes that Google intercepted her communications "in real time"; to the contrary, those allegations merely establish that her alleged communications are "sent using cookies." Compl. ¶ 39. Such ambiguous pleading does not suffice. *Esparza v. Gen Digit. Inc.*, 2024 WL 655986, at *4 (C.D. Cal. Jan. 16, 2024) (dismissing CIPA claims based on Pixel where "Plaintiff fail[ed] to allege specific facts about . . . *when* the interception took place"); *Rodriguez v. Google LLC*, 2021 WL 6621070, at *4 (N.D.

Cal. Aug. 18, 2021) ("in transit" requirement not met based on allegation that "Google . . . copies that request, and ***then*** . . . simultaneously transmits the browsing data to Google"). As discussed in the Motion and as Plaintiff fails to address, her vagueness to the timing of the alleged interception was likely intentional. A more specific allegation that the interception occurred "in transit" may have supported her CIPA claim, but would extinguish her DPPA claim, which requires the challenged information be "maintained" in DMV records.

***Willful.*** To avoid dismissal, Plaintiff points to allegations that do not even reference intent. Opp. at 24 (citing Compl. ¶¶ 26, 29, 41-42 (alleging Google, *e.g.*, "feeds vast quantities of personal data" into its "advertising systems" and "capitalizes on" and "uses" data)). These do not suffice, particularly given that judicially noticeable documents show that Google specifically ***instructed the DMV not to send it personally identifiable information***. *Doe* is instructive. There, Judge Chhabria found "plaintiffs have not adequately alleged that Google intentionally obtained patients' private health information" via Google Analytics, *inter alia*, because "Google repeatedly told developers not to send personally identifiable information" and thus "purposefully acted so as ***not*** to receive any personal health information." *Doe*, 2024 WL 3490744, at *4.

Plaintiff asks the Court to ignore these judicially noticeable documents by pointing to *Smith*, *Gershzon*, and *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023), in which Courts refused to consider such agreements and determined intent was a "factual question." Opp. at 24-25. Google respectfully submits that Judge Chhabria's reasoning in rejecting this conclusion was sound and correct: "If a plaintiff alleges that the clients of a source code provider use the code contrary to the provider's instructions, the plaintiff should not be able to get around the intent requirement by simply intoning that the source code provider intended for the clients not to follow instructions." *Doe v. Google*, 2024 WL 3490744, at *5.

### C. Plaintiff's CIPA's Clause 3 Claim Is Also Doomed.

Plaintiff does not contest, and thus concedes, that this claim cannot stand unless she pleads a viable clause 2 claim. Opp. at 25. Since she has not done that, as discussed, this claim also fails.

## V. CONCLUSION

For all these reasons, the Court should grant Google's Motion on both 12(b)(7) and 12(b)(6).

Dated: August 23, 2024

COOLEY LLP

By: */s/ Jeffrey M. Gutkin*
Jeffrey M. Gutkin

Attorney for Defendant
GOOGLE LLC

306848990