UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHERINE WILSON, <br><br>    Plaintiff, <br><br>v. <br><br>GOOGLE LLC, <br><br>    Defendant. | Case No. 24-cv-03176-EKL <br><br>**ORDER GRANTING MOTION TO DISMISS IN PART** <br><br>Re: Dkt. No. 19 |

In this putative class action, Plaintiff Katherine Wilson alleges that Google LLC ("Google") unlawfully obtained her personal disability information from the California Department of Motor Vehicles ("DMV") website and used her information for its advertising services. Compl. ¶¶ 1-4, ECF No. 1. Plaintiff contends that Google's alleged conduct violates the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 *et seq.*, and the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 *et seq.* Compl. ¶¶ 5, 100-28.

Google moves to dismiss for failure to join a required party – the DMV – and for failure to state a claim. The Court carefully reviewed the parties' briefs and heard argument on January 22, 2025. This Order adopts the tentative ruling that the Court provided before the hearing. For the following reasons, Google's motion is GRANTED in part with leave to amend.

**I.      BACKGROUND**

This case arises from Plaintiff's use of the California DMV website, www.dmv.ca.gov, which "enables users to upload and manage their data and documents, book appointments, renew registration, and order disability parking placards." Compl. ¶ 48.[1] The DMV issued Plaintiff a

---

[1] The facts are taken from the complaint and assumed to be true for purposes of this motion. Additional facts are discussed below where relevant to the Court's rulings.

1  disability parking placard, and when it came time to renew the placard, Plaintiff used the
2  "MyDMV" portal on the DMV website.  *Id*. ¶ 7.  In the process of renewing her placard, Plaintiff
3  "provided the DMV with her personal information, including disability information." *Id*.  Later,
4  Plaintiff learned that Google "secretly used Google Analytics and DoubleClick when she renewed
5  her disability parking placard to unlawfully collect her personal information," which Google "used
6  to generate revenue for its advertising and marketing business." *Id*. ¶ 8.

Plaintiff alleges that "Google Analytics and DoubleClick are currently embedded throughout the DMV website and are secretly transmitting personal information from the motor vehicle records maintained by the DMV to Google and allowing Google to learn the contents of users' private communications with the DMV." *Id*. ¶ 49.  According to the complaint, Google "intentionally encourages" website operators to "use a critical new feature that allows Google Analytics and DoubleClick to avoid privacy settings in website visitors' browsers." *Id*. ¶ 37.  Plaintiff alleges that personal information "is extremely valuable to Google and its marketing and advertising clients because the inferences derived from users' personal information allow marketers and advertisers to target potential customers." *Id*. ¶ 29.

Google moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join a required party, and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The Court addresses Google's bases for dismissal in order, starting with Plaintiff's failure to join the DMV as a party to this action, then addressing whether the allegations in the complaint state a claim under the DPPA and the CIPA.

**II.    RULE 12(B)(7) MOTION**

   **A.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(7), a court may dismiss a complaint for "failure to join a party" as required by Federal Rule of Civil Procedure 19.  Rule 19 requires the joinder of a person if "in that person's absence, the court cannot accord complete relief among existing parties" or if "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:  (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a

2

substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)-(B). If either condition is met, the person must be joined unless joinder would deprive the court of subject matter jurisdiction. Fed. R. Civ. P. 19(a)(1).

If a person "who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "Rule 19 gives a trial court considerable discretion and requires that several conflicting interests be balanced on a case-by-case basis." *Bakia v. Los Angeles Cnty.*, 687 F.2d 299, 301 (9th Cir. 1982) (per curiam).

### B.  Discussion

Google contends that the complaint should be dismissed because the DMV is a required party that cannot be joined. Mot. at 4-11. It is undisputed that the DMV cannot be joined; thus, the critical issue is whether the DMV is a required party.[2] On that issue, Google argues that: (1) the Court cannot grant complete relief without the DMV; (2) proceeding without the DMV would impair the DMV's interests; and (3) the DMV's absence may subject Google to undue liability. *See* Mot. at 5-10. The Court addresses these arguments in turn.

First, Google argues that Plaintiff's "relief will be hollow without the DMV" because, even if Plaintiff prevails against Google, the "DMV would remain free to simply repeat its conduct with another advertising services company, continuing to cause Plaintiff the same alleged injury." Mot. at 5-6. This argument was recently rejected in a similar case alleging that LinkedIn surreptitiously obtains disability information from the DMV. *See Jackson v. LinkedIn Corp.*, 744 F. Supp. 3d 986, 990 (N.D. Cal. 2024) ("*Jackson I*") ("[T]hat the DMV might continue to gather [plaintiff's] personal information from another third-party analytics provider does not require the DMV's joinder in this lawsuit focusing on LinkedIn's own tracking technology."). The Court reaches the same conclusion here. The theory underlying Google's argument is that, if a third party might

---

[2] The DMV cannot be joined because the Eleventh Amendment generally prevents joinder of state agencies in federal court. *Hibbs v. Dep't of Human Res.*, 273 F.3d 844, 850 (9th Cir. 2001) (Sovereign immunity protects state agencies from suit "by private parties in federal court absent a valid abrogation of that immunity or an express waiver by the state." (quotation omitted)), *aff'd*, 538 U.S. 721 (2003); *see also* Opp. at 10, ECF No. 25 (acknowledging that joinder of the DMV is not possible here).

3

1  engage in the same conduct alleged here against Google, then Plaintiff cannot obtain "complete
2  relief," so the Court should deprive Plaintiff of *any* relief by dismissing this action. Such a result
3  would be illogical and inconsistent with the Rule 19 joinder inquiry, which "is a practical, fact-
4  specific one, designed to avoid the harsh results of rigid application." *Dawavendewa v. Salt River*
5  *Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1154 (9th Cir. 2002). To the extent another
6  advertising company allegedly violates Plaintiff's privacy rights, the proper course is to pursue an
7  action against the other party too – not to deny Plaintiff recourse against Google.

Second, Google argues that proceeding without the DMV would impair the DMV's interests because: (1) "the Court may have to hold that the DMV's conduct violated the law," and (2) this action "directly implicates the DMV's contractual agreements with Google and may result in a finding that the DMV violated those agreements." Mot. at 8. But "an adverse ruling [against Google] would not necessarily require a finding that the DMV" violated the law because Plaintiff claims only that *Google* unlawfully obtained and used her sensitive information. *Jackson I*, 744 F. Supp. 3d at 991 ("Whether the DMV's collection and transmission of [plaintiff's] personal information was unlawful or a breach . . . is not before this Court."). Google's argument that the DMV might have breached Google's terms of service, which required the DMV not to share sensitive information with Google, *see* Mot. at 8-9, raises a factual question that the Court cannot resolve at the pleading stage. Doing so would require the Court to ignore well-pleaded allegations that Google "intentionally encourages" the DMV to use Google's tracking tools to provide Google with sensitive information, and that Google "specifically designed" its tracking tools for this purpose. Compl. ¶¶ 37, 70; *see also infra* Section III.B.2.

Third, Google argues that the DMV's absence may subject Google to undue liability because, if the Court enjoins Google from obtaining personal information from the DMV, "Google has no realistic means of complying." Mot. at 10. But dismissing Plaintiff's claims outright based on difficulties in crafting injunctive relief would be draconian, particularly because Plaintiff seeks other relief too – including damages. This concern can be addressed at a later stage by tailoring injunctive relief if Plaintiff demonstrates she is entitled to it.

Google argues that the Court should follow *Downing v. Globe Direct LLC*, 806 F. Supp. 2d 461 (D. Mass. 2011), *aff'd on other grounds*, 682 F.3d 18 (1st Cir. 2012). In *Downing*, the Massachusetts Registry of Motor Vehicles ("RMV") contracted with an outside vendor to "solicit and insert advertising into" registration renewal notices mailed to motor vehicle owners on the RMV's behalf. *Id*. at 464. The *Downing* court deemed the RMV to be a required party because a judgment against the vendor would "vitiate" the RMV's contract with the vendor. *Id*. at 468. The court also observed that the plaintiff might be prejudiced absent joinder because the RMV could contract with a different vendor "much like a Hydra would grow new heads." *Id*.

The concerns in *Downing* do not apply here. There is no indication that the DMV's contract with Google requires Google to transmit sensitive disability information to itself or to use this information for Google's advertising services. *See Jackson I*, 744 F. Supp. 3d at 992. Thus, a judgment against Google would not "vitiate" or interfere with Google's contractual relationship with the DMV. There is also no reason to assume that the DMV would contract with another third party, "like a Hydra," to obtain and use Plaintiff's disability information. Unlike in *Downing*, Plaintiff does not allege that the DMV contracted with Google to obtain and use disability information for advertising. To the contrary, Plaintiff alleges that Google encourages website operators – including the DMV – to use Google's tools to obtain personal information that Google uses for its own advertising business. *See, e.g.*, Compl. ¶¶ 37, 103, 117.[3]

Accordingly, because the DMV is not a required party, Google's motion to dismiss under Rule 12(b)(7) is DENIED.

---

[3] Google also cites *Dawavendewa*, 276 F.3d at 1155. In that case, the plaintiff sued the defendant for employment discrimination, alleging that the defendant's lease with the Navajo Nation required it to "preferentially hire Navajos." *Id*. at 1153. As in *Downing*, the plaintiff sued only the party who carried out the harmful conduct, without joining the entity that mandated the harmful conduct in the first place. *Id*. at 1155. These are not the facts here. Google also cites *Iconlab Inc. v. Bausch Health Companies*, 2019 WL 12521292 (C.D. Cal. May 15, 2019), *aff'd*, 828 F. App'x 363 (9th Cir. 2020). In that case, the plaintiff sought a declaratory judgment that it was the rightful owner of certain property rights. *Id*. at *1, *3. The plaintiff failed to join certain non-parties who also had a potential claim to ownership, and the court could not provide complete relief without imposing obligations on the absent parties. *Id*. at *4. No similar concern applies here because Plaintiff does not seek to impose obligations or liability on the DMV.

**III.    RULE 12(B)(6) MOTION**

   **A.    Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted.  To avoid dismissal, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when the pleaded facts allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  For purposes of a Rule 12(b)(6) motion, the court generally "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  However, the court need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

If the court finds that dismissal is warranted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

   **B.    Discussion**

      **1.    Violation of the Driver's Privacy Protection Act**

The DPPA provides that "[a] person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under [the Act] shall be liable to the individual to whom the information pertains." 18 U.S.C. § 2724.  Thus, to state a claim under the DPPA, Plaintiff must allege that Google (1) "knowingly obtained [her] personal information (2) from a motor vehicle record (3) for a nonpermissible use." *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1259 (9th Cir. 2019).  Personal information is "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code), telephone number, and medical

6

or disability information." 18 U.S.C. § 2725(3). A motor vehicle record is "any record that pertains to a motor vehicle operator's permit, motor vehicle title, motor vehicle registration, or identification card issued by a department of motor vehicles." *Id*. § 2725(1).

Google argues that Plaintiff fails to allege that her personal information was obtained "from a motor vehicle record." Mot. at 14-17. The Court agrees. In *Andrews v. Sirius XM*, the Ninth Circuit held that the DPPA does not extend to circumstances where "the initial source of personal information is a record in the possession of an individual, rather than a state DMV." 932 F.3d at 1260. *Andrews* held that a driver's license, once in possession of its owner, is not a "motor vehicle record" because the license is "no longer maintained by the DMV." *Id*. This conclusion is consistent with the DPPA's purpose, "given that the statute was clearly intended to prevent the unauthorized, nonconsensual, and involuntary disclosure of personal information from *DMV* records." *Id*. at 1261.

Here, the personal information at issue came from Plaintiff herself when she entered it into the DMV's website. Plaintiff alleges that she entered information into the DMV website when she renewed her application, and that Google intercepted this information as it was entered "directly from DMV's website." Compl. ¶¶ 68-69. This conclusion is bolstered by Plaintiff's allegation that the DMV "maintained [her] information *after* [she] provided it." *Id*. ¶ 9 (emphasis added). Because the personal information that was allegedly transmitted to Google came from Plaintiff, it was not from a motor vehicle record. *Jackson v. LinkedIn Corp.*, No. 24-cv-00812-PCP, 2025 WL 28643, at *3 (N.D. Cal. Jan. 3, 2025) ("*Jackson II*").

Accordingly, the Court GRANTS Google's motion to dismiss Plaintiff's DPPA claim with leave to amend.[4]

### 2. Violation of the California Invasion of Privacy Act

CIPA protects against "the substantive intrusion that occurs when private communications are intercepted by someone who does not have the right to access them." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1118 (9th Cir. 2020). Plaintiff's claim asserts violations of two CIPA

---

[4] Because Plaintiff fails to allege that Google obtained her personal information from a motor vehicle record, and this issue is dispositive, the Court does not address Google's other arguments.

1  provisions – one prohibits the unauthorized interception of communications, and the other
2  prohibits the unauthorized use of communications. Because Plaintiff's claim survives if either
3  provision was violated, the Court focuses on the unauthorized interception of communications, as
4  that violation is more clearly alleged. To state a claim under that provision, Plaintiff must
5  plausibly allege that Google "willfully and without the consent of all parties to the communication
6  . . . reads, or attempts to read, or to learn the contents or meaning of any . . . communication while
7  the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at
8  any place within this state." Cal. Penal Code § 631(a).

9  First, Google argues that it cannot be liable under CIPA because Google is the DMV's
10  vendor, and thus acted as a party to the communications between Plaintiff and the DMV, not as a
11  third-party eavesdropper. Mot. at 19-21. Google relies on *Graham v. Noom*, which held that a
12  vendor does not violate CIPA where it merely "provides a software service that captures its
13  clients' data . . . and allows the clients to analyze their data" but has not "intercepted and used the
14  data itself." 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021). This argument fails because Plaintiff
15  alleges that Google intercepted and used her personal information for its own advertising services.
16  Compl. ¶¶ 29, 38, 42, 44-45, 48-70. Based on these allegations, Google did not act solely as an
17  extension of the DMV. *Jackson I*, 744 F. Supp. 3d at 994.

18  Second, Google argues that Plaintiff fails to plausibly allege that Google intercepted her
19  communications with the DMV while they were "in transit." Mot. at 22-24. But Plaintiff alleges
20  that Google intercepted her communications with the DMV as she entered information over the
21  internet through the DMV website and submitted her renewal application. *See* Compl. ¶¶ 39-40,
22  65-69. Google notes that there is tension between the DPPA and CIPA claims in that the
23  information Google allegedly obtained cannot be both "from a motor vehicle record" and from
24  Plaintiff's communication with the DMV. Mot. at 23. As discussed above, the Court agrees that
25  the current allegations fail to state a DPPA claim – but they suffice for the CIPA claim.

26  Third, Google argues that Plaintiff fails to allege that it acted willfully. Mot. at 24-25.
27  However, Plaintiff alleges in detail that Google intercepted her personal information to offer
28  targeted advertising services, which is essential to Google's business. Compl. ¶¶ 27, 29, 38,

8

1    41-42, 44-45, 47. These allegations of Google's purpose permit an inference of willfulness.

2    Additionally, Plaintiff alleges that Google "specifically designed" its tracking tools to gather

3    information, *id*. ¶¶ 70, 117, and "intentionally encourages" website operators to use its tools in a

4    way that circumvents users' privacy settings, *id*. ¶¶ 37, 103.

5        Google argues that its terms of service required the DMV not to share "personally

6    identifiable information" with Google, thus proving that Google did not intend to obtain Plaintiff's

7    personal information. Mot. at 3, 24. But the Court cannot take judicial notice of disputed facts in

8    Google's terms of service for the purpose of creating a defense against the well-pleaded

9    allegations in the complaint. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002 (9th Cir.

10   2018); *see also Smith v. Google LLC*, 735 F. Supp. 3d 1188, 1198 (N.D. Cal. 2024) ("While

11   Google argues that judicially noticeable policy documents suggest that Google did not actually

12   want to receive personally identifiable information and expressly prohibited developers from

13   transmitting such data, this presents a question of fact that the Court cannot resolve at this stage.").

14   Google cites *Doe v. Google LLC* to support its reliance on the terms of service. 741 F. Supp. 3d

15   828, 844 (N.D. Cal. 2024). But in *Doe*, "the complaint acknowledge[d] that Google repeatedly

16   told developers not to send personally identifiable information through use of its source code."

17   *Id.* at 840. Here, Plaintiff alleges that Google "intentionally encourages" the DMV to harvest and

18   share personal information. Compl. ¶¶ 37, 103.

19       Google characterizes Plaintiff's allegations as "entirely boilerplate" and "almost identical

20   to the same allegations" asserted against LinkedIn in the *Jackson* case. 1/22/25 Hr'g Tr. 4:21-23,

21   5:13-17, ECF No. 64. But it is not surprising that there may be similarities between two cases

22   challenging similar alleged conduct by two different advertising companies. In any event, the

23   high-level similarity between the complaints does not render Plaintiff's allegations conclusory.

24       Google argues that other courts have rejected copy-and-pasted allegations, relying

25   principally on *Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023). *See* Hr'g Tr.

26   10:10-25. But *Byars* involved extreme circumstances: Plaintiff's counsel "filed at least 58 . . .

27   virtually identical lawsuits" against website operators. *Id*. at 1059-60. The complaint at issue was

28   "written at such a high level of generality that it could apply word-for-word to the dozens of other

businesses [the] law firm [was] suing." *Id*. at 1060.  And, tellingly, the *Byars* complaint "*never* mention[ed] the name of the company Plaintiff [was] suing after the caption page, because doing so might take more than a few seconds to alter when filing a new lawsuit." *Id*.  The facts of *Byars* are so extreme, it is surprising that Google would draw a parallel between that case and this one.  Here, the complaint includes at least 48 paragraphs of detailed allegations specific to Google, citing dozens of sources.  *See* Compl. ¶¶ 22-31 (describing the details of Google's advertising business), ¶¶ 32-41 (describing the Google Analytics and DoubleClick services at issue here), ¶¶ 42-47 (describing Google's alleged use of data obtained through its services), ¶¶ 48-70 (describing how Google allegedly obtains information from motor vehicle records).  Of course, these are just allegations – they must be tested in discovery.  But the allegations are detailed, and by no means could they "apply word-for-word" to "dozens of other businesses."  *See Byars*, 656 F. Supp. 3d at 1060.

Accordingly, Google's motion to dismiss Plaintiff's CIPA claim is DENIED.

## IV.  CONCLUSION

For the foregoing reasons, Google's motion to dismiss is GRANTED as to Count 1 with leave to amend and DENIED in all other respects.  Plaintiff shall file an amended complaint within 21 days of this Order.

**IT IS SO ORDERED.**

Dated: March 25, 2025

Eumi K. Lee
United States District Judge